Case 1:14-cv-02328-DLI-VMS   Document 1-5   Filed 04/10/14   Page 1 of 34 PageID #: 468

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------x

JERICHO GROUP, LTD. and JERICHO CO.,                    :

                           Plaintiffs,    :    Index No. 101105/13

        -against-    :    I.A.S. Part 53

MID-TOWN DEVELOPMENT LIMITED                            :    Motion Seq. # 1
PARTNERSHIP, MIDTOWN DEVELOPMENT, L.P.,
EDWARD G. IMPERATORE, MAURICE L. STONE,                 :
EDWARD W. ROSS, ARTHUR E. IMPERATORE,
WR WEST SIDE ASSOCIATES, HADRIAN                        :
PROPERTIES LTD, FANFARE ENTERPRISE INC,
ARCORP PROPERTIES, JERRART PROPERTIES,                  :
HARWOOD LLOYD LLC, BROWN HARRIS
STEVENS LLC, ELAINE OSBORN EMMET,                       :
MICHAEL A. SZEGDA, BAYSTONE EQUITIES INC,
ROBERT B. GOEBEL, MARASSE, LISA SOLOMON,                :
CBRE INC, JOHN DOE 1-10 and XYZ
CORPORATION 1-10.                                       :

                     Defendants.    :

------------------------------------------------------------------x

## MIDTOWN DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**PHILLIPS NIZER LLP**
**666 FIFTH AVENUE**
**NEW YORK, NY 10103-0084**
**(212) 977-9700**

*Attorneys for Midtown Defendants*

Of Counsel:
    George Berger, Esq.
    Jeffrey Shore, Esq.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ........................................................................... 1

THE HISTORY OF THIS CASE ......................................................................... 3

    A.   The Appellate Division's Order Dismissing the First Action ............................ 4

    B.   The Appellate Division's Reversal of The IAS Court's Vacatur of the Judgment in the First Action and Re-Entry of the Judgment ............................ 4

    C.   The IAS Court Dismisses Jericho Group's Second Action Based On Res Judicata and Collateral Estoppel ............................................................... 5

    D.   The Appellate Division Affirms The Dismissal Of The Second Action ............. 6

THE INSTANT COMPLAINT ............................................................................ 7

ARGUMENT

    I.     THE CPLR 3211 STANDARD ................................................................... 8

    II.    THE COMPLAINT IS AN IMPROPER COLLATERAL ATTACK ON THE JUDGMENTS IN THE FIRST AND SECOND ACTIONS ................................ 8

    III.   THIS ACTION AGAINST THE MIDTOWN DEFENDANTS IS BARRED BY THE DOCTRINE OF RES JUDICATA. ........................................................ 9

        A.   This Third Action Arises Out of the Same Transaction As the First Two Actions That Were Previously Dismissed. ............................................... 9

        B.   The Additional Midtown Defendants Are Entitled to the Preclusive Effect of the Final Judgment in the First and Second Actions ....................... 11

    IV.   COLLATERAL ESTOPPEL ALSO BARS JERICHO FROM RELITIGATING ANY OF ITS CAUSES OF ACTION AGAINST THE MIDTOWN DEFENDANTS ....................................................................................... 12

    V.    ALL OF THE CAUSES OF ACTION AGAINST THE MIDTOWN DEFENDANTS ARE TIME-BARRED AND INSUFFICIENT ........................... 13

1219295.3

A.    The Seventeen Fraud-Based Causes of Action (the First through Fifth, Seventh through Tenth, Twelfth through Fifteenth and Eighteenth through the Twenty-First), Are All Time-Barred And Are Insufficient............ 13

B.    The Claims That Defendants Committed Fraud Against Plaintiffs Are Also Time-Barred and Insufficient................................................................ 14

C.    The Sixth, Eleventh, and Seventeenth Causes of Action, As Well as any of the Other Causes of Action that are Based on Purported Newly Discovered Evidence, Are Time-Barred and Insufficient ................................. 16

D.    The Eleventh through Fourteenth Causes of Action, to the Extent They Allege a Breach of 2002 Contract, Are Time-Barred and Insufficient As Previously Held By the Appellate Division. ...................................................... 18

E.    The Sixteenth Cause of Action for Tortious Interference is Time-Barred and Insufficient. ............................................................................................. 18

F.    The Twenty-Third Cause of Action For Conversion Is Time-Barred and Insufficient................................................................................................... 19

G.    The Twenty-Fourth Cause of Action For Negligence Is Time-Barred and Insufficient................................................................................................... 20

H.    The Twenty-Fifth Cause of Action Based On Judiciary Law § 487 Is Time-Barred and Insufficient. .......................................................................... 21

I.    There Is No Cause Of Action For Conspiracy ................................................... 22

J.    Plaintiffs' Claim For Punitive Damages Must Also Be Dismissed.................... 23

VI.    PLAINTIFFS AND PFEIFFER SHOULD BE ENJOINED FROM AGAIN SUING THE MIDTOWN DEFENDANTS ......................................................... 23

VII.    THE COURT SHOULD AWARD MIDTOWN COSTS AND SANCTIONS .... 24

CONCLUSION ................................................................................................................. 25

1219295.3

## TABLE OF AUTHORITIES

**Page**

### CASES

*A.L. Eastmond & Sons, Inc. v. Keevily, Spero-Whitelaw, Inc.,*
    107 A.D.3d 503, 968 N.Y.S.2d 436 (1st Dep't 2013) .......................................................... 15

*Alexander & Alexander, Inc. v. Fritzen,*
    68 N.Y.2d 968, 510 N.Y.S.2d 546 (1986) .......................................................................... 22

*Almeda Holding Co., Inc. v. Holmberg,*
    24 A.D.3d 899, 804 N.Y.S.2d 702 (3d Dep't 2005) ............................................................. 1

*Bank of N.Y. v. Stradford,*
    55 A.D.3d 765, 869 N.Y.S.2d 554 (2d Dep't 2008) .......................................................... 14

*Bank v. Brooklyn Law School,*
    297 A.D.2d 770, 747 N.Y.S.2d 800 (2d Dep't 2002) ........................................................ 13

*Banushi v. Law Office of Epstein,*
    2013 NY Slip Op. 06930 (1st Dep't Oct. 24, 2013) .......................................................... 23

*Barash v. Northern Trust Corp.,*
    54 A.D.3d 407, 862 N.Y.S.2d 293 (2d Dep't 2008) .......................................................... 24

*Barsella v. City of New York,*
    82 A.D.2d 747, 440 N.Y.S.2d 12 (1st Dep't 1981) ............................................................. 1

*Beecher v. Feldstein,*
    8 A.D.3d 597, 780 N.Y.S.2d 153 (2d Dep't 2004) ............................................................ 19

*Bodner v. Grunstein,*
    2011 N.Y. Misc. LEXIS 6904, at *2 (Sup.Ct. N.Y. Co. July 5, 2011) ................................. 1

*Braten v. Finkelstein,*
    235 A.D.2d 513, 652 N.Y.S.2d 769 (2d Dep't 1997) ........................................................ 24

*Brooklyn Welding Corp. v. City of N.Y.,*
    198 A.D.2d 189, 604 N.Y.S.2d 87 (1st Dep't 1993) ........................................................... 9

*Buechel v. Bain,*
    97 N.Y.2d 295, 740 N.Y.S.2d 252 (2001) ........................................................................ 12

*Buller v. Giorno,*
    57 A.D.3d 216, 868 N.Y.S.2d 639 (1st Dep't 2008) .......................................................... 19

iii

*Centro Empresarial Cempresa v. America Movil,*
  76 A.D.3d 310, 901 N.Y.S.2d 618 (1st Dep't 2010), *aff'd,* 17 N.Y.3d 269 (2011) .................. 15

*City of Albany Industrial Dev. Agency v. Garg,*
  250 A.D.2d 991, 672 N.Y.S.2d 541 (3d Dep't 1998)........................................ 16, 17

*Colavito v. New York Organ Donor Network, Inc.,*
  8 N.Y.3d 43, 827 N.Y.S.2d 96 (2006) ........................................................ 20

*D'Amico v. First Union Nat'l Bank,*
  285 A.D.2d 166, 728 N.Y.S.2d 146 (1st Dep't 2001) ........................................ 19

*D'Arata v. N. Y. Cent. Mut. Fire Ins. Co.,*
  76 N.Y.2d 659, 563 N.Y.S.2d 24 (1990) ..................................................... 12

*Eberhardt v. Frasca,*
  286 A.D.2d 748, 730 N.Y.S.2d 725 (2d Dep't 2001) ........................................ 24

*Ellis v. Abbey & Ellis,*
  294 A.D.2d 168, 742 N.Y.S.2d 225 (1st Dep't 2002) ......................................... 9

*Engel v. CBS, Inc.,*
  93 N.Y.2d 195 (1999)....................................................................... 24

*Freddolino v. Vill. of Warwick Zoning Bd. of Appeals,*
  192 A.D.2d 839, 596 N.Y.S.2d 490 (3d Dep't 1993)......................................... 11

*Gramatan Home Investors Corp. v. Lopez,*
  46 N.Y.2d 481, 414 N.Y.S.2d 308 (1979).................................................... 12

*Guardian Life Ins. Co. v. Handel,*
  190 A.D.2d 57, 596 N.Y.S.2d 804 (1st Dep't 1993) ......................................... 21

*Harbas v. Gilmore,*
  244 A.D.2d 218, 664 N.Y.S.2d 921 (1st Dep't 1997) ........................................ 24

*In re Yao,*
  231 A.D.2d 346, 661 N.Y.S.2d 199 (1st Dep't 1997) ........................................ 13

*In the Matter of Robert v. O'Meara,*
  28 A.D.3d 567, 813 N.Y.S.2d 736 (2d Dep't 2006)........................................... 23

*International Plaza Assocs., L.P. v. Lacher,*
  63 A.D.3d 527, 881 N.Y.S.2d 414 (1st Dep't 2009), *aff'd in part,* 104 A.D.3d 578,
  961 N.Y.S.2d 427(1st Dep't 2013)........................................................... 23

*Israel v. Wood Dolson Co.,*
  1 N.Y.2d 116, 151 N.Y.S.2d 1 (1956)....................................................... 11

*Jericho Group, Ltd. v. Midtown Development, L.P. et al.,*
   67 A.D.3d 431, 889 N.Y.S.2d 18 (1st Dep't 2009),
   *lv denied,* 14 N.Y.3d 712 (2010)
   (referenced as Berger Aff., Ex. L) ................................................. 2, 6, 10, 13, 16, 22

*Jericho Group, Ltd. v. Midtown Development, L.P. et al.,*
   47 A.D.3d 463, 851 N.Y.S.2d 11 (1st Dep't 2008),
   *lv dismissed,* 11 N.Y.3d 801 (2008)
   (referenced as Berger Aff., Ex. K) ..................................................... 2, 3, 5, 9, 13, 16

*Jericho Group, Ltd. v. Midtown Development, L.P. et al.,*
   32 A.D.3d 294, 820 N.Y.S.2d 241 (1st Dep't 2006)
   (referenced as Berger Aff., Ex. J) .................................................... 2, 3, 4, 17, 18, 20

*Jericho Group, Ltd. v. Midtown Development, L.P. et al.,*
   2008 N.Y. Misc. LEXIS 10428 (Sup.Ct. N.Y. Co. Sept. 8, 2008), *affirmed,*
   67 A.D.3d 431, 889 N.Y.S.2d 18 (1st Dep't 2009)
   (referenced as Berger Aff., Ex. M) ..................................................... 4, 5, 6, 9, 17

*Jericho Group, Ltd. v. Midtown Development, L.P. et al.,*
   Index No. 113274/04 (Sup.Ct. N.Y. Co. Feb. 2, 2007), *reversed,*
   47 A.D.3d 463, 851 N.Y.S.2d 11 (1st Dep't 2008)
   (referenced as Berger Aff., Ex. LL) ......................................................... 4, 12, 13

*JFK Holding Co. LLC v. City of New York,*
   68 A.D.3d 477, 891 N.Y.S.2d 32 (1st Dep't 2009) ................................................. 8

*Jiminez v. Shahid,*
   83 A.D.3d 900, 922 N.Y.S.2d 123 (2d Dep't 2011), *lv. denied,* 18 N.Y.3d 807 (2012)........... 21

*Jorgensen v. Silverman,*
   224 A.D.2d 665, 638 N.Y.S.2d 482 (2d Dep't 1996) ................................................. 21

*Kleet Lumber Co. v. Saw Horse Remodelers, Inc.,*
   13 A.D.3d 414, 785 N.Y.S.2d 64 (2d Dep't 2004) ................................................. 17

*Kuske v. Gellert & Cutler, P.C.,*
   247 A.D.2d 448, 667 N.Y.S.2d 955 (2d Dep't 1998) ................................................. 21

*Lama Holding Co. v. Smith Barney Inc.,*
   88 N.Y.2d 413, 646 N.Y.S.2d 76 (1996) ................................................. 19

*Lefkowitz v. Appelbaum,*
   258 A.D.2d 563, 685 N.Y.S.2d 460 (2d Dep't 1999) ................................................. 21

*Marinelli Assocs. v. Helmsley-Noyes Co.,*
   265 A.D.2d 1, 705 N.Y.S.2d 571 (1st Dep't 2000) ................................................. 11

1219295.3

*Mark v. H.F. Lenfest,*
   80 A.D.3d 426, 914 N.Y.S.2d 141 (1st Dep't 2011) ................................................ 14

*McDonald v. Lengel,*
   2 A.D.3d 1182, 770 N.Y.S.2d 194 (3d Dep't 2003) ................................................ 10

*Melcher v. Greenberg Traurig, LLP,*
   102 A.D.3d 497, 958 N.Y.S.2d 362 (1st Dep't 2013) .............................................. 21

*Mirvish v. Mott,*
   18 N.Y.3d 510, 942 N.Y.S.2d 404 (2012) .............................................................. 19

*Moran v. Hurst,*
   32 A.D.3d 909, 822 N.Y.S.2d 564 (2d Dep't 2006) .................................................. 1

*Mountain Lion Baseball, Inc. v. Gaiman,*
   263 A.D.2d 636, 693 N.Y.S.2d 289 (3d Dep't 1999) .............................................. 25

*New York Univ. v. Continental Ins. Co.,*
   87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995) .............................................................. 23

*O'Brien v. Syracuse,*
   54 N.Y.2d 353 (1981) ................................................................................................ 9

*Parker & Waichman v. Napoli,*
   29 A.D.3d 396, 815 N.Y.S.2d 71 (1st Dep't 2006) .................................................. 8

*Parker v. Blauvelt Volunteer Fire Co.,*
   93 N.Y.2d 343 (1999) ................................................................................................ 9

*Quinones v. Neighborhood Youth & Family Servs., Inc.,*
   71 A.D.3d 1106, 896 N.Y.S.2d 908 (2d Dep't 2010) .............................................. 24

*Rakosi v. Daniel Perla Assocs, L.P.,*
   3 A.D.3d 431, 772 N.Y.S.2d 648 (1st Dep't 2004) .................................................. 8

*Rizzo v. St. Lawrence University,*
   24 A.D.3d 983, 805 N.Y.S.2d 479 (3d Dep't 2005) .............................................. 14

*Rocanova v. Equitable Life Assur. Soc'y,*
   83 N.Y.2d 603, 612 N.Y.S.2d 339 (1994) .............................................................. 23

*Santana v. St. Vincent Catholic Med. Ctr.,*
   65 A.D.3d 1119, 886 N.Y.S.2d 57 (2d Dep't 2009) .............................................. 21

*Senter v. Gitlitz,*
   97 A.D.3d 808, 949 N.Y.S.2d 133 (2d Dep't 2012) .............................................. 18

*Smukler v. 12 Lofts Realty, Inc.,*
 156 A.D.2d 161, 548 N.Y.S.2d 437 (1st Dep't 1989) ............................................... 22

*Specialized Realty Services, LLC v. Town of Tuxedo,*
 106 A.D.3d 987, 966 N.Y.S.2d 148 (2d Dep't 2013) ............................................... 17

*Statter v. Statter,*
 2 N.Y.2d 668, 163 N.Y.S.2d 13 (1957) ............................................... 8

*Steier v. Shoshana Kraushar Schreiber,*
 25 A.D.3d 519, 810 N.Y.S.2d 431 (1st Dep't 2006) ............................................... 22

*Syllman v. Nissan, 18 A.D.3d,*
 221, 221-22, 794 N.Y.S.2d 351 (1st Dep't 2005) ............................................... 11

*Ventura v. M.A.F. Estates,*
 247 A.D.2d 378, 668 N.Y.S.2d 645 (2d Dep't 1998) ............................................... 11

*Visionchina Media Inc. v. Shareholder Representative Servs., LLC,*
 109 A.D.3d 49, 967 N.Y.S.2d 338 (1st Dep't 2013) ............................................... 15

*Weimer v. Weimer,*
 281 A.D.2d 989, 722 N.Y.S.2d 328 (4th Dep't 2001) ............................................... 14

*World On Columbus, Inc. v. L.C.K. Rest. Group, Inc.,*
 260 A.D.2d 323, 689 N.Y.S.2d 64 (1st Dep't 1999) ............................................... 1

## STATUTORY AUTHORITIES

N.Y. Civ. Prac. L. & R. 213. ............................................... 15, 18

N.Y. Civ. Prac. L. & R. 214 ............................................... 19, 21

N.Y. Civ. Prac. L. & R. 321(a). ............................................... 1

N.Y. Civ. Prac. L. & R. 3013 and 3014 ............................................... 1

N.Y. Civ. Prac. L. & R. 3211. ............................................... 1, 6, 8

N.Y. Civ. Prac. L. & R. 5015. ............................................... 4, 5, 8

N.Y. Jud. Law §487 ............................................... 10, 21, 22

## RULES AND REGULATIONS

22 NYCRR § 130 ............................................... 24

1219295.3

## PRELIMINARY STATEMENT

The Midtown Defendants[1] hereby move for judgment dismissing the Complaint (Berger Aff., Ex. A) with prejudice.  The Complaint is premised on a purported fraud on the courts allegedly committed in two prior actions by plaintiff Jericho Group, Ltd. ("Jericho Group") against Midtown, both of which were dismissed with prejudice. This motion is made pursuant to CPLR 3211(a) (1), (5) and (7), on the grounds that the Complaint constitutes an improper collateral attack on those judgments, res judicata, collateral estoppel, statutes of limitations, insufficiency and a host of other infirmities discussed below. Moreover, this 143-page, 719-paragraph Complaint should also be dismissed pursuant to CPLR 3013 and 14 on the grounds that it is prolix and does not consist of plain and concise statements of fact.[2] The Complaint should also be dismissed pursuant to CPLR 321(a) because Plaintiffs Jericho Group and Jericho Co.[3] have failed to appear by an attorney.[4]

This is Jericho Group's third lawsuit against Midtown relating to the same June 18, 2002

---

[1]    The "Midtown Defendants" refers to the following thirteen defendants:  Defendants Midtown Development, LP ("Midtown") (also sued herein as Mid-Town Development Limited Partnership), Edward G. Imperatore ("Imperatore"), Maurice L. Stone ("Stone"), Arthur E. Imperatore, WR West Side Associates, Hadrian Properties LLC (sued herein as Hadrian Properties, Ltd.), Fafner Enterprises, Inc.,(possibly sued herein as Fanfare Enterprise, Inc.) Arcorp Properties Inc. (sued herein as Arcorp Properties), Jerrart Venture (sued herein as Jerrart Properties), Harwood Lloyd, LLC, Brown Harris Stevens Residential Sales LLC (sued herein as Brown Harris Stevens LLC), Elaine Osborn Emmet ("Emmet") and CBRE, Inc.  The other defendants are some of Jericho Group's former attorneys and a corporation allegedly related to one of them.

[2]    CPLR 3013 requires that "[s]tatements in a pleading shall …[allege] the material elements of each cause of action …." CPLR 3014 requires that "[e]very pleading shall consist of plain and concise statements … [and] [e]ach paragraph shall contain, as far as practicable, a single allegation." In addition to its inordinate length, portions consist of 36 highly inappropriate rhetorical questions (see, e.g., Berger Aff., Ex. A, fn. 18) and flourishes of Mr. Pfeiffer's dancing exuberance (Id., ¶¶152(v) and (vi)). No one can respond to these types of allegations. See, Barsella v. City of New York, 82 A.D.2d 747, 747, 440 N.Y.S.2d 12, 12 (1st Dep't 1981); Bodner v. Grunstein, 2011 N.Y. Misc. LEXIS 6904, at *2 (Sup.Ct. N.Y. Co. July 5, 2011) (where "[m]any of the allegations are 'prolix, confusing, and difficult to answer").

[3]    Jericho Co., is alleged to be "a company organized and existing under the laws of the State of New York with a principal place of business in Brooklyn, New York …" (Berger Aff., Ex. A, ¶1). In fact however, Jericho Co. is d/b/a under which an individual, Chana Pfeiffer, has been conducting business since 2011 (Berger Aff., Ex. C). Therefore, the appropriate caption designation should have been "Chana Pfeiffer doing business as Jericho Co." There are however no allegations relating to Chana Pfeiffer in the Complaint. Accordingly, it appears that Jericho Co., not having alleged any grievance against anyone, should be dismissed.

[4]    Mr. Pfeiffer states in his Complaint that "Plaintiffs are bringing this case pro se, even though Plaintiffs are not attorneys … because under the circumstances they have no choice and had to bring it pro se." (Berger Aff, Ex. A, ¶25). However, CPLR 321(a) clearly precludes the corporate entity, Jericho Group, Ltd. from appearing in this case without an attorney, and Mr. Pfeiffer, who is not an attorney, cannot represent Chana Pfeiffer. Therefore, the Court should dismiss this case for this reason as well. See, e.g., Moran v. Hurst, 32 A.D.3d 909, 822 N.Y.S.2d 564 (2d Dep't 2006); Almeda Holding Co., Inc. v. Holmberg, 24 A.D.3d 899, 804 N.Y.S.2d 702 (3d Dep't 2005); World On Columbus, Inc. v. L.C.K. Rest. Group, Inc., 260 A.D.2d 323, 689 N.Y.S.2d 64 (1st Dep't 1999).

real estate contract between it and Midtown (the "2002 Contract,")(Berger Aff. Ex. N). It seeks

the same ultimate relief (a declaration that the 2002 Contract between Midtown and Jericho

Group is still in full force and effect, that Midtown willfully and deliberately breached the 2002

Contract, specific performance of the 2002 Contract, plus damages) that Jericho Group sought in

its two prior actions, the first in 2004 (the "First Action"), and the second in 2007 (the "Second

Action").  The RJI that Plaintiffs submitted in this action states that the relief here sought is to

vacate the judgments in those actions. (Berger Aff., Ex. B, p. 3).  The First Action and the Second

Action were dismissed on the merits by the Appellate Division three times. *See,* 67 A.D.3d 431,

889 N.Y.S.2d 18 (1st Dep't 2009), *lv denied*, 14 N.Y.3d 712 (2010) (affirming the IAS Court's

dismissal of the Second Action based on collateral estoppel and res judicata, holding that "[t]he

two actions are based on the same transaction, namely the sale of real property, and the prior

action was dismissed on the merits …"), 32 A.D.3d 294, 820 N.Y.S.2d 241 (1st Dep't 2006)

(dismissing the First Action, which sought reinstatement of the 2002 Contract and specific

performance thereunder and $50 million in damages); 47 A.D.3d 463, 851 N.Y.S.2d 11 (1st Dep't

2008), *lv dismissed*, 11 N.Y.3d 801 (2008) (denying Jericho Group's motion to vacate the

judgment in the First Action based on an alleged fraud on the court and again dismissing the First

Action).[5]

   This time Jericho Group has proceeded without an attorney, likely because no attorney

would commence such a frivolous action in light of the three dismissals.[6]  Mr. Pfeiffer, purporting

to act pro se, has produced a monstrosity of a Complaint, filled with hyperbole and hypotheticals,

but with no substance or actionable conduct alleged.  In a nutshell, Jericho Group appears to be

claiming that defendants Midtown and Imperatore made false and fraudulent statements to the

IAS Court in 2005 and to the Appellate Division in 2005 and 2006, and also makes the incredible

---

[5]    Copies of these three Appellate Division decisions are, for the Court's convenience, annexed as Exhibits J, K and L to the Berger Aff.

[6]    Jericho Group employed seven different law firms during the course of the First and Second Actions.

and conclusory allegations that they did so in collusion with Jericho Group's own lawyers. Plaintiffs attempt to support these baseless allegations with what they claim to be newly discovered evidence, but without any allegations as to when such evidence was discovered, why it could not have been discovered sooner with due diligence, or how such evidence would have produced a different result in the prior actions. The Complaint also fails to include that the Appellate Division reversed the order vacating the judgment in the First Action based on fraud on the court. (*See* Berger Aff., Ex. K). Finally, there are absolutely no allegations against the Midtown Defendants other than against Midtown, Imperatore, Stone, and a few scattered allegations against Emmet (whose only connection to the 2002 Contract is that she was Midtown's real estate broker). There is therefore no basis to have named any of these ten other Midtown Defendants as defendants in this lawsuit.

## THE HISTORY OF THIS CASE

The history is set forth in the prior decisions of the Appellate Division and the IAS Court, as well as the 2002 Contract itself. On June 18, 2002, Midtown and Jericho Group entered into the 2002 Contract, which was for the sale of two adjoining parcels of undeveloped Manhattan real estate. (Berger Aff., Ex. J, p. 2. *See also*, 2002 Contract (Berger Aff., Ex. N)). The 2002 Contract provided for an "AS IS" sale and expressly disclaimed any representations as to the condition of the property or the use to which it could be put. (Berger Aff., Ex. N, ¶29(b), ¶38). It gave Jericho Group a 75-day "Study Period" to evaluate the purchase and the right to cancel the contract and get back its deposit at any time during this period. (Berger Aff., Ex. J, p. 2; *see also* Berger Aff., Ex. N, at ¶29(a)). On September 12, 2002, Jericho Group, through its counsel, cancelled the contract and requested the return of its deposit, which Midtown promptly returned. (Berger Aff., Ex. J, p. 3). Two years later, after the property had increased in value, Jericho Group brought the First Action for breach of contract and fraud and sought specific performance and damages. (*Id.; see also* Berger Aff., Ex. D). In September 2005, Jericho Group also filed its first

3

notices of pendency against the properties at issue (Berger Aff., Ex. M, p. 6).[7]

### A.    The Appellate Division's Order Dismissing the First Action

Midtown moved to dismiss Jericho Group's First Action.  (Berger Aff., Ex. J., p. 4).  The IAS Court denied the motion,  but, by order entered August 17, 2006, the Appellate Division unanimously reversed and ordered dismissal of each of Jericho Group's causes of action on multiple, alternative grounds. (Berger Aff., Ex. J).  At that Court's direction,  the Clerk  entered  judgment dismissing the First Action on September 19, 2006. (Berger Aff., Ex. G).  Shortly thereafter, this Court cancelled Jericho Group's first notices of pendency. (Berger Aff., Ex. M, p. 6).

### B.    The Appellate Division's Reversal of The IAS Court's Vacatur of the Judgment in the First Action and Re-Entry of the Judgment

Jericho Group thereafter moved to vacate the judgment of dismissal in the First Action. (Berger Aff., Ex. LL, pgs.1, 10).[8]  It also sought leave to further amend its now-dismissed amended complaint, to assert a number of revised theories of breach and fraud and also to add Midtown's counsel in the underlying transaction as defendants.  (Berger Aff., Ex. LL, pgs. 1, 15-16).  In support of its motion, Jericho Group offered what it called "newly discovered evidence" and evidence of a "fraud on the court." (Berger Aff., Ex. LL).

This Court granted the motion to vacate the judgment on the ground of "fraud on the court" pursuant to CPLR 5015(a)(3), but denied the motion on the ground on "newly evidence" pursuant to CPLR 5015(a)(2) because Jericho Group knew of the relevant correspondence before the First Action was filed. (Berger Aff., Ex. LL).  This Court also denied Jericho Group's motion to amend. (*Id.*).  Two days after entry of the vacatur order, Jericho Group filed its Second Action (Berger Aff., Ex. E), which closely followed Jericho Group's proposed second amended complaint from the First Action (Berger Aff., Ex. DD), and which was based on the same underlying transaction,

---

[7]    Berger Aff., Ex. M is a copy of this Court's September 8, 2008 decision, *Jericho Group, Ltd. v. Midtown Development, L.P. et. al.,* 2008 N.Y. Misc. LEXIS 10428 (Sup.Ct. N.Y. Co. Sept. 8, 2008).

[8]    Berger Aff., Ex. LL is a copy of this Court's February 2, 2007 decision, *Jericho Group, Ltd. v. Midtown Development, L.P. et. al.,* Index No. 113274/04 (Sup.Ct. N.Y. Co. Feb. 2, 2007), *reversed,* 47 A.D.3d 463, 851 N.Y.S.2d 11 (1st Dep't 2008).

1219295.3

the same real property, and the same 2002 Contract that was at issue in the First Action. Jericho Group also named Midtown's two transactional lawyers, Imperatore and Stone, as additional defendants in the Second Action (Berger Aff., Exs. E, F), on the asserted ground that they perpetuated Midtown's purported "fraud" in the underlying transaction and "fraud on the court" in the First Action. (Berger Aff., Ex. E, ¶3; Ex. F, ¶3). Jericho Group also impermissibly filed new notices of pendency against Midtown's property. (Berger Aff., Ex. M, p. 6).

Midtown appealed from the IAS Court's vacatur order. (Berger Aff., Ex. K). Jericho Group did not cross-appeal from the same order denying its motion for leave to amend the complaint in the First Action. *Id.* The Appellate Division once again unanimously reversed, denied Jericho Group's motion to vacate the judgment and directed the Clerk to re-enter the judgment dismissing Jericho Group's amended complaint in the First Action. (*Id.*). That Court ruled that Jericho Group's claim of "fraud on the court" "goes to defendant's compliance with its contractual obligation to produce documents, i.e., the underlying transaction, not to 'the very means by which the judgment was procured,' and therefore does not avail to vacate the judgment pursuant to CPLR 5015(a)(3) [for fraud on the court].'" (*Id.*). It also held, on the basis of an appellate record in excess of 1,400 pages and all of Jericho Group's other alleged "evidence" of fraud and "willful or deliberate" conduct, that "[i]n any event, plaintiff fails to show a fraud in the underlying transaction." (*Id.*). The Clerk re-entered the judgment of dismissal. (Berger Aff, Ex. H). Jericho Group's post-decision motion for reargument and/or leave to appeal to the Court of Appeals was denied by the Appellate Division on May 22, 2008, and dismissed by the Court of Appeals on October 16, 2008. (11 N.Y.3d 801(2008)).

## C.   The IAS Court Dismisses Jericho Group's Second Action Based On Res Judicata and Collateral Estoppel

As noted above, Jericho Group commenced a Second Action against Midtown, Imperatore and Stone. Midtown, Imperatore and Stone moved for summary judgment. (Berger Aff., Ex. M, p. 1). Midtown had previously moved to cancel Jericho Group's second notices of pendency

(*Id.*).  Jericho Group cross-moved to amend its complaint in the Second Action and for summary judgment as to liability (Berger Aff., Ex. M, p. 6).

The IAS Court, in a decision dated September 8, 2008 (Berger Aff., Ex. M), treated the motion under CPLR 3211(a) (5), because issue had not yet been joined in the Second Action, and because the motion was predicated primarily on res judicata and collateral estoppel. (*Id.,* n.4). The Court dismissed the Second Action, holding that it was "bound by the Appellate Division's determination that the newly-disclosed documents did not establish that Defendants engaged in fraudulent misconduct in performing under the Contract;" that "[t]he resolution of this issue against Jericho precludes the maintenance of this action, based upon the same transaction and allegations of wrongdoing" and "because the issues raised in this action were materially and necessarily determined against Jericho in the first action, maintenance of this action would constitute an improper collateral attack on the prior judgment of dismissal." (*Id.*, p. 5).

The IAS Court also cancelled the second notices of pendency. (*Id.*, p. 6).  On September 19, 2008, judgment was entered dismissing the Second Action. (Berger Aff., Ex. I).

**D.      The Appellate Division Affirms The Dismissal Of The Second Action**

On November 5, 2009, the Appellate Division unanimously affirmed the IAS Court's dismissal of the Second Action as barred by collateral estoppel and res judicata, as well as the cancellation of the second notices of pendency. The Court so held because "[t]he two actions [were] based on the same transaction, namely the sale of real property, and the prior action was dismissed on the merits, not merely because of technical pleading defects." (Berger Aff., Ex. L, p. 1).  That Court also held that its 2008 order denying Jericho Group's motion to vacate the judgment of dismissal had "preclusive effect for purposes of res judicata, especially since it resulted in reentry of the judgment of dismissal. (*Id.*).  The Appellate Division further held that it's prior ruling that Jericho Group "'fails to show fraud in the underlying transaction' was not mere dicta and acts as a bar to plaintiff's claim of willful and deliberate breach of the contract."

6

(*Id.*).  Jericho Group's motion for permission to appeal was denied by the Court of Appeals.  (14 N.Y.3d 712) (2010)).

## THE INSTANT COMPLAINT

Nothing happened for the next three years. Now, as noted above, Mr. Pfeiffer, on behalf of Jericho Group and Chana Pfeiffer have filed a 143-page, 719-paragraph monstrosity of a Complaint which fails to allege any cognizable cause of action against the Midtown Defendants. Its gravamen rehashes that Midtown lied to the IAS Court and the Appellate Division in 2005 and 2006 by asserting that Jericho Group cancelled the 2002 Contract and that Midtown returned Jericho Group's deposit, notwithstanding that those facts were supported by documentary evidence and found to be accurate by the Appellate Division.  Plaintiffs also make conclusory and unsupported allegations that there was collusion between Midtown and Jericho Group's own lawyers.

Plaintiffs break the Complaint into twenty-five causes of action, twenty-four of which appear to include the Midtown Defendants, mostly by saying "defendants" in each cause of action, even though in substance, many deal with matters relating only to Jericho Group's former counsel.  Most of the causes of action are premised on an alleged fraud on the court and some are premised on allegations of recently discovered evidence.

The ultimate relief sought against the Midtown Defendants is

a declaratory judgment "(a) … that … Justice Ramos' May 16, 200[5] order is still in full force and effect" (notwithstanding that it was reversed by the Appellate Division); "(b) that the [2002] Contract was never cancelled" (notwithstanding the prior Appellate Division holdings to the contrary); "(c) that … Midtown had willfully and deliberately breached the Contract" (notwithstanding the prior Appellate Division holdings to the contrary); "(d) … that the [2002] Contract has been reinstated"; "(e) compelling Mid-Town and Defendants to specifically perform under the terms of the [2002] Contract"; "(f) compelling Mid-Town and Defendants to sell the Property … to Jericho in accordance with the terms of the [2002] Contract"; "(g) order that Defendants should not enter into any agreement or Contract to sell the Property(s)"; "(h) order that the prior Judgments are vacated"; (k) awarding to Plaintiffs damages in an amount to be determined"; "(l) awarding Plaintiffs … at least $200,000,000";

"(m) order that Defendants should return to Plaintiffs the $250,000 deposit plus interest" (notwithstanding that it was returned eleven years ago); ... "(o) order Sanctions against Defendants ..."; "(p) punitive damages, in an amount to be determined"; "(q) plus statutory trebling of its damages under [Judiciary Law] 487 (despite the fact that most of the defendants are not attorneys and that none of the lawyer defendants represented Midtown in the prior actions."  (Berger Aff., Ex. A, pgs. 142-43)

## ARGUMENT

### I.   THE CPLR 3211 STANDARD

"[O]n a motion to dismiss pursuant to CPLR 3211, ... '[i]t is well settled ... that when the moving party offers matter extrinsic to the pleadings, the court need not assume the truthfulness of the pleaded allegations, but rather is required to determine whether the opposing party actually has a cause of action or defense, not whether he has properly stated one."

*JFK Holding Co. LLC v. City of New York*, 68 A.D.3d 477, 477, 891 N.Y.S.2d 32, 33 (1st Dep't 2009) (citations omitted).

As demonstrated below, the Complaint must be dismissed because it constitutes an impermissible collateral attack on two judgments, res judicata, collateral estoppel, statutes of limitations, because the fraud allegations lack specificity, are flatly contradicted by the prior court decisions, and fail to state any viable cause of action.

### II.   THE COMPLAINT IS AN IMPROPER COLLATERAL ATTACK ON THE JUDGMENTS IN THE FIRST AND SECOND ACTIONS

The Complaint in this third action must be dismissed, because it constitutes an impermissible collateral attack on the prior judgments of dismissal. *Statter v. Statter*, 2 N.Y.2d 668, 674, 163 N.Y.S.2d 13, 18 (1957); *Parker & Waichman v. Napoli*, 29 A.D.3d 396, 399, 815 N.Y.S.2d 71, 75 (1st Dep't 2006); *Rakosi v. Daniel Perla Assocs., L.P.*, 3 A.D.3d 431, 431, 772 N.Y.S.2d 648 (1st Dep't 2004).

"'The remedy for fraud allegedly committed during the course of a legal proceeding must be exercised in that lawsuit by moving to vacate the civil judgment (CPLR 5015(a)(3)), and not [as Jericho Group has done here] by another plenary action collaterally attacking that judgment.'"

*Parker & Waichman v. Napoli*, 29 A.D.3d 396, 399, 815 N.Y.S.2d 71, 74 (1st Dep't 2006); *see*

*also* Berger Aff., Ex. M, p. 5 ("because the issues raised in this [Second] action were materially and necessarily determined against Jericho [Group] in the first action, [and therefore] maintenance of this action would constitute an improper collateral attack on the prior judgment of dismissal.")[9].

So too, because the issues raised herein were materially and necessarily determined against Jericho Group in the First and Second Actions, maintenance of this third action would once again constitute an improper collateral attack on the prior judgments of dismissal.

## III.   THIS ACTION AGAINST THE MIDTOWN DEFENDANTS IS BARRED BY THE DOCTRINE OF RES JUDICATA.

### A.   This Third Action Arises Out of the Same Transaction As the First Two Actions That Were Previously Dismissed.

"Under res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action.  As a general rule, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different [remedy].'" *Parker v. Blauvelt Volunteer Fire Co.,* 93 N.Y.2d 343, 347 (1999); *see also Ellis v. Abbey & Ellis,* 294 A.D.2d 168, 169, 742 N.Y.S.2d 225, 227 (1st Dep't 2002).  Under this "transactional analysis approach," "[w]hen alternative theories are available to recover what is essentially the same relief for harm arising out of the same or related facts such as would constitute a single 'factual grouping,' the circumstance that the theories involve materially different elements of proof will not justify presenting the claim by two different actions." *O'Brien v. Syracuse,* 54 N.Y.2d 353, 357-58 (1981); *see also Brooklyn Welding Corp. v. City of N.Y.,* 198 A.D.2d 189, 604 N.Y.S.2d 87 (1st Dep't 1993).

The Appellate Division affirmed the dismissal of Jericho Group's Second Action against

---

[9]   As noted above, Jericho Group did move to vacate the judgment in the First Action six years ago, based on an alleged fraud on the court and newly discovered evidence pursuant to CPLR 5015(a)(2) and (3). The Appellate Division held that the purported fraud on the court "goes to defendant's compliance with its contractual obligation to produce documents, i.e., the underlying transaction, not to 'the very means by which the judgment was procured,' and therefore does not avail to vacate the judgment pursuant to CPLR 5015(a)(3)." (Berger Aff., Ex. K).  This holding would require dismissal of Jericho's current claim of fraud on the court even if it had brought such a claim in a procedurally proper manner.

1219295.3

Midtown, Imperatore and Stone, on grounds of res judicata and collateral estoppel, holding as follows:

> Based on this Court's two prior orders and the judgment entered thereon dismissing plaintiff's first action alleging, inter alia, fraud and breach of contract, the motion court properly determined that this action was barred by collateral estoppel and res judicata.  The two actions are based on the same transaction, namely the sale of real property, and the prior action was dismissed on the merits, and not merely because of technical pleading defects [citation omitted].

> Contrary to plaintiff's contention, this Court's subsequent order denying its motion to, inter alia, vacate the judgment of dismissal [citation omitted], has preclusive effect for purposes of res judicata, especially since it resulted in reentry of the judgment of dismissal. This Court's ruling that plaintiff 'fails to show fraud in the underlying transaction' [citation omitted], was not mere dicta and acts as a bar to plaintiff's claim of willful and deliberate breach of the contract [citation omitted].  Indeed, the claims are based on the same alleged misconduct, namely, defendants' failure to provide documents on an oil spill near the subject property and information regarding the nonexistence of certain exhibits referenced in the contract of sale.  With respect to plaintiff's claims that it is entitled to specific performance because it cancelled the contract as a result of defendants' alleged willful and deliberate misconduct because its attorney did not have the authority to cancel the contract, those claims are barred under the doctrine of res judicata because they could have been raised in the prior proceeding [citation omitted].

> Because plaintiff had reviewed the documents illustrating defendants' alleged fraud prior to commencing the first action, it cannot elude issue or claim preclusion 'under the rubric of fraud' [citation omitted].

> While plaintiff's Judiciary Law § 487 claim against defendant Imperatore was not time-barred, it was properly dismissed on grounds of res judicata because it is predicated on the same alleged fraud on the court that this Court rejected in its order declining to vacate the judgment of dismissal [citation omitted].

Berger Aff., Ex. L, pgs. 1-2.

Now, in this third action, Jericho Group again sued Midtown, Imperatore, Stone, and other individuals and entities (with, however, no specific allegations against any of them), once again based on the same transaction that was at issue in the two prior actions.

The third action is therefore barred by the final judgments in the First and Second Actions and should be dismissed by the court as res judicata. *Id.; see also McDonald v. Lengel*, 2 A.D.3d 1182, 1183-84, 770 N.Y.S.2d 194, 195 (3d Dep't 2003) (plaintiff's action barred by res judicata

1219295.3

where it was "essentially ... identical to the prior action brought against defendant" and "undeniably [arose] out of the same underlying real estate transaction"); *Ventura v. M.A.F. Estates,* 247 A.D.2d 378, 668 N.Y.S.2d 645 (2d Dep't 1998); *Freddolino v. Vill. of Warwick Zoning Bd. of Appeals,* 192 A.D.2d 839, 840, 596 N.Y.S.2d 490, 492 (3d Dep't 1993).

### B.   The Additional Midtown Defendants Are Entitled to the Preclusive Effect of the Final Judgment in the First and Second Actions.

It is not necessary "that the party seeking to invoke res judicata have been a party in the prior action." *Marinelli Assocs. v. Helmsley-Noyes Co.,* 265 A.D.2d 1, 7, 705 N.Y.S.2d 571, 576 (1st Dep't 2000); *Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 119, 151 N.Y.S.2d 1, 4 (1956) ("the fact that a party has not had his day in court on an issue as against a particular litigant is not decisive in determining whether the defense of res judicata is applicable").

The First Action asserted breach of contract and fraud based on the 2002 Contract. The Second Action asserted causes of action for "fraud" and "fraud on the court" based on that same 2002 Contract. There are no substantive allegations against any of the additional Midtown defendants. Thus, by the same logic that the Appellate Division granted preclusive effect to the First judgment to Imperatore and Stone, who were not parties to the First Action, in dismissing as to them on those grounds in the Second Action, so too are the additional Midtown Defendants entitled to the preclusive effect of the judgments the First and Second Actions.

As has been held in a closely analogous context:

> The first and third causes of action are barred by collateral estoppel and res judicata. A previous lawsuit in Queens County against defendant 67-25 Dartmouth Street Corp. was decided in favor of the corporation. The instant action against the corporation and its board of directors, individual members and attorneys alleges conduct arising out of the same dispute that gave rise to the Queens County claims. Plaintiff has failed to allege any specific conduct at issue in this action that was not previously litigated. The addition of defendants in this action, all of whom are in privity with the corporation, does not circumvent the legal doctrines that preclude these claims.

*Syllman v. Nissan,* 18 A.D.3d 221, 221-22, 794 N.Y.S.2d 351, 352 (1st Dep't 2005).

1219295.3

## IV.   COLLATERAL ESTOPPEL ALSO BARS JERICHO GROUP FROM RELITIGATING ANY OF ITS CAUSES OF ACTION AGAINST THE MIDTOWN DEFENDANTS

Collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity." *Buechel v. Bain,* 97 N.Y.2d 295, 303, 740 N.Y.S.2d 252, 257 (2001).  Collateral estoppel is "based upon the general notion that a party ... should not be permitted to relitigate an issue decided against it." *D'Arata v. N. Y. Cent. Mut. Fire Ins. Co.,* 76 N.Y.2d 659, 664, 563 N.Y.S.2d 24, 26 (1990); *see also Gramatan Home Investors Corp. v. Lopez,* 46 N.Y.2d 481, 485, 414 N.Y.S.2d 308, 311 (1979).  There are only two requirements for applying collateral estoppel: first, "[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action"; and, second, "there must have been a full and fair opportunity to contest the decision now said to be controlling." *Buechel v. Bain, supra,* 97 N.Y.2d at 303-04, 740 N.Y.S.2d at 257.  It is also settled that collateral estoppel may be asserted "by a nonparty to the prior litigation, providing that the requirements for collateral estoppel ... were met as to the party sought to be precluded." *Id.* at 316, 740 N.Y.S.2d at 266.

Both of the requirements for applying collateral estoppel have been met here.  First, critical elements of all of the variously stated causes of action for "fraud," and "fraud on the court," and the requests for a "declaratory judgment" that Jericho Group had not cancelled the 2002 Contract, for specific performance of the 2002 Contract, for damages relating to the alleged breach of the 2002 Contract and for violation of Judiciary Law 478 -- have all been decided against Jericho Group in the First and Second Actions.

As this Court noted in its vacatur order, "Jericho raised this argument [that 'counsel had no authority to cancel the contract and that counsel's letter failed to comply with the requirements under the contract'] in its opposition to Midtown's appeal" and that the Appellate Division nevertheless "held the cancellation to be valid." (Berger Aff., Ex. LL n.4).

12

Second, Jericho Group has had a full and fair opportunity to litigate these issues. It argued at length, in papers and at oral argument in the Appellate Division and the IAS Court, that it should be permitted to pursue all of its claims for breach of contract and fraud and also contended that it had not cancelled the contract and was entitled to a reasonable extension of the Study Period. Jericho Group thereafter proceeded to initiate a second round of litigation, by making a post-dismissal motion to vacate the judgment. (Berger Aff., Ex. LL). Once again, though, the Appellate Division rejected both the merits of Jericho Group's underlying "fraud" claim and its new theory of "fraud on the court." (Berger Aff., Ex. K). Thereafter, Jericho Group's Second Action was dismissed on grounds of res judicata and collateral estoppel. (Berger Aff., Ex. L).

A party need not be afforded a trial on the merits -- nor does a court have to make factual findings on the underlying bases of its claims -- for collateral estoppel to be applied against it in a second proceeding. *See, e.g., In re Yao*, 231 A.D.2d 346, 348, 661 N.Y.S.2d 199, 201 (1st Dep't 1997) (respondent had a full and fair opportunity to litigate issues in prior action even though he "did not have an opportunity to call witnesses on his behalf, he certainly had, and took full advantage of, the opportunity to oppose [defendant's] motion to dismiss"); *Bank v. Brooklyn Law School*, 297 A.D.2d 770, 747 N.Y.S.2d 800 (2d Dep't 2002).

Jericho Group has thus presented its evidence and had its claims and theories heard, and they have all been rejected -- most of them twice and some three times. It is now time for the Midtown Defendants to be afforded their right to finality.

## V.    ALL OF THE CAUSES OF ACTION AGAINST THE MIDTOWN DEFENDANTS ARE TIME-BARRED AND INSUFFICIENT

### A.    The Seventeen Fraud-Based Causes of Action (the First through Fifth, Seventh through Tenth, Twelfth through Fifteenth and Eighteenth through the Twenty-First), Are All Time-Barred And Are Insufficient

Jericho Group alleges that the Midtown Defendants committed fraud on the courts and fraud on it based on statements made to the IAS Court and the Appellate Division, in various pleadings in 2005 and 2006. These 25 causes of action are all time-barred and fail to state a cause

of action.  The only allegations in the Complaint as to any specific fraudulent statements and when such statements were made are those made seven to eight years ago, in 2005 and 2006 (*see, e.g.,* Berger Aff., Ex. A, ¶¶64, 69, 72 , 75, 77, 120, 125, 147, 148(b), 148(f), 198, 278, 280, 288-90, 308-09, 311-16, 321, 329-33, 355-58, 379, 392-93, 402-03, 411-12, 422-23, 467-69, 480, 556, 564, 582, 592, 596, 668, 675-76, 681, 682, 688).[10]

A motion to vacate a judgment premised on a fraud on the court must "be brought within a reasonable time."  *Mark v. H.F. Lenfest,* 80 A.D.3d 426, 426, 914 N.Y.S.2d 141, 142 (1st Dep't 2011).  Delays of much less than seven years from the time of the purported fraud on a court have been routinely held to be unreasonable.  *See, e.g., Mark v. H.F. Lenfest, supra,* 80 A.D.3d at 426, 914 N.Y.S.2d at 142 (almost four years); *Bank of N.Y. v. Stradford,* 55 A.D.3d 765, 869 N.Y.S.2d 554 (2d Dep't 2008) (two years); *Rizzo v. St. Lawrence University,* 24 A.D.3d 983, 805 N.Y.S.2d 479 (3d Dep't 2005) (same); *Weimer v. Weimer,* 281 A.D.2d 989, 722 N.Y.S.2d 328 (4th Dep't 2001) (three years).

Further, none of the additional Midtown defendants were parties to the prior litigation, so it would have been impossible for them to have committed any fraud on the courts.  As to Midtown, Imperatore and Stone, the Appellate Division's prior holding mandates dismissal of this claim as insufficient.

### B.  The Claims That Defendants Committed Fraud Are Also Time-Barred and Insufficient.

The Complaint also makes conclusory allegations that Defendants committed fraud (*see e.g.,* Berger Aff., Ex. A, ¶¶36, 38, 47, 51, 56, 66, 89, 92, 127, 134, 139(2), 141, 143, 275, 283(8, 15-18), 402, 470, 473, 480, 501, 517, 623, 659-60, 673, 692-93).  These allegations are included as part of the fraud on the court allegations.  As noted above, the only allegations of such fraud on the courts reference statements made to the courts seven to eight years ago, in 2005 and 2006.  To

---

[10]   There is one conclusory allegation that "everything they affirmed from inception to 2010 was false ...", but no specificity.  (Berger Aff., Ex. A, ¶353).

1219295.3

the extent Jericho Group may be also alleging fraud relating to events concerning to the underlying transaction, the 2002 Contract, and the cancellation of the 2002 Contract and the return of the deposit, those events occurred more than eleven years ago.

"The statute of limitations for fraud claims is six years from the time of the fraud itself, or within two years of discovery of the fraud, or within two years of the time that a reasonable person should have discovered the fraud. (CPLR 213[8])." *Centro Empresarial Cempresa v. America Movil*, 76 A.D.3d 310, 336, 901 N.Y.S.2d 618, 638 (1st Dep't 2010), *aff'd*, 17 N.Y.3d 269 (2011). Here, any purported fraud occurred more than six years ago, and was known to Jericho Group in 2005 and 2006 at the time of the prior court proceedings. Accordingly, Plaitniffs' claims that the Midtown Defendants committed fraud against it are all time-barred.

Plaintiffs' claims of fraud against the Midtown Defendants also fail to state a cause of action. "The elements of fraud are a misrepresentation or a material omission of fact which was known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or omission, and injury." *Visionchina Media Inc. v. Shareholder Representative Servs., LLC*, 109 A.D.3d 49, 57, 967 N.Y.S.2d 338, 343 (1st Dep't 2013). Moreover, a fraud claim must be pled with the particularity required by CPLR 3016(b). *A.L. Eastmond & Sons, Inc. v. Keevily, Spero-Whitelaw, Inc.*, 107 A.D.3d 503, 503, 968 N.Y.S.2d 436, 437 (1st Dep't 2013).

The Complaint fails to particularize any fraud allegedly committed by the Midtown Defendants based on statements contained in the pleadings allegedly constituting a fraud on the court. As noted above, the additional Midtown Defendants were not even parties to the prior litigation. Moreover, Plaintiffs do not allege reliance with respect to the alleged fraud on the court allegations, nor could they. To the extent Jericho Group is alleging fraud relating to the underlying 2002 Contract, such a claim has already been dismissed by the Appellate Division and could not be brought again on grounds of res judicata and collateral estoppel, as discussed above.

1219295.3

*See* Berger Aff., Ex. L, p. 1 ("This Court's ruling that plaintiff 'fails to show fraud in the underlying transaction' (47 A.D.3d at 64), was not mere dicta and acts as a bar to plaintiffs' claim of willful and deliberate breach of the contract."). Accordingly, to the extent the Complaint attempts to allege that any of the Midtown Defendants committed fraud, such a claim must be dismissed.

### C. The Sixth, Eleventh, and Seventeenth Causes of Action, As Well as any of the Other Causes of Action that are Based on Purported Newly Discovered Evidence, Are Time-Barred and Insufficient

The Complaint contains repeated references to "recently discovered" evidence. *See, e.g.,* Berger Aff., Ex. A, ¶¶36-38, 96, 137-40, 142-46, 149-51, 154, 242-45, 443, 44-46, 448, 452-53, 514-15, 523, 527, 529-30, 535-36, 597, , 603-04, 609, 616-19, 622-26, 634, 642, 648, 651, 653-54, 669, 671, 685, 689, 706-08). The only specific documents referenced as being "recently discovered" are an August 21 three-line email from defendant Emmet to defendant Imperatore noting that Pfeiffer was asking for "papers documenting the successful clean-up of the oil spill caused … by the neighboring property" (Berger Aff., Ex., A, ¶138),[11] and a June 14, 2002 letter from Jericho Group's attorney at the time, defendant Michael Szegda, to defendant Stone, enclosing executed copies of the 2002 Contract, along with the deposit, and indicating where notices should be sent. (Berger Aff., Ex. A, ¶443-44).

A motion based on newly discovered evidence, like one based on fraud on the court, must also be brought within a reasonable time, and the applicant must also establish that the newly discovered evidence could not have been discovered earlier through the exercise of due diligence. *See, e.g., City of Albany Industrial Dev. Agency v. Garg*, 250 A.D.2d 991, 993, 672 N.Y.S.2d 541, 543 (3d Dep't 1998) ("law imputes a reasonable time"). The applicant "bears a heavy burden of

---

[11]   Imperatore promptly responded by email dated August 23, 2002, which was discussed by the Appellate Division stating that in this email "Midtown let Jericho know that it had no information concerning the cleanup of an oil spill on properties neighboring the land Jericho sought to purchase" but "Midtown gave Jericho the name of a contact person at the New York Department of Environmental Conservation, his telephone number, and a project number and spill number for the incident at issue, so that Jericho could find out the status of any spill and/or cleanup." Berger Aff., Ex. L, pg. 3).

1219295.3

showing due diligence in presenting the new evidence to the Supreme Court." *Specialized Realty Services, LLC v. Town of Tuxedo*, 106 A.D.3d 987, 987, 966 N.Y.S.2d 148, 149 (2d Dep't 2013). Here, Plaintiffs fail to allege when they discovered these purportedly new documents or why they could not have been discovered sooner with due diligence. (To the contrary, Imperatore's August 23rd email was actually before the Court in the Second Action). Waiting almost six years after the entry of the final judgment in the First Action and almost five years after entry of judgment in the Second Action to commence this new claim based on newly discovered evidence, without any allegations about when such evidence was discovered and why it could not have been discovered sooner, is unreasonable, and therefore Plaintiffs' claim based on this "newly discovered evidence" is time-barred. *Kleet Lumber Co. v. Saw Horse Remodelers, Inc.*, 13 A.D.3d 414, 415, 787 N.Y.S.2d 64, 65 (2d Dep't 2004) (holding failure to move to vacate within two years of having the evidence as unreasonable); *City of Albany Industrial Dev. Agency v. Garg*, *supra*, 250 A.D.2d at 993, 672 N.Y.S.2d at 543. Moreover, "[t]his Court denied relief based upon the discovery of new evidence, finding that Jericho knew of the correspondence between Midtown and the NYDEC before the action was filed, and could have submitted the documents in opposition to Defendants' motion to dismiss the complaint." (Berger Aff., Ex. M, p. 3).

Furthermore, such a motion would be denied because this evidence would not have produced a different result. *Kleet Lumber Co. v. Saw Horse Remodelers, Inc.*, 13 A.D.3d 414, 415, 785 N.Y.S.2d 64, 65 (2d Dep't 2004). Imperatore promptly responded to Emmet's email, advising Jericho Group that Midtown did not have the information about the oil spill, but providing Jericho Group with the contact information at the New York DEC so it could find out the information. (Berger Aff., Ex. J, p. 3). Therefore, the email from Emmet requesting information is immaterial. The final "newly discovered" letter from Jericho Group's own attorney was always available to it.

**D.**     **The Eleventh through Fourteenth Causes of Action, to the Extent They Allege a Breach of 2002 Contract, Are Time-Barred and Insufficient As Previously Held By the Appellate Division.**

The Complaint also seeks a declaration that Midtown willfully and deliberately breached the 2002 Contract (Berger Aff., Ex. A, ¶¶87, 548, 557, 576, 586 and Wherefore Clause). This is the same relief that Jericho Group sought in the First and Second Actions, and therefore such a claim must be dismissed for the reasons discussed above (improper collateral attack on prior judgment, res judicata and collateral estoppel). Any such contract claim would, at this point, also be time-barred. There is a six year statute of limitations for breach of contract claims, measured from the time of the alleged breach. *See, e.g., Senter v. Gitlitz*, 97 A.D.3d 808, 949 N.Y.S.2d 133 (2d Dep't 2012) (citing CPLR 213[2]). Any alleged breach would have had to have occurred in 2002, more than eleven years before the commencement of this third action. Furthermore, as already held by the Appellate Division, Jericho Group's breach of contract cause of action lacks merit. *See* Berger Aff., Ex. J, p. 4 ("The assertions in the complaint … do not support Jericho's allegation that Midtown breached the contract to sell the subject property, but instead indicate that Jericho cancelled the contract and recovered its down payment").

**E.**     **The Sixteenth Cause of Action for Tortious Interference is Time-Barred and Insufficient.**

The Sixteenth Cause of Action is for "tortious interference." It alleges that "Defendants knowingly, willfully and intentionally interfered with the contract between Jericho [Group] and Midtown", that "Defendants knowingly, willfully and intentionally engaged in suppression and spoliation of documentary evidence, constituting tortious interference with contract in existence between Jericho [Group] and Midtown", that "suppression and spoliation of recently discovered documents, evidence and admission, withheld from the partners of Midtown, constitute Tortious Interference in the parties' contract rights" and that "Defendant [Edward G.] Imperatore, acting as a third party, engaged in suppression and spoliation of documentary evidence by withholding

such documents, evidence and admissions from Midtown thereby causing Midtown to willfully and deliberately breach the contract." (Berger Aff., Ex. A, ¶¶603, 604, 606, 608).

This tortious interference with contract claim against the Midtown Defendants is subject to a three-year statute of limitations. *Buller v. Giorno*, 57 A.D.3d 216, 216, 868 N.Y.S.2d 639, 640 (1st Dep't 2008). Here, the allegations are that the withholding of evidence from partners at Midtown caused them to breach the 2002 Contract. Such actions, had they occurred, would have occurred in 2002, more than eleven years ago, and therefore this cause of action is time-barred.

It also fails to state a cause of action. A claim of tortious interference with contract requires: (1) the existence of a valid contract between plaintiff and the third party; (2) the defendants' knowledge of that contract; (3) the defendants' intentional procuring of the third-parties breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom. *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 82 (1996); *Beecher v. Feldstein*, 8 A.D.3d 597, 597, 780 N.Y.S.2d 153, 154 (2d Dep't 2004).

Here, the contract allegedly interfered with is the 2002 Contract between Jericho Group and Midtown. The Appellate Division has already held twice that Midtown did not breach this contract. Accordingly, there is no basis for the tortious interference cause of action, and it should be dismissed.

### F. The Twenty-Third Cause of Action For Conversion Is Time-Barred and Insufficient.

The statute of limitations for conversion claims is three years. *Mirvish v. Mott*, 18 N.Y.3d 510, 518, 942 N.Y.S.2d 404, 409 (2012); *D'Amico v. First Union Nat'l Bank*, 285 A.D.2d 166, 172, 728 N.Y.S.2d 146, 151 (1st Dep't 2001) (citing CPLR 214[3]). The limitations period begins to run when the alleged conversion takes place. *Id.*

The alleged conversion claim in this case relates to Jericho Group's former lawyers' failures to return two different deposits, $150,000 from the "Baystone case" and $250,000 relating to the 2002 Contract. The Complaint alleges that Jericho Group's attorney Michael

Szegda stole the $150,000 in 2001-2002 (Berger Aff., Ex. A, ¶167(3) and that sometime in 2002 Jericho Group discovered that Mr. Szegda released the $150,000 from escrow.  (Berger Aff., Ex. A, ¶212).  The Complaint also alleges that Michael Szegda did not return any of the $250,000 deposit from the Midtown case (Berger Aff., Ex. A, ¶708), that Midtown never returned the deposit directly to Plaintiffs (Berger Aff., Ex. A, ¶186 (vi)), and that Defendants had no right to wire the $250,000 to Michael Szegda in 2002 (Berger Aff., Ex. A, ¶186(xx)).  Accordingly, since the alleged conversions occurred in 2001 and 2002, any conversion claim against the Midtown Defendants is time-barred.

The conversion claim also fails to state a cause of action against the Midtown Defendants. "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession. … Two key elements of conversion are (1) plaintiff's possessory right or interest in the property … and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50, 827 N.Y.S.2d 96, 100 (2006).

Here, Plaintiffs' conversion claim as it relates to the failure of defendant Michael Szegda to return the Baystone deposit has nothing to do with the Midtown Defendants (Berger Aff., Ex. A, ¶707.  Although Plaintiffs also allege that Midtown failed to return Jericho Group's deposit (Berger Aff., Ex. A, ¶708), this allegation completely contradicts the allegation that Jericho Group's own lawyer failed to return its deposit.  Moreover, the Appellate Division found in its prior decision that "Midtown returned the $250,000 down payment." (Berger Aff., Ex. J, p. 3). Accordingly, Plaintiffs' conversion claim fails to state a cause of action against the Midtown Defendants.

### G.    The Twenty-Fourth Cause of Action For Negligence Is Time-Barred and Insufficient.

"[A] three-year statute of limitations applies to an action alleging ordinary negligence"

1219295.3

*Santana v. St. Vincent Catholic Med. Ctr.*, 65 A.D.3d 1119, 1119, 886 N.Y.S.2d 57, 58 (2d Dep't 2009); CPLR 214.  There are no allegations in the Complaint against any of the Midtown Defendants for actions that took place less than three years before this action was commenced. Accordingly, to the extent that the Twenty-Fourth Cause of Action alleges negligence against any of the Midtown Defendants, it must be dismissed as time-barred.

Moreover, the Complaint also fails to state a negligence cause of action against any of the Midtown Defendants.  "The elements of a common-law negligence cause of action are a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting therefrom." *Jiminez v. Shahid*, 83 A.D.3d 900, 901, 922 N.Y.S.2d 123, 124 (2d Dep't 2011), *lv. denied*, 18 N.Y.3d 807 (2012).  There are no allegations that satisfy any of these elements.

### H.  The Twenty-Fifth Cause of Action Based On Judiciary Law § 487 Is Time-Barred and Insufficient.

"An action seeking damages under Judiciary Law §487 must be commenced within the longer of three years from the time of the underlying deceit or collusion or within two years from the time the deceit or collusion was discovered, or with reasonable diligence, could have been discovered." *Melcher v. Greenberg Traurig*, LLP, 102 A.D.3d 497, 499, 958 N.Y.S.2d 362, 364 (1st Dep't 2013) (citing CPLR 214[2]); *Lefkowitz v. Appelbaum*, 258 A.D.2d 563, 563, 685 N.Y.S.2d 460, 461 (2d Dep't 1999); *Kuske v. Gellert & Cutler, P.C.*, 247 A.D.2d 448, 449, 667 N.Y.S.2d 955, 955 (2d Dep't 1998); *Jorgensen v. Silverman*, 224 A.D.2d 665, 666, 638 N.Y.S.2d 482, 483 (2d Dep't 1996).  *But see, Bohn v. 176 W. 87th St. Owners Corp.*, 106 A.D.3d 598, 966 N.Y.S.2d 42 (1st Dep't), *lv. to appeal dismissed in part, denied in part*, 22 N.Y.3d 909 (2013); *Guardian Life Ins. Co. v. Handel*, 190 A.D.2d 57, 596 N.Y.S.2d 804 (1st Dep't 1993) (applying a six year statute of limitations to Judiciary Law §487 claims).

Here, the alleged deceit and collusion occurred in 2005 and 2006, and there are no allegations that defendants Imperatore or Stone, the only Midtown Defendants who are also alleged to be attorneys, acted in their capacity as attorneys for Midtown after September 2002.

The only facts alleged concerning the conduct of Imperatore after September 2002 were in his capacity as party representative of Midtown, which, since 2004, was being represented in the prior litigations by Jones Day and Phillips Nizer.  Accordingly, whether the court were to apply a three year limitations period or a six year limitations period, the Judiciary Law §487 claim against the Midtown Defendants is time-barred.

It also fails to state a cause of action because the Complaint does not allege that any of the Midtown Defendants were acting as attorneys as is required by Judiciary Law §487. Moreover, Jericho Group previously alleged the same claim against defendants Imperatore and Stone in the Second Action, and that claim was dismissed.  (See Berger Aff., Ex. F, ¶249; Berger Aff., Ex. L, p. 2).  Accordingly, the current §487 claim against defendants Imperatore and Stone, should also be dismissed on grounds of res judicata and collateral estoppel.

## I.     There Is No Cause Of Action For Conspiracy

The Complaint also includes repeated conclusory claims of "conspiracy" and "collusion" between the "Defendants" and more specifically between Midtown, Imperatore, Stone and Jericho Group's former lawyers to defraud it and the courts (*see e.g.*, Berger Aff., Ex. A, ¶¶37-38, 89, 96-97, 104, 106, 109-110, 184-85, 508-10, 583-85, 623-24).

New York, however, does not recognize a separate civil conspiracy cause of action:
No action for civil conspiracy is cognizable in law.  A plaintiff first must plead specific wrongful acts which constitute an independent tort. … The pleading of a conspiracy may be made only to connect the actions of the individual defendants with an actionable injury and to establish that these acts flow from a common scheme or plan. *Smukler v. 12 Lofts Realty, Inc.*, 156 A.D.2d 161, 163-164, 548 N.Y.S.2d 437, 439 (1st Dep't 1989); *see also Alexander & Alexander, Inc. v. Fritzen*, 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 547 (1986) ("'a mere conspiracy to commit a [tort] is never of itself a cause of action'"); *Steier v. Shoshana Kraushar Schreiber*, 25 A.D.3d 519, 522, 810 N.Y.S.2d 431, 434 (1st Dep't 2006).

1219295.3

Where, as here, the Complaint fails to allege any viable tort, the civil conspiracy claim must be dismissed as well.  Moreover, the conclusory conspiracy allegations in the Complaint are themselves insufficient to connect any of the Midtown Defendants with Jericho Group's former lawyers and to make them liable for the otherwise unconnected allegations. "In order for a 'conspiracy' to be actionable … [o]ne must [also] allege facts sufficient to constitute an agreement or common understanding, a joint intent to tortiously injure." *Landmark West! v. Tierney*, 9 Misc. 3d 1102(A), 2005 N.Y. Misc. LEXIS 1859, at *5 (Sup. Ct. N.Y. Co. Sept. 1, 2005), *aff'd*, 25 A.D.3d 319, 807 N.Y.S.2d 342 (1st Dep't 2006).  Accordingly, the conspiracy allegations are in themselves insufficient to make all liable for the actions of any one.

### J.   Plaintiffs' Claim For Punitive Damages Must Also Be Dismissed

First, punitive damages are not available for breaches of contract. *International Plaza Assocs., L.P. v. Lacher*, 63 A.D.3d 527, 528, 881 N.Y.S.2d 414, 415 (1st Dep't 2009), *aff'd in part*, 104 A.D.3d 578, 961 N.Y.S.2d 427 (1st Dep't 2013). Punitive damages are only recoverable where there is a viable intentional tort and the party being held liable evinces a high degree of moral culpability, is so flagrant as to transcend mere carelessness, or constitutes willful or wanton negligence or recklessness. *See generally New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995); *Rocanova v. Equitable Life Assur. Soc'y*, 83 N.Y.2d 603, 612 N.Y.S.2d 339 (1994).  There is nothing alleged in the Complaint which even remotely approaches this requirement.  This is a private contractual dispute and therefore Plaintiffs' request for punitive damages should be dismissed.

### VI.   PLAINTIFFS AND PFEIFFER SHOULD BE ENJOINED FROM AGAIN SUING THE MIDTOWN DEFENDANTS

"[A]though public policy generally mandates free access to the courts, … courts have imposed injunctions barring parties from commencing any further litigation where those parties have engaged in continuous and vexatious litigation." *In the Matter of Robert v. O'Meara*, 28 A.D.3d 567, 568, 813 N.Y.S.2d 736, 738 (2d Dep't 2006). *See also, Banushi v. Law Office of*

*Epstein*, 2013 NY Slip Op. 06930 (1st Dep't Oct. 24, 2013); *Quinones v. Neighborhood Youth & Family Servs., Inc.*, 71 A.D.3d 1106, 1106-07, 896 N.Y.S.2d 908, 908 (2d Dep't 2010); *Barash v. Northern Trust Corp.*, 54 A.D.3d 407, 407, 862 N.Y.S.2d 293, 293-84 (2d Dep't 2008); *Braten v. Finkelstein*, 235 A.D.2d 513, 514, 652 N.Y.S.2d 769, 770 (2d Dep't 1997); *Harbas v. Gilmore*, 244 A.D.2d 218, 219, 664 N.Y.S.2d 921, 922 (1st Dep't 1997).

The Complaint in this case is but the latest in a costly series of frivolous claims, motions, and appeals arising out of the same failed 2002 real estate transaction.  Samuel Pfeiffer is abusing the judicial process by commencing this lawsuit for same relief that has been denied by this Court, repeatedly denied by the Appellate Division, and which the Court of Appeals has twice refused to consider.  In again pressing its baseless claims, he and Jericho Group are wasting an inordinate amount of judicial resources, as they have for nearly a decade since its first lawsuit was commenced in 2004.  In its prior lawsuits, Jericho Group used seven different law firms to bring a succession of baseless and vexatious actions, motions and appeals.  Indeed, just last week, Mr. Pfeiffer caused the Plaintiffs to file a new meritless action against the undersigned et al, which, if not checked, is going to spawn another series of motions to dismiss.  (Berger Aff., Ex. O).  In light of this history of abusing the judicial system and harassing Midtown and its related individuals and entities, this Court should now enjoin Plaintiffs and Mr. Pfeiffer, from commencing any further actions against them relating to the subject matter of this action without the prior written permission of this Court.

## VII.   THE COURT SHOULD AWARD MIDTOWN COSTS AND SANCTIONS

A "defendant who defeats a frivolous civil claim is not without some possibility of recovering legal expenses." *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 203 (1999).  Under 22 NYCRR § 130-1.1-1.5, courts may award fees and costs and impose sanctions for frivolous conduct.  *Id. See Eberhardt v. Frasca*, 286 A.D.2d 748, 730 N.Y.S.2d 725 (2d Dep't 2001).   What Jericho Group and Mr. Pfeiffer have demonstrated to this Court is that they will not accept judicial rulings, that

they will appeal everything, and will constantly invent ways to harass Midtown and any one it considers related to Midtown. *See, e.g., Mountain Lion Baseball, Inc. v. Gaiman*, 263 A.D.2d 636, 693 N.Y.S.2d 289 (3d Dep't 1999) (citations omitted). The imposition of substantial costs and sanctions, plainly justified herein, will hopefully create a much needed deterrent to their continuing flow of repetitious and legally specious claims. Indeed, Jericho Group's conscious pattern of baseless litigation has placed an unconscionable economic burden on Midtown in having to respond to this now third lawsuit involving the same issues that were dismissed by the Appellate Division three times. The Court should order Plaintiffs and Mr. Pfeiffer to pay $50,000 to Midtown for continuing this charade.

## CONCLUSION

For all the foregoing reasons, the Midtown Defendants respectfully request that the Court dismiss the Complaint with prejudice as against the Midtown Defendants, enjoin Plaintiffs and Mr. Pfeiffer From commencing any further lawsuits against the Midtown Defendants relating to the subject matter of this action without the prior written approval of the Court, sanction Plaintiffs and Mr. Pfeiffer $50,000 for having commenced this frivolous action, and award the Midtown Defendants their costs and disbursements.

Dated:   New York, New York
        January 8, 2014

Respectfully submitted,

PHILLIPS NIZER LLP
Attorneys for the Midtown Defendants

By: _____
      George Berger
      Jeffrey Shore

1219295.3

Signed and certified pursuant to 22 NYCRR §130-1.1-a

_____

Jeffrey Shore