UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

JERICHO GROUP LTD. and JERICHO CO.,

        Plaintiffs,

  -against-

MID-TOWN DEVELOPMENT LIMITED PARTNERSHIP, MIDTOWN DEVELOPMENT. L.P., EDWARD G. IMPERATORE, MAURICE L. STONE, EDWARD W. ROSS, ARTHUR E. IMPERATORE, WR WEST SIDE ASSOCIATES, HADRIAN PROPERTIES LTD, FANFARE ENTERPRISE INC, ARCORP PROPERTIES, JERRART VENTURE PROPERTIES, HARWOOD LLOYD LLC, GEORGE BERGER, JEFFREY SHORE, PHILIPS NIZER LLP, FREDRICK E. SHERMAN, TODD R. GEREMIA, JONES DAY, BROWN HARRIS STEVENS LLC, ELAINE OSBORN EMMET, MICHAEL A. SZEGDA, BAYSTONE EQUITIES INC, ROBERT B. GOEBEL, RICHARD MARASSE, LISA SOLOMON, JOHN DOE 1-10 and XYZ CORPORATION 1-10.

        Defendants.

----------------------------------------X

CIVIL ACTION NO.: 1:14-cv-02329 DLI-VMS

**REPLY OF DECEMBER 17, 2014 WITH CORRECTIONS**

Dated: New York, New York
       December 25, 2014

                                    The Law Offices of Bradley S. Gross
                                    Attorney for Plaintiffs
                                    *JERICHO GROUP LTD. and JERICHO CO.*
                                    45 Rockefeller Plaza – Suite 2000
                                    New York, New York 10111
                                    (212) 732-7412

Plaintiffs submit this Reply Memorandum (See Declaration of Samuel Pfeiffer Submitted also herewith) in further support of their Cross Motion for an order herein, directing the Defendant, Midtown, to cease marketing the Property which is the subject of this litigation, directing Midtown not to convey or otherwise encumber title to the Property, pending a disposition of this matter or further order of the Court, further directing Midtown to specifically perform the Contract and transfer title of the Property to Plaintiffs, and for the issuance of a further Order, granting Plaintiffs such other and different relief as this Court shall deem to be just, fit and proper, in these premises. (See generally the Cross Motion dated November 19, 2014)  Plaintiffs also respectfully ask this Court to disregard the recently filed motion seeking to vacate the notices of pendency in this matter, in that the same are – as previously stated – "rife with fraud".

For YEARS preceding this action the Defendants have maintained that the Plaintiffs cancelled the Contract for the Property and that Midtown did not willfully and deliberately breach the Contract.  For all those years, and even now, the Defendants have been LYING to the Court.   Despite what they have repeatedly said, the Plaintiffs have never elected to cancel the Contract and the Contract has not been cancelled, but rather Midtown has willfully and deliberately breached the Contract.

The claims in this action were first interposed in a complaint filed in the New York State Court more than a year ago (The New York State Court Complaint is annexed to the Initial Complaint and incorporated therein and into this cross motion by reference). None of the Defendants have ever denied the allegations in the New York State Court Complaint, the Verified Complaint or the Verified Amended Complaint (Exhibits 1 and 2 to the Cross Motion) or for that matter the very serious claims therein interposed.   On the

contrary, in their respective June 30, 2014 motions to dismiss the initial complaint in this action, they all admitted, for example, the existence of an August 21, 2002 email from their broker, Elaine Osborn Emmet.  The Emmet email is conclusory evidence that Plaintiffs were asking for documents relating to the oil spill on the Midtown Property as of that date.  The oil spill had not been cleaned up and Midtown had hundreds of documents relating thereto. Under paragraph 29(c) of the Contract, Midtown was required to provide such documents when requested.  Their failure to do so constitutes a willful and deliberate breach of the Contract.

The Defendants also each admit that Szegda sent a letter, dated August 13, 2002, requesting documents pertaining to the oil spill.  Failing to provide the requested documents constitutes a willful and deliberate breach of the contract.  By virtue thereof, and irrespective of any claim by Defendants that the Contract was cancelled (Plaintiffs never elected to cancel the contract and the contract has never been cancelled) Plaintiffs Midtown is an remains in willful and deliberate breach of the Contract and Plaintiffs are and always have been entitled to have title to the property transferred to them.

The Emmet Email and the August 13, 2002 letter from Szegda prove that Plaintiffs were asking for documents relating any oil spill on the Midtown Property on August 21, 2002 and earlier, on August 13, 2002.  These two documents alone – previously hidden from Plaintiffs - prove that Midtown, and the Defendants Imperatore, Stone, Sherman, Geremia, Jones Day, Goebel, Solomon, Berger, Shore and Philips Nizer lied to the Court, repeatedly, when they represented throughout the prior litigation that Plaintiffs only asked for such documents on the eve of expiration of the study period. Although Plaintiffs only recently became aware of its existence, in their January 8, 2014

page

submission to the New York State Court the Defendants admitted that Imperatore responded to the Emmet Email. The Court erroneously incorporated the Defendants' fraud into their rulings when it failed to see Midtown's willful and deliberate breach and opined instead that by asking on the last day of the study period the information must not have been important to Plaintiffs.

This court should now act, direct Defendants to cease any and all marketing of the property, prevent them from encumbering or otherwise transferring any interest therein and further direct them to close title instead with the Plaintiffs, forthwith.

Midtown's Opposition

Midtown opposes the cross motion on the pretext that Plaintiffs will not suffer irreparable harm absent the relief herein sought; that Plaintiffs have not demonstrated a likelihood of success or sufficient questions going to the merits of their claims to make them fair ground for litigation; and that a balancing of equities favors Midtown.

Midtown is wrong on all fronts.

a. Irreperble harm

As set forth in the moving papers, this action concerns a pervasive fraud perpetrated upon the plaintiffs by and amongst a group of co-conspirators, including Midtown. The purpose of the scheme to defraud Plaintiffs is to steal from them their rights in and to a valuable New York City development site.

In or about June 19, 2002, Plaintiffs became the buyers and beneficial parties in interest under a contract of sale (the "Contract"), to purchase certain real property (the "Midtown Property") owned by the defendant, Mid-Town Development Limited Partnership ("Midtown"). (Verified Amended Complaint at para. 2) The Plaintiffs are

and always have been ready, willing and able to close title under and pursuant to the terms and conditions of the Contract; and Plaintiffs would have closed title thereunder, were it not for Midtown's continuing willful and deliberate breach of the Contract and ongoing fraud on Plaintiffs and the Court. (Verified Amended Complaint at para. 4)

In purported reliance upon <u>N. Atl. Operating Co. v. Evergreen Distributors, LLC</u>, 293 F.R.D. 363, 371 (E.D.N.Y. 2013), Midtown argues that Plaintiffs have somehow delayed prosecution of their meritorious claims, to such a degree that this Court is barred from finding irreparable harm. In the first instance, nowhere in the case cited by Midtown is the language quoted by them. This is precisely the type of fraud engaged by the defendants throughout and which Plaintiffs have and continue to be been victimized. <u>N. Atl. Operating Co</u>. concerns a request for expedited discovery, requiring an analysis simply not necessary here.

In any event, and despite Midtown's assertion to the contrary, the facts giving rise to this action were only just recently discovered. Midtown, who has participated in the fraud and actively concealed the truth from Plaintiffs and the Court, should not now be heard to complain of delay, now that the truth has finally been revealed and Plaintiffs have been moving as expeditiously as possible in furtherance of its claims.

Moreover, and unlike the pursuit of expedited discovery as in <u>N. Atl. Operating Co.</u>, the case at bar concerns the disposition of a valuable piece of real estate. Whereas the Contract has never been cancelled, but rather it remains in full force and effect as of today (Verified Amended Complaint at para. 3), it is a foregone conclusion that Plaintiffs will be irreparably harmed should the property instead be conveyed out from under them.

Unlike expedited discovery, which presumably can be gotten later, once the Midtown Property is gone. . . its gone. This is the very definition of irreparable harm.

The Midtown Property and its location are unique, one of a kind, and special. (Verified Amended Complaint at para. 122) In light of the unique nature of the realty and that the relief sought by plaintiff is, *inter alia*, specific performance of the contract, plaintiff would suffer irreparable harm if defendant was allowed to transfer, sell or encumber the realty during the pendency of the action (*see, Seitzman v. Hudson Riv. Assocs.,* 126 A.D.2d 211, 214, 513 N.Y.S.2d 148; *see generally, Van Wagner Adv. Corp. v. S & M Enters.,* 67 N.Y.2d 186, 192, 501 N.Y.S.2d 628, 492 N.E.2d 756).

Furthermore, although nowhere within the moving papers, Midtown's attorney (who candidly admits that he is not personally handling the transaction) recently filed with the Court a letter indicating that there was a potential business transaction for the property. Thus Plaintiff has also established (from defendant's submission outside the moving papers) its burden that Defendant "threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of [their] rights respecting the subject matter of the action." (*See* CPLR 6301.) *Lezell v. Forde*, 26 Misc. 3d 435, 440, 891 N.Y.S.2d 606, 611 (Sup. Ct. 2009)

Accordingly, Plaintiffs have satisfied their burden of showing irreparable harm absent the relief herein sought.

b. Likelihood of success

To sustain its burden of demonstrating a likelihood of success on the merits, the movant must demonstrate a clear right to relief which is plain from the undisputed facts."

(*Matter of Related Props., Inc. v. Town Bd. of Town/Village of Harrison,* 22 A.D.3d 587, 590, 802 N.Y.S.2d 221 [2d Dept. 2005].)

Submitted herewith is the Affidavit of Benjamin Shafran. Mr. Shafran was the broker for Midtown and their agent during the underlying transaction. In his affidavit, Mr. Shafran identifies how Midtown has willfully and deliberately breached the Contract.

The Shafran Affidavit constitutes irrefutable proof that Plaintiffs requested documents relating to the Midtown Property zoning, any possible oil spill on the Property and exhibits to an agreement with Amtrak having an impact on the Property, that plaintiffs asked for those items as early as July, 2002, and that Midtown had documents responsive to this request. Midtown's failure to provide these documents constitutes willful and deliberate breach of the Contract.

c. Balancing Equities

In prior litigation, wherein Plaintiffs had previously sought specific performance of the Contract and damages, Midtown filed a motion to dismiss and introduced fraudulent documentary evidence, falsely representing that the fraudulent documents introduced by them proved that the Plaintiffs had elected to cancel the Contract, that the Contract was cancelled, that there was a valid cancellation of the Contract and that Midtown had not willfully and deliberately breached the Contract. (Verified Amended Complaint at para. 5) Midtown and its confederates have engaged in a campaign of fraud and concealment for the better part of a decade – with the goal of stealing the Midtown Property from Plaintiffs.

The newly discovered evidence set forth throughout the Complaint and the Amended Complaint, establishes that Plaintiffs were not represented in the prior

litigation. Their purported litigation attorney, was never acting for them, but rather he was part of the conspiracy against Plaintiffs to steal the Midtown Property from them. We did not have any lawyer – and to the contrary he committed fraud and allowed them to say that the Contract was cancelled – when it never was. The equities balance well in the favor of Plaintiffs.

<u>The Defendants Threats and Motion to Vacate the Notices of Pendency</u>

The Defendants have and continue to be defrauding the Court. Their recent Motion to Vacate the Notices of Pendency is, as previously stated, "rife with fraud". Moreover, the Defendants recently threatened Plaintiffs, thereby further impeding this action. On October 8, 2014, the Defendant Berger threatened Plaintiffs (Verified Amended Complaint, Exhibit 2 at paras. 96-101 and 843-853) so significantly effecting Plaintiffs as to have effectively thwarted their participation in this litigation. On November 12 and 13, 2014, the Defendant Goebel again called Samuel Pfeiffer, (See Declaration of Samuel Pfeiffer Submitted herewith) and again sought to influence him with promises that he had evidence against the other Defendants and that he should be "on the team" to improperly sway Mr. Pfeiffer's judgment. Goebel enforced his conversation claiming that he would lie to the Court and make it seem that Pfeiffer had engaged in untoward behavior should he not go along with Goebel.

Midtown's motion to vacate the notices of pendency is based upon the "No Second Chance" rule legislated in CPLR 6501. The "No Second Chance" only bars the filing of a second notice of pendency if Plaintiffs had abused the First Chance, either by not filing or serving the Complaint timely, or not filing or serving the notice of pendency timely, or the if the Plaintiffs canceled the Complaint or the notice of pendency or the

Court dismisses the Complaint and because of that the Court cancels the notice of pendency, but only on a ruling in the new action, that there was "no fraud on the Court" in the prior action and also first finds that the claims in the new action were or could have been raised in the prior Action, (as Justice Ramos ruled on May 1, 2008; see Exhibit 4 and set forth in his Order of September 8, 2008; see Exhibit 5 at pp. 10 -14 and as the Appellate Division did in their Ruling of November 5, 2009; see Exhibit 6).

The circumstances necessary to cancel the within notices, on the second chance rule, are simply not present before this Court. The ample record now before the Court (Verified Complaint dated April 10, 2014, (incorporating the November 29, 2013 Verified Complaint) and the Verified Amended Complaint dated November 14, 2014) shows extensive extrinsic fraud on the Court and on the Plaintiffs in the prior litigation that wasn't even discovered until late 2012, and in 2013 through 2014. The claims in this action, based upon those discovered frauds that have yet even to be denied, could never have been raised in the earlier Action.

As active participants in the proceedings leading up to the above described rulings, Midtown and their attorneys knew these requirements, and they acknowledged their understanding in their June 30, 2014 Memorandum of Law (Exhibit 4). In their July 24, 2014 motion, Midtown first turned a blind eye and ignored what they know the state of the law to be, what Justice Ramos actually ruled on May 1, 2008 and what Justice Ramos actually ordered on September 8, 2008 (as they themselves spelled out just 24 days earlier, in their June 30, 2014 Motion - Exhibit 4 at pp. 7-9 and 44), and then, in their Reply dated December 3, 2014, they again misrepresented the law and also misrepresented the facts, stating that Justice Ramos had ruled just the opposite of what

his September 8, 2008 order actually says. The foregoing knowing misrepresentations must not go unnoticed by the Court.

Conclusion

Based upon the foregoing, the Court should grant the cross motion.

Dated: December 25, 2014

Respectfully Submitted,

_____
The Law Offices of Bradley S. Gross
Attorney for Plaintiffs
*Jericho Group Ltd. and Jericho Co.*
BradGross@GrossLawPC.Com
45 Rockefeller Plaza – Suite 2000
New York, New York 10111
(212) 732-7412