1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JERICHO GROUP LTD, ET AL.,           )
                                     )        14cv02329
                Plaintiffs,          )
                                     )
V.                                   )        United States Courthouse
                                     )        Brooklyn, New York
                                     )
MID-TOWN DEVELOPMENT LIMITED         )        WEDNESDAY, MARCH 4, 2015
PARTNERSHIP, ET AL.,                 )
                                     )
                Defendants.          )
_____    )


TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE DORA L. IRIZARRY
UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFFS:     BRADLEY S. GROSS LAW OFFICE
                        BY:  BRADLEY S. GROSS, ESQ.
                        90 Maiden Lane
                        Fourth Floor
                        New York, New York 10038


                        LIDDLE & ROBINSON, LLP
                        BY:  JAMES R. HUBBARD, ESQ.
                        BY:  CAITLIN BROWN, ESQ.
                        800 Third Avenue
                        New York, New York 10022


FOR THE DEFENDANTS:     PHILIPS NIZER
                        BY:  JEFFREY SHORE, ESQ.
                        BY:  GEORGE BERGER, ESQ.
                        BY:  EDWARD W. ROSS, ESQ.
                        BY:  EDWARD G. IMPERATORE, ESQ.
                        21 Main Street, East Building
                        Suite 200
                        Hackensack, New Jersey 07601

2

1   (APPEARANCES CONTINUED)

2   FOR THE DEFENDANTS:      JONES DAY
                             BY:  JOSHUA S. STILLMAN, ESQ
3                            BY:  MEIR FEDER, ESQ.
                             222 East 41st Street
4                            New York, New York 10017

5
                             LAW OFFICES OF LISA M. SOLOMON
6                            BY:  LISA M. SOLOMON, ESQ.
                             305 Madison Avenue
7                            Suite 4700
                             New York, New York 10165

8

9   THE COURT REPORTER:      NICOLE CANALES, CSR, RPR
10                           225 Cadman Plaza East
                             Brooklyn, New York 11201
11                           cnlsnic@aol.com

12
    Proceedings recorded by mechanical stenography, transcript
13  produced by computer-assisted transcript.

14

15

16

17

18

19

20

21

22

23

24

25

Proceedings                                        3

1          THE COURT:  Please be seated.  Good morning.

2          THE CLERK:  This is Civil Cause for Conference,

3    Docket 14CV2329, Jericho Group, et al, versus Mid-Town

4    Development Limited Partnership, et al.

5          Please state your appearances, starting with

6    plaintiff.

7          MR. GROSS:  Good morning, your Honor.  Brad Gross,

8    attorney for the plaintiff, Jericho Group, LTD.

9          MR. HUBBARD:  Good morning, your Honor.  I'm Jim

10   Hubbard of Liddle and Robinson.  With me is Caitlin Brown.

11   And with your permission, we would appear here specially this

12   morning.  We are not counsel of record, but we are here, with

13   Mr. Gross, in an effort to assist with the issue of the

14   representation of the plaintiff.

15         THE COURT:  Well, are you planning to become

16   attorney of record?

17         MR. HUBBARD:  We are considering it.  We have just

18   been contacted in the last few days.  We have had extensive

19   discussions with Mr. Pfeiffer about that, and we are

20   discussing retention of our firm to participate in the -- to

21   substitute Mr. Gross, and it will take us a few days to make

22   that decision.  I'm not prepared to enter an appearance this

23   morning, but I simply say to your Honor that we are actively

24   and in good faith considering the representation of the

25   plaintiff in this case, and wanted to be here and make

Proceedings                                4

1   ourselves available, to the extent the Court had questions

2   about that.

3           THE COURT:  All right.  I'll make an exception and

4   permit your appearance here today under those conditions.  I

5   hope that you are prepared to respond to some of the issues

6   that we are addressing here today.

7           MR. HUBBARD:  Thank you very much, your Honor.

8           THE COURT:  For the defendants, for Mid-Town

9   Development Limited Partnership.

10          MR. SHORE:  Good morning, your Honor.  Jeffrey

11  Shore.  My name is --

12          THE COURT:  Sorry.  We're having microphone

13  problems.  Sorry about that.

14          MR. BERGER:  George Berger --

15          THE COURT:  It might be better if you sit.

16          If I can ask all the attorneys, actually, to speak

17  into the microphones and remain seated.

18          MR. SHORE:  Sure, your Honor.  My name is Jeffrey

19  Shore.  I'm a party, and I'm counsel at Philip Nizer, which is

20  also a party.  Lead counsel, George Berger, should be on phone

21  right now.

22          THE COURT:  Mr. Berger, good morning.  Good morning

23  Mr. Shore.  And I expect that we'll have other parties by

24  telephone as well.

25          MR. BERGER:  Your Honor, I don't know what's going

NICOLE CANALES, CSR, RPR

Proceedings                                    5

1   on --

2           THE COURT:  No, it's not your fault.  We're having

3   technical difficulties on our end.  My apologies.  I'm going

4   to ask the parties who are on the telephone, please, when you

5   speak during the proceedings, to identify yourselves.

6           For Edward Imperatore?

7           MR. IMPERATORE:  Hi, your Honor.

8           THE COURT:  You're present.  Good morning.

9           MR. IMPERATORE:  Good morning.

10          THE COURT:  And do we have Matthew Jesse Sinkman?

11          MR. SHORE:  No, he's not here, your Honor.

12          THE COURT:  He's not here.

13          MR. SHORE:  He's just an associate of our firm.

14  He's not a party.

15          THE COURT:  Okay.  And for Maurice Stone.

16          MAURICE STONE:  Maurice Stone, your Honor.

17          THE COURT:  Good morning.

18          And Edward Ross by telephone.

19          EDWARD ROSS:  By telephone, your Honor.

20          THE COURT:  Mr. Ross, are you there?

21          EDWARD ROSS:  I'm on the telephone, your Honor.

22          THE COURT:  Edward Imperatore, you're appearing by

23  phone.  Mr. Imperatore, are you there?

24          MR. IMPERATORE:  Yes, I'm on the phone, your Honor.

25          THE COURT:  Okay.  It might be helpful if you move

Proceedings                                                6

1    any cell phones or electronic devices away from the phones.

2    That could cause some interference.

3            George Berger.

4            MR. BERGER:  Yes, your Honor.  I'm here.  I'm both a

5    party and lead counsel.

6            THE COURT:  I really apologize.  I'm so sorry about

7    that.

8            And Jeffrey Shore.

9            MR. SHORE:  Yes, that's me.

10           THE COURT:  I'm sorry.  We have you here twice.  And

11   you're here for -- on behalf of Philip Nizer.

12           PERRY GALLER:  Perry Galler, administrative partner.

13           THE COURT:  And we also have on behalf of

14   defendants, Sherman, Geramia and Jones Day.

15           MR. FEDER:  Yes, your Honor.  Meir Feder, for those

16   defendants, with Joshua Stillman.

17           THE COURT:  Okay.  And I see Mr. Geramia is here.

18   Good morning.

19           MR. FEDER:  And Mr. Sherman should be on the

20   telephone.

21           THE COURT:  Mr. Sherman, are you with us on the

22   telephone?

23           FREDERICK SHERMAN:  Yes, I am, your Honor.

24           THE COURT:  Okay.  Thank you.

25           For Lisa Solomon.

```
                        Proceedings                    7
```

1          MS. SOLOMON:  Yes, your Honor.

2          THE COURT:  Okay.  Good morning.

3          MS. SOLOMON:  Good morning.

4          THE COURT:  And Robert Goebel.

5          ROBERT GOEBEL:  Good morning, your Honor.

6          THE COURT:  All right.  I called this conference for

7    a number of reasons.  It was precipitated by plaintiffs'

8    request through Jericho Group Limited's representative, Samuel

9    Pfeiffer to --

10         Are you here, sir?

11         SAMUEL PFEIFFER:  Yes.

12         THE COURT:  You can sit here with your counsel.

13         SAMUEL PFEIFFER:  Thank you.  Thank you,

14   your Honor.

15         THE COURT:  Sure.  There was a request made to

16   relieve plaintiffs' counsel, who still -- at this point in

17   time, Mr. Gross, and to allow plaintiff 30 days to obtain new

18   counsel, to respond to defendants -- to the four motions to

19   dismiss that have been filed by the defendants.  Now,

20   obviously, plaintiff, being a corporation under the law, must

21   have counsel in order to litigate this case, but I have a

22   number of concerns here.

23         Some of the concerns were raised by the defendants,

24   in that this is the fifth time now that the plaintiff has

25   brought suit regarding the same failed real estate transaction

Proceedings                                                    8

1   and the undue delay that bringing in new counsel may cause to

2   move this case forward.  Now, I don't understand what the

3   reason is for plaintiffs seeking new counsel.  And I don't

4   know, Mr. Pfeiffer, if you want to address that since you are

5   here as a representative of the corporation.  Can we pass a

6   microphone over to Mr. Pfeiffer.  Make sure the green light is

7   on.  You have to tap the base to make sure the light is on.

8   Stand or sit, please, and just speak into the microphone.

9             SAMUEL PFEIFFER:  Thank you.  I sent your Honor a

10  letter dated February 10th.

11            THE COURT:  Yes, I read the letter.

12            SAMUEL PFEIFFER:  And I didn't have the lawyers.

13  Looks like the condition of what it is, or who it went to,

14  somehow could not prepare the papers, and all this dragging

15  around and of this long time should have been much earlier.

16            THE COURT:  He's here now.

17            Mr. Gross, you filed the Complaint, and you filed

18  the Amended Complaint on behalf of your client, which will

19  bring me to something else later on.  And you know this case,

20  so I don't see what benefit there is to bringing in new

21  counsel, at this point.

22            MR. GROSS:  Your Honor, it was somewhat well known

23  from August until --

24            THE COURT:  I don't think your microphone is on.

25  Touch the base.  There you go.

Proceedings                                                    9

1          MR. GROSS:  Unfortunately, I have suffered some

2   medical issues, and it's been an ongoing situation.

3          THE COURT:  How are you feeling now?

4          MR. GROSS:  Right now I'm shaking, quite frankly.

5   I'm more than welcoming the substitution.  And my familiarity

6   with the case might facilitate and be able to assist a new

7   firm.  Mr. Pfeiffer has certainly taken the position that he

8   feels that a substitution would be an appropriate thing to do,

9   at this time.

10          THE COURT:  Well, obviously, things happen in life,

11  right.  We are all human beings, and you can't predict when

12  things are going to effect your health and how that will

13  effect your ability to function in your personal life, as well

14  as in your working life.  If you have a job, you would not be

15  the first attorney to be in that situation, and I think it

16  takes a great deal of personal strength to recognize that you

17  might need some help, in that regard.  So in that regard,

18  since you feel personally that you -- the substitution would

19  be appropriate, given your personal situation, then I'm not

20  going to oppose the substitution of counsel.

21          That being said, however, having reviewed the

22  history of this case, the Complaint, and the various charges

23  complaints that have been made here, and the history of this

24  case as it meandered through the state court system, the

25  history is very -- is described, at least for the first time

Proceedings                    10

1    in the First Department's decision, in *Jericho Group Limited*

2    *versus Mid-Town Development, LP*, at 32 A.D.3d 294, a decision

3    in 2006, wherein the Appellate Division granted the

4    defendants' appeal and reversed a decision by the Supreme

5    Court judge, which denied the defendants' motion to dismiss

6    the Complaint, in the first instance.

7          There were other decisions that were subsequently

8    rendered by the appellate decision and need to appeal to the

9    Court of Appeals has been denied.  And as far as I am

10   concerned, based on my review, it certainly appears that the

11   present Amended Complaint makes exactly the same arguments

12   that were adjudicated in the first and the second actions.

13   And the second action was addressed by the Appellate Division

14   in 42 A.D.3d, 463 in 2008.  That's a First Department decision

15   in *Jericho Group Limited versus Mid-Town Development, LP*.  And

16   the First Department held there that the purchaser, that be

17   being Jericho Group Limited, had no cause of action for fraud

18   against the defendant.

19          And, finally, in the third decision by the First

20   Department, in 2009, 76 A.D.3d, 431, where -- this is the

21   second action that was brought -- relates to the second action

22   brought in state Supreme Court brought by Jericho.  The

23   Appellate Division held that res judicata barred the action,

24   because the same arguments were raised in the second cause of

25   action.

Proceedings                                    11

1          Now, I would like to hear from plaintiff why

2    the Court should not sua sponte dismiss plaintiffs' claims 1

3    through 15, 17, and 19 under the doctrine of res judicata.

4    And, frankly, as to the remaining claims, 16, 18, and 20,

5    those relate to conversion -- 16 is conversion by Defendants

6    Szegda -- hope I'm pronounced that correctly, S-z-e-g-d-a --

7    and Baystone.  Eighteen is intentional infliction of emotional

8    distress by defendants Berger, Shore, Philip Nizer and

9    Mid-Town.

10          And 20 relates to a Section 1983 action against the

11    attorney -- defendants or alleged violation of civil rights.

12    Why I shouldn't dismiss those claims for failure to state a

13    claim upon which relief can be granted?  Because, quite

14    frankly, reviewing the papers in this case, they do appear to

15    be likely to be dismissed.

16          Mr. Gross, perhaps you're in the best situation to

17    address this.

18          MR. GROSS:  I may be in the best situation, but I'm

19    not entirely prepared to do that today.  I didn't anticipate

20    having oral argument on the motions to dismiss.  We have

21    arguments, and reasons, and justification for bringing the

22    claims that we brought.  We believe them to be meritorious and

23    ones which would sustain --

24          THE COURT:  How can you stand here and tell me that

25    you think they're meritorious, when already the state court

Proceedings                    12

1   has decided that bringing these same actions over again in a

2   separate state court proceeding was res judicata -- was

3   dismissible on res judicata grounds?

4           MR. GROSS:  We don't believe the claims set forth in

5   the existing Complaint are the same as the claims that were

6   brought in the prior actions.  In fact, the facts giving rise

7   to these claims weren't even known to the plaintiff until

8   2013, and that's what the basis of the new case is.  We don't

9   believe that it's the same claims in the res judicata issues,

10  and we were prepared to deal with that in full brief to

11  address what was raised already in these motions to dismiss,

12  which included the res judicata issues.  And we believe that

13  we will be able to sustain those claims, because we don't

14  believe they're the same as the ones from the state court

15  action.

16          THE COURT:  They're entirely the same as what was in

17  the sate court action --

18          MR. GROSS:  Your Honor, the claim --

19          THE COURT:  -- as has been described in the

20  defendants' motions.

21          MR. GROSS:  Claims that were brought in this case --

22          THE COURT:  Quite frankly, I am inclined under Rule

23  11 to impose sanctions against plaintiff and plaintiffs'

24  counsel for bringing an utterly frivolous action that is

25  clearly intended just to be vexatious and to harass

Proceedings                                             13

1    defendants.

2          MR. GROSS:  Your Honor, we brought the case in good

3    faith, and we brought the claims in good faith.  And I'm not

4    in a position and prepared to defend entirely the claims, at

5    this juncture --

6          THE COURT:  Well, I have to tell you that the tone

7    of the letters that have been filed by Mr. Pfeiffer in this

8    case show anything other than good faith, and what they show

9    is a personal vendetta that he has.  He has mentioned all

10   kinds of things that are irrelevant to this case, about he and

11   his family members having been victims of crimes, of violent

12   crimes that have nothing to do with any the defendants or the

13   parties who are here, both by phone and in person.  What's

14   that intended to do, I have no idea.  If, in fact, it is true

15   that the plaintiffs have been victims of crime, I am sorry.

16   I've been a victim of a crime, too.  It's not a good feeling,

17   to say the least.  But it's irrelevant.  We're talking about a

18   contract dispute.  It has nothing to do with any of that.

19          Moreover, the kinds of allegations that have been

20   made against the attorneys here, and the parties here, the

21   defendants here, the kind of nastiness that has been

22   exhibited, shows nothing but a personal vendetta against the

23   defendants.  Moreover, it's not the kind of thing that,

24   frankly, should have been filed in federal court, in terms of

25   those letters, or in any court.  It's unprofessional, and it

NICOLE CANALES, CSR, RPR

Proceedings                                                14

1    doesn't advance the case in any way.  It doesn't illuminate

2    any of the legal arguments that the Court has to consider.

3    Explain to me how a corporation suffers intentional emotional

4    distress, because I have not found a case that says that.

5    It's a corporation.

6              MR. GROSS:  At the time --

7              THE COURT:  It can suffer money loss.

8              MR. GROSS:  At the time it was filed, your Honor,

9    Anna Pfeiffer was still a party in the action, as an

10   individual doing business as Jericho.  She has since withdrawn

11   her claims.  We're willing to look very carefully and

12   closely --

13             THE COURT:  Are you telling me, then, that that

14   claim is withdrawn?

15             MR. GROSS:  I'd have to consult with my client

16   before I make that representation, but I can make a

17   recommendation.

18             THE COURT:  If Ms. Pfeiffer is no longer part of the

19   case, then how does -- the corporation, which is the remaining

20   plaintiff, correct?

21             MR. GROSS:  Yes, your Honor.

22             THE COURT:  Then how does the corporation suffer

23   intentional emotional distress?  And why is the plaintiff

24   wasting the Court's time and the defendants' time with

25   addressing a, frankly, frivolous claim?

Proceedings                                    15

1          MR. GROSS:  Again, your Honor, I can consult with my

2    client and make a recommendation, but I'm not in the position

3    to do that.  I'm on the verge of being substituted out of the

4    case.  I just wanted to, again, ask the Court if we can have

5    the opportunity with counsel, if he does, in fact, come in, to

6    spend some time studying each of these issues, and take under

7    advisement what you're mentioning here today and try to move

8    things in the most appropriate fashion going forward.

9          THE COURT:  Let me hear from defendants.  Anyone

10   want to go first?

11         MR. SHORE:  Mr. Berger is the lead counsel.

12         THE COURT:  I'm sorry.  Okay.

13         On the phone, you want to address this, and can I

14   have your name, please.

15         MR. BERGER:  Yes.  George Berger.

16         THE COURT:  Is this Mr. Berger?

17         MR. BERGER:  Yes.

18         THE COURT:  Maybe you're a little too close to

19   whatever instrument you're on.

20         MR. BERGER:  I'm on my house phone, your Honor.  I'm

21   not on a speaker phone.

22         THE COURT:  That sounds good.  Wherever you are

23   right now, let's try to work with this.

24         MR. BERGER:  First of all, thank you for letting me

25   appear by telephone.  I appreciate the consideration.  I'm not

Proceedings                                16

1   sure I'll be able to get anything out with this feedback, but

2   I'll try.

3              THE COURT:  Do your best.

4              MR. BERGER:  I appreciate your Honor's observation.

5   As your Honor knows, we're very serious about our motion to

6   dismiss.  We are also very concerned.  The fact that this

7   litigation, as of next month, will be pending for a year, in

8   which notice of pendency had been filed against the party.

9   And your Honor knows what that means, in terms of market

10  ability.  And we're very anxious to get the stay that

11  your Honor imposed recently lifted so that Magistrate Judge

12  Scanlon can go ahead with the papers that are before her on

13  the motion to cancel the move to strike of pendency.  It's

14  very important to our clients.

15             I think your Honor -- the merits of the Amended

16  Complaint, -- and there's nothing I can add to that, because

17  we're in complete accord with your views.  I'm not going to

18  take the Court's time to talk about my personal resentment

19  being named a defendant here and the charges that have been

20  filed against me, which are ridiculous and in bad faith, in

21  imposing a compliment (sic).  So at that point, I would just

22  end my remarks and urge your Honor to proceed in the direction

23  that you're going.

24             Now, as far as the substitution of counsel is

25  concerned, I didn't hear anybody say they were coming in as

Proceedings                                                    17

1   counsel.  I only heard somebody say that he was considering

2   it.  And considering it, to me, is not a reason to delay

3   filing the opposing briefs.  They were due on February 16th.

4   We already managed to get an extra two weeks of time, so we're

5   over seven weeks now in responding to the motions to dismiss.

6   And they have to go forward, or your Honor sua sponte needs to

7   act, as you indicated you would, because we need to move on

8   with our business.  Thank you very much.

9          THE COURT:  Thank you, Mr. Berger.

10         Anyone else on the phone wish to be heard?

11         MR. BERGER:  People on the phone are just parties.

12         THE COURT:  Okay.  Thank you.

13         Any counsel who are here present also wish to be

14  heard?

15         Ms. Solomon, perhaps, do you wish to be heard?

16         MS. SOLOMON:  Yes, your Honor.

17         THE COURT:  If you could sit and speak into the

18  microphone, so this way the folks on the phone can hear as

19  well.  Make sure that green light is on.

20         MS. SOLOMON:  It looks like it's on.

21         THE COURT:  Keep your voice up.

22         MS. SOLOMON:  I will, your Honor.  Thank you.  I

23  would like to be heard, your Honor, because I have been

24  brought into this situation, along with my husband Robert

25  Goebel.  Robert Goebel, for approximately one-and-a-half years

Proceedings                                             18

1  represented and is counsel for Mr. Pfeiffer, and his

2  representation was subsequently terminated many years ago.  I

3  have had no involvement whatsoever with any of the people in

4  this case, have never represented Mr. Pfeiffer, saw him for

5  the first time in my life today.

6          The only involvement that I had in the many prior

7  litigations was that I sat in one deposition to assist my

8  husband more than ten years ago, but yet now for the last

9  two-and-a-half years, I find myself drawn into three different

10 actions that are started and stopped, and started and stopped,

11 five different complaints.  And I have made repeated requests

12 that I be removed from the action, because there is -- from

13 the multiple actions, because there has not been a single

14 specific allegation of any wrongful conduct being made by me.

15         Not only have I been sued, but Mr. Pfeiffer has

16 brought charges against the Ethics Committee, against me, and

17 I find this to be a horrendous and horrifying situation.  In

18 my 25 years of practice, I have never had a Complaint filed

19 against me by anyone, led alone somebody I never met in my

20 entire life and that I never represented.  I never made a

21 single appearance in any court.  And, as I stated, I have no

22 involvement in this, other than I am married to one of the

23 defendants, as to which Mr. Pfeiffer has no valid claim

24 either.

25         The claims are frivolous.  They're wrongful.  And

Proceedings                                          19

1    it's an abuse of the legal system, what it is occurring here,

2    and I very much appreciate your Honor's observation.  And I

3    think it has to come to a stop, and it must come to a stop.  I

4    don't know that your Honor has yet had an opportunity to view

5    our motions to dismiss, due to the bundle rule, but I have as

6    well filed a motion for sanctions against Mr. Pfeiffer and his

7    counsel, due to their refusal to remove me from this case.

8           And the addition of my husband as a defendant does

9    not change anything, that is due to the res judicata nature of

10   what has happened here and in the prior proceedings; they're

11   all the same claims.  He's trying to mix it up, but there is

12   nothing new here.  Thank you, your Honor.

13          THE COURT:  Any of the other counsel wish to be

14   heard?

15          Jones Day?

16          MR. FEDER:  Your Honor, I have nothing to add to

17   what's been said.  We obviously agree with your

18   characterization of the Complaint, but we won't embellish on

19   that.  Thank you.

20          THE COURT:  Why shouldn't -- if Ms. Solomon -- never

21   mind the situation with the husband, who previously

22   represented the plaintiff.  But at least with respect to

23   Ms. Solomon, she is not named in any of the claims.  Why

24   shouldn't I just dismiss her outright from this case right

25   now?  To the extent that she wants to assist her husband in

Proceedings                                   20

1    continuing to litigate this matter, that's up to her and to

2    her husband.  But in terms of continuing on as a defendant in

3    this case, again, frankly, this just goes to a showing of bad

4    faith on the part of plaintiff here, just this sort of let's

5    just throw out this wide net, and anyone who even came close

6    to the defendants is going to be sucked into this litigation.

7    Why shouldn't I just dismiss it outright as to Ms. Solomon?

8                MR. GROSS:  Your Honor, I was confused.  Ms. Solomon

9    said two things just now; she had never represented him, but

10   she did appear at a deposition.  I have a transcript where she

11   represented herself as the attorney for the plaintiffs, at the

12   time.  One of the issues that Mr. Goebel and Ms. Solomon are

13   connected with is the fact that simultaneously at the time

14   Mr. Goebel took Mr. Pfeiffer's case, in the first instance, he

15   was representing one of the target defendants at that same

16   time.  And the allegations in this Complaint, which make it

17   different from the state court allegations, is that there was

18   a conspiracy and a bit of collusion going on among these

19   attorneys.

20               Mr. Goebel, it's alleged, my client, is fairly

21   convinced, undertook certain acts to protect these other

22   defendants at his expense and the expense of the contract,

23   giving rise to those decisions that you just made reference

24   to.  That's the theory of this case.  It's not a straight

25   contract claim that was brought in a sate court action.  The

Proceedings                                    21

1   theory in this case is far different from that, and it goes

2   beyond that, in a manner in which these actions took place

3   giving rise to those decisions.

4          We've alleged that those decisions are actually the

5   product of the wrongful conduct.  We have documents now that

6   reflect that testimony that was given in affidavits submitted

7   in the state court action are false; they're not true.  That's

8   the nature of this pending action, which is why it's different

9   from the state court claim and why we believe it will be

10  sustained.  But, again, I apologize to your Honor.  I wasn't

11  prepared to make oral argument in total on the motions to

12  dismiss.

13         THE COURT:  But you've had copies of the defendants'

14  motions now for quite some time.  I forget what date the

15  defendants --

16         MR. BERGER:  January 9th, your Honor.

17         THE COURT:  Thank you.  So it's been approximately

18  two months that they've been in your possession.  And,

19  frankly, I don't know, maybe I'm old fashioned, but the way

20  that I got trained, when you got called into court, you better

21  know every aspect of your case and be prepared to answer any

22  question the judge may throw at you.  I don't find that to be

23  a sufficient excuse.

24         Well, it seems to me that under the circumstances of

25  this case, it is appropriate for me to exercise my authority

NICOLE CANALES, CSR, RPR

Proceedings                                      22

1    and my jurisdiction to dismiss sua sponte plaintiffs' claims 1

2    through 15, 17 and 19, under the doctrine of res judicata.

3    And I do want to read the following into the record, which

4    will constitute the opinion of the Court, and the parties are

5    free to order a copy of the transcript as a copy of the

6    Court's opinion.

7              A little background information I think is relevant

8    here.  This is the fifth lawsuit that was filed by plaintiff,

9    attempting to reinstate a real estate contract.  It cancelled

10   over a decade ago.  The history of the dispute is most clearly

11   described in *Jericho Group Limited versus Mid-Town Development*

12   at 32 A.D.2d, 294, First Department, 2006, which I'll call

13   Jericho I.

14             In short, on June 18th, 2002, plaintiff and

15   defendant Mid-Town Development, LP, or Mid-Town, entered into

16   a contract, which I'll call the contract, for plaintiff to

17   purchase two undeveloped properties in Manhattan for

18   $28 million, with a deposit of $250,000.  The contract

19   provided that prior to closing, there would be a 75-day study

20   period, and that during the study period, Mid-Town would

21   provide plaintiff with any documents related to the condition

22   of the property that plaintiff reasonably requested.

23             After unsuccessfully attempting to negotiate an

24   extension of the study period, from September 2002, to a later

25   date, and about a week before the expiration of the study

Proceedings                                    23

1    period, the parties to the contract discussed an alleged oil

2    spill that had occurred at or near the property, as well as

3    exhibits to a development agreement between Mid-Town and

4    Amtrak.  The day after the study period expired, plaintiffs

5    sent a letter to Mid-Town stating that plaintiff wanted its

6    $250,000 down payment returned, in accordance with the

7    contract, unless Mid-Town extended the study period or

8    indemnified plaintiff for any cleanup of the alleged oil

9    spill.  And that's described in the Jericho I opinion, at

10   pages 295 to 96.

11           On September 12th, 2002, after Mid-Town requested an

12   express statement as to whether plaintiff was cancelling the

13   contract, plaintiff provided, quote unquote, "confirmation"

14   that the September 3, 2002 letter was intended, quote,

15   "intended as the exercise of its right under the contract, to

16   cancel said contract," end of quote.  And Mid-Town returned

17   the down payment on September 13th, 2002.  And that's in the

18   First Department's opinion at page 297.  Obviously, I'm

19   summarizing the details here, but they are spelled out in

20   greater detail in the Appellate Division's opinion.

21           Plaintiffs' first action, which was filed in

22   New York State Supreme Court, in November 2004, alleged that

23   Mid-Town breached the contract, failed to return the down

24   payment and defrauded plaintiff by failing to disclose

25   information about the property relating to an oil spill and

Proceedings                                              24

1   easements held by Amtrak.  The Appellate Division First

2   Department rejected these claims twice, again in Jericho 1, 32

3   A.D.3d, 294, at 298 through 299, *Jericho Group Limited versus*

4   *Mid-Town Development, LP*, 47 A.D.3d, 463, First Department.

5           In 2008, leave to appeal to the Court of Appeals was

6   denied at 11 N.Y.3d 801 and 2008.  That is the Jericho II

7   action.  And plaintiff, in this Jericho II opinion, from the

8   Appellate Division, and plaintiff initiated a second action

9   against Mid-Town and attorneys, alleging that the first state

10  court judgment against it had been procured by fraud.  The

11  trial court dismissed that lawsuit as well, and held that

12  plaintiffs' claims were barred under the doctrines of

13  res judicata and collateral estoppel.

14          The Appellate Division unanimously affirmed *Jericho*

15  *Group Limited versus Mid-Town Development, LP*, 67 A.D.3d, 431,

16  First Department, 2009.  Leave to appeal to the Court of

17  Appeals was denied at 14 N.Y.3d 712 in 2010.  That's the third

18  Jericho opinion.

19          Since losing the second action, plaintiff has

20  initiated two more state court actions against Mid-Town and

21  various other defendants, neither of which it has litigated to

22  completion.  The suit before this Court was filed by plaintiff

23  on April 10th of 2014.  Defendants have moved to dismiss the

24  action, and plaintiff filed an amended -- I'm sorry --

25  before -- withdrawn.  Defendants moved to dismiss the first

Proceedings                              25

1   Complaint, just to be clear.  Plaintiff then filed an Amended

2   Complaint, on November 4th, 2014.  Defendants again moved to

3   dismiss.  Plaintiff now has requested a new attorney and time

4   to respond to the motions to dismiss.

5          The present Amended Complaint makes -- which I'll

6   refer to as the Complaint -- makes the same arguments that

7   were adjudicated in the first and second actions; namely that

8   plaintiff never cancelled a contract, Mid-Town never returned

9   plaintiffs' $250,000 down payment, and that Mid-Town

10  fraudulently obtained the state court judgments by

11  misrepresenting the facts to the state courts.

12         However, this final action, the one before

13  the Court, also alleges that the fraud committed on the state

14  courts was part of an elaborate RICO scheme involving

15  Mid-Town, Mid-Town's representatives, defendants Edward

16  Imperatore, Maurice Stone, Edward Ross, and Arthur Imperatore;

17  and lawyers in their individual capacities, defendants George

18  Berger, Jeffrey Shore, Philip Nizer, LLP, Frederick Sherman,

19  Todd Geramia, and Jones Day; and plaintiffs' lawyers, in their

20  original contract negotiation, Defendant Szegda, and in the

21  second action Defendant Goebel, and his wife Lisa Solomon.

22         Specifically, plaintiff argues that Defendant Goebel

23  failed to raise plaintiffs' winning arguments before state

24  court, and then threatened and extorted plaintiff, as part of

25  the RICO scheme.  That's in the Complaint, in paragraphs 444

Proceedings                                    26

1   to 46, 486 to 96, and, also, in paragraphs 515 to 46.

2   Plaintiff also alleges that it has obtained new evidence that

3   the defendants previously withheld from plaintiff and the

4   state courts, in the form of an e-mail, requesting information

5   from Mid-Town about the oil spill, on August 21st, 2002.

6   That's in the Complaint, in paragraphs 497 to 514.  The state

7   courts had determined that plaintiff had requested that

8   information, on August 30th of 2002.  See Jericho I at 296.

9          Next, plaintiff claims that Defendant Szegda was

10  never authorized to cancel the contract and that Mid-Town knew

11  this.  That's in the Complaint, in paragraphs 622 to 633.

12         Lastly, plaintiff examines all of defendants' most

13  recent motions to dismiss, and claims defendants admitted they

14  defrauded the state courts.  That's in the Complaint, in

15  paragraphs 562 to 669.

16         The Complaint pleads 20 causes of action, including

17  fraud on the plaintiffs and courts, violations of RICO, breach

18  of contract, tortious interference with a contract.  Those are

19  claims 115 and 17.  Conversion, which is claim 16; intentional

20  infliction of emotional distress, claim 18; and violations of

21  New York Judiciary Law, section 487, claim 19; and plaintiffs'

22  civil rights under the Constitution, the § 1983 action, claim

23  20.  That's in the Complaint, in paragraph 670 to 867.

24         Plaintiff seeks, among other things, declarations

25  that the contract remains in effect, and that defendants

NICOLE CANALES, CSR, RPR

Proceedings                                          27

1    defrauded plaintiff and the courts; specific performance of

2    the contract, and damages of at least $200 million.  Plaintiff

3    also makes allegations against Defendant Szegda, defendant

4    based on equities inc, about an unrelated incident.

5              Claims 1 through 15, 17, and 19, are barred under

6    the doctrine of res judicata.  Quote, "To determine the effect

7    of a state court judgment, federal courts are required to

8    apply the perclusion law of the rendering state," end of

9    quote.  *Conopco*, C-o-n-o-p-c-o, *Inc. versus Roll*

10   *International*, 231 F.3d 82 at 87, 2nd Circuit 2000.  Under

11   New York Law, a court may sua sponte dismiss a Complaint under

12   the doctrine of res judicata in appropriate circumstances.

13   See, for example, *390 West End Avenue Associates versus*

14   *Youngstein*, 22 A.D.2d 292.  And that's First Department 1995.

15             In that case, the Appellate Division upheld the

16   trial court's dismissal of a Complaint, where it had knowledge

17   of the previous -- where the plaintiff had knowledge of the

18   previous judgment.

19             Quote, "New York courts have adopted a transactional

20   approach to res judicata, so that a final decision on the

21   merits on one action bars all subsequent claims arising out of

22   the same transaction or series of transactions, even if the

23   claims are based on different legal theories, or the party is

24   seeking a different remedy," end of quote.  *Resource Northeast*

25   *of Long Island, Inc. versus Town of Babylon*, 28 F. Supp.2d 786

Proceedings                                             28

 1   at 791, Eastern District of New York, 1998.  Citations are

 2   omitted.  See also *Giannone versus York Tape & Label, Inc.*,

 3   548 F.3d 191 at 194, 2nd Circuit 2008, and *Smith versus*

 4   *Russell Sage College*, 54 N.Y.2d 185, 1981.

 5           This doctrine applies both to claims asserted and

 6   claims that could have been asserted in the prior action, so

 7   long as the party to be precluded had a full and fair

 8   opportunity to litigate those claims.  *Schuykill*

 9   S-c-h-u-y-k-i-l-l, *Fuel Corp. versus B. & C. Neiberg Corp.,*

10   *et al.*, 250 N.Y. 304, at 306 to 307, 1929.

11           Quote, "A judgment in one section is conclusive in a

12   later one not only as to any matters actually litigated

13   therein, but also as to any that might have been so litigated,

14   when the issues -- when the two causes of action have such a

15   measure of identity that a different judgment in the second

16   would destroy or impair rights or interests established by the

17   first," end of quote.  See also *Santiago, et al. versus*

18   *New York City Board of Health, et al.*, 8 A.D.3d 179, at 180 to

19   81, First Department, 2004.

20           Moreover, the doctrine of res judicata applies not

21   only to parties to the prior action but to those in privy with

22   those parties as well, including agents of the party.  See

23   *McDonald versus Lengel*, 2 A.D.3d 1182, at 1183 and 84, Third

24   Department, 2014, in *Israel versus Wood Dolson Co.*, 1 N.Y.2d

25   116, at 119, 1956.  Plaintiffs also cannot avoid dismissal on

Proceedings                                          29

1   res judicata grounds by arguing their claims are based on

2   newly discovered evidence.  See, for example, *Statter versus*

3   *Statter*, 2 N.Y.2d 668, at 674, 1957.

4          Quote "It is commonly held that the mere discovery

5   of fresh evidence is no answer to the defense of res judicata,

6   when raised in a subsequent separate cause of action," end of

7   quote.

8          All of plaintiffs' claims have been litigated to

9   conclusion not once but twice in state court.  Plaintiff

10  already has tried to allege that Mid-Town defendants committed

11  fraud on the court, in both their first and second state court

12  actions, including specifically alleging a violation of

13  New York State Judiciary Law Section 487, which is claim 19 of

14  the Amended Complaint here.  To the extent that plaintiff now

15  alleges that the fraud involved Mid-Town's attorneys and

16  plaintiffs attorneys, those claims are also barred under

17  res judicata, as they arise out of the same transactions that

18  were litigated in the first two cases.

19         Plaintiff had a full and fair opportunity to

20  litigate those claims in the first two actions, and the claims

21  involve parties that were in privity with the original parties

22  or were agents of the original parties.  Furthermore, the,

23  quote unquote, "new evidence" that plaintiff relies on, in

24  addition to being irrelevant to the court's application to the

25  doctrine of res judicata, is not evidence that would have

Proceedings                                                        30

1    effected the previous court's decisions.  Plaintiffs also

2    tried to argue it had newly discovered evidence in the first

3    action, when it moved to vacate the judgment, but the

4    Appellate Division denied that motion.

5            Additionally, plaintiffs' claims also may be barred

6    under the *Rooker-Feldman* doctrine.  The *Rooker-Feldman*

7    doctrine states that district courts have no jurisdiction to

8    adjudicate, quote, "cases brought by state court losers

9    complaining of injuries caused by state court judgments

10   rendered before the district court proceedings commenced, in

11   inviting district court review and rejection of those

12   judgments," end of quote.  See *Exxon Mobile Corp. versus Saudi*

13   *Basic Indus. Corp.*, 544 U.S. 280, at 284, 2005.  The 2nd

14   Circuit parsed that statement down and determined that

15   Rooker-Feldman applies when four conditions are met:

16           First, the federal court -- and I'm quoting from the

17   decision in *Hoblock versus Albany County Board of Elections*,

18   422 F.3d 77, at 85, 2nd Circuit, 2005.  Quoting from *Exxon*

19   *Mobile Corp.*, 544 U.S., at 284.  And I'm omitting footnote, in

20   reference to the footnote.  First, a federal court plaintiff

21   must have lost in state court.  Second, the plaintiff must

22   complain of injuries caused by state court judgment.  Third,

23   the plaintiff must invite district court review and rejection

24   of that judgment.  Four, the state court judgment must have

25   been rendered before the district court proceedings could

Proceedings                    31

1    commence; i.e., Rooker-Feldman has no application to federal

2    court suits proceeding in parallel with ongoing state court

3    litigation.

4            Whereas, in the present case, the first and fourth

5    procedural requirements have been met, the district court must

6    turn to the second and third substantive requirements and

7    analyze whether they are met.  See *McKithen versus Brown*, 481

8    F.3d 89, at 97, 2nd Circuit, 2007.

9            The 2nd Circuit also set forth the following rule to

10   guide the court's inquiry as to whether the second requirement

11   is met.  Quote "A federal suit complains of an injury from the

12   state court judgment even if it appears to complain only of

13   third-party's actions.  When the third-party's actions are

14   produced by a state court judgment and not simply ratified,

15   acquiesced or left unpunished by it.  That's *Hoblock*, 422

16   F.3d, at 88.

17           In the present case, the third requirement is met as

18   plaintiff is inviting this Court to review and reject the

19   state court judgments.  Whether the second requirement is met

20   is a little less clear.  However, there is an argument that

21   plaintiff is complaining of injuries caused by the state court

22   judgment's, as plaintiff states as much in his Complaint.  At

23   the same time, plaintiff argues that defendants' fraud causes

24   state court decisions, and, therefore, the Court could

25   determine, and, therefore, the Court could construe that fraud

Proceedings                                                          32

1    on the card (sic) argument as already having been raised in

2    the state court and rejected; and so, in effect, plaintiff is

3    asking this Court to reverse a state court decision on the

4    very same issue.

5            Plaintiffs' claims of -- against defendant Szegda

6    regarding the Baystone case and intentional infliction of

7    emotional distress, and for violations of plaintiffs' civil

8    rights, are also likely to be dismissed for failure to state a

9    claim upon which relief can be granted.

10           I've already given notice to the defendants in that

11   regard.  I see no reason why if the only plaintiff that

12   remains here is the corporate -- I'm sorry.  Did I say

13   plaintiff?  I hope I didn't say defendant.  Is the only

14   plaintiff that remains here is the corporate defendant, why I

15   shouldn't also dismiss claim 18?  Because a company cannot be

16   a victim of intentional infliction of emotional distress.  And

17   I haven't heard anything, other than counsel wants to consult

18   with plaintiff.

19           There's only a company plaintiff here, and so,

20   therefore, Count 18 is dismissed, for failure to state a claim

21   under 12(b)(6).  That leaves, then, claims 16 and 20.  In that

22   regard, since the motions to dismiss now have been

23   significantly streamlined, I see no reason why plaintiff could

24   not have a response to the motions to dismiss, insofar as they

25   relate to those two remains claims, and I suppose a response

Proceedings                                    33

1   to the motion for sanctions that have also been included, and

2   why that can't be done in short order?

3          Plaintiff has until the end of this week to decide

4   whether or not it's going to continue being represented by

5   Mr. Gross or whether new counsel is coming in.  And, frankly,

6   if I do not get a response by this Friday -- let me put it

7   this way, by this Friday I must receive some notification by

8   plaintiff that it has retained counsel.  Whether it's

9   Mr. Gross that continues on with the case, or whether it's new

10  counsel that comes into the case, I need to know by this

11  Friday.  And if there's no new counsel here by this Friday

12  with a notice of appearance filed with the court, this action

13  is going to be dismissed; because, quite frankly, the

14  remaining claims, I see very little grounds for the two

15  remaining claims to survive here.

16         And, then, the only issue that will remain will be

17  the issue of the motion for sanctions.  I'm going to dispense

18  with the bundling rule, because I would like to see the

19  defendants' papers, especially since there is a motion for

20  sanctions, so if by this Friday I could get -- or before that

21  if I can get a hard copy for the motions.  You can file the

22  motions on the docket.  And I would appreciate that, getting

23  copies of the motions.  Anything else that the parties want to

24  address?

25         MR. BERGER:  Yes, your Honor.  May I please --

NICOLE CANALES, CSR, RPR

Proceedings                    34

1      THE COURT:  Once I get notification Friday that

2  there are counsel, I'm going to set a briefing schedule for

3  the rest of the two remaining claims.  And I, frankly, don't

4  see that that requires 30 days to address.

5      MR. BERGER:  Your Honor, may I speak.  It's George

6  Berger representing Mid-Town defendants.

7      THE COURT:  Yes, Mr. Berger.

8      MR. BERGER:  Your Honor, since your Honor --

9      THE COURT:  Hang on a second, Mr. Berger.  We've got

10  our technical person here to the rescue.

11      MR. BERGER:  Thank you.  I'll wait.

12          (Pause in proceedings.)

13      THE COURT:  I don't see any reason why we need to

14  have anyone other than Mr. Berger here present, at this point.

15  So, Mr. Berger, really you're the only person that we need, at

16  this point.  And with respect to the other gentlemen, we thank

17  you for making yourselves available.

18      MR. BERGER:  If they can hang on, then, maybe the

19  line will get better.

20      THE COURT:  Okay.

21          (Pause in proceedings.)

22      THE COURT:  Can we just get Mr. Berger back on the

23  phone.

24      MR. SHORE:  Your Honor, if he's not on the phone --

25  because he was the chairperson.  We can call him right now on

NICOLE CANALES, CSR, RPR

Proceedings                                    35

1   a separate phone and see if we can call him directly on his

2   home phone.

3            THE COURT:  That might work better.  Go right ahead.

4            UNIDENTIFIED SPEAKER:  Your Honor, which phone

5   should he call in?

6            THE COURT:  We have to get a number.

7            MR. SHORE:  I'll make sure he's off his home phone,

8   your Honor.

9            UNIDENTIFIED SPEAKER:  We're having trouble getting

10  service here.

11           MR. SHORE:  Maybe try his home phone.

12           THE CLERK:  Mr. Berger.

13           MR. BERGER:  Yes.

14           THE COURT:  Mr. Berger, can you hear us?

15           MR. BERGER:  Barely.

16           THE COURT:  Okay.  I don't know what's going on.

17  We'll try to do the best we can.  You wanted to discuss

18  something.

19           MR. BERGER:  Yes, your Honor.  Since your Honor has

20  now dismissed -- to claim specific performance and for a

21  declaration of the 2002 contract, there is no basis for the

22  notices of pendency before your Honor.  And under New York

23  State Law, you must instruct the -- you must cancel them and

24  issue an order instructing the clerk of the Supreme Court,

25  New York County to cancel them of record.  There's no

Proceedings                              36

1   discretion in this regard, because there is no longer a cause

2   of action effecting title, or possession or use of the

3   property pending before your Honor; and, therefore, there is

4   no basis for the notice of pendency.  That's one thing.

5          The second thing is, when you see our papers that

6   will be filed this week, we have asked in our relief for an

7   injunction against the plaintiffs and Mr. Pfeiffer for further

8   litigation against the parties for this -- to the claims

9   asserted in the Amended Complaint without the prior approval

10  of a judge of this court.  I don't know if the custom is that

11  it's your Honor or the chief judge.  I leave that to you.

12         THE COURT:  That's normally up to the district.  I'm

13  sorry to interrupt you Mr. Berger --

14         MR. BERGER:  This will just be the jumping off point

15  for some other lawsuit they claim.  We want you to seriously

16  entertain that relief.  We're seeking that relief in the state

17  court on an appeal pending right now, but that would only

18  apply to state court proceedings, so we need this similar

19  relief in federal court proceeding.  I ask your Honor to very

20  seriously consider that as well.  I hope you heard me.

21         THE COURT:  I think I did.  You are -- let me just

22  repeat it.  Can you hear me?  I don't think he can hear me.

23         MR. BERGER:  I'm sorry.  I can't -- if you're

24  talking to me, I don't hear you.  I hear you now.

25         THE COURT:  Okay.  Can you hear me now?

Proceedings                                     37

1        MR. BERGER:  Yes.  Wait a minute.  Maybe I can

2   adjust the volume on my phone.  Give me one second.

3        THE COURT:  I apologize for all the technical

4   problems.

5        MR. BERGER:  Yes, I have raised the volume on my

6   phone.

7        THE COURT:  If I'm understanding you correctly, you

8   are asking for a dismissal of the notice of lis pendens

9   against the property in light of the dismissal of --

10  the Court's dismissal of the charges.

11       MR. BERGER:  Yes.  Actually, the cancellation of the

12  notice.

13       THE COURT:  A cancellation of the notice.

14       MR. BERGER:  There's two notice of pendency pending

15  in this court, and they are dependent on the New York Law of a

16  cause of action which effects the title, use, or possession of

17  real property.  You have now dismissed the only two causes of

18  action that effect title, use, or possession of real property,

19  namely the ones for specific performance.  And for declaratory

20  judgment, the contract is still in effect; and, therefore,

21  there is no basis for any notice of pendency under New York

22  Law, and they must be dismissed.

23       THE COURT:  So that's one application.  And the

24  other you indicate that in the motions to dismiss there is

25  also a request for an injunction against the defendants from

Proceedings                                                38

1   bringing any further litigation in federal court --

2           MR. BERGER:  Against the plaintiffs, your Honor.

3           THE COURT:  -- relating to the subject of this

4   litigation without first getting leave of the Court, correct?

5           MR. BERGER:  That's correct.  It's not the

6   defendants, it's the plaintiffs.

7           THE COURT:  I mean, right against the plaintiffs.

8           MR. BERGER:  I'm asking for that.

9           THE CLERK:  Bring an injunction against the

10  plaintiffs.

11          THE COURT:  Right against the plaintiffs, injunction

12  against the plaintiffs.

13          MR. BERGER:  Approximate Mr. Pfeiffer.

14          THE COURT:  For bringing these claims against the

15  defendants in this court without first obtaining leave of

16  the Court.  That's normally a matter that is up to the

17  district judge who is providing over the case at hand.  So I

18  have asked for counsel for the defendants to file their motion

19  papers with the Court, so that I can see all of these

20  different applications.

21          And it certainly does behoove plaintiff to actually

22  obtain counsel, because otherwise you will be -- plaintiff

23  will be in default with respect to the motion for sanctions

24  and with respect to the request for an injunction.  And,

25  frankly, given the whole history of this case, it seems to me

Proceedings                                              39

 1    that a motion against -- a motion for sanctions under Rule 11

 2    is maybe appropriate in this case.  So plaintiff has been

 3    forewarned if -- on Friday I expect to get a letter,

 4    indicating that plaintiff has counsel or has not had counsel,

 5    and a notice of appeal to be filed, unless, Mr. Gross, you're

 6    staying on the case.

 7              And then, at that point, I will set a motion -- a

 8    briefing schedule for the rest of the motions, to get a

 9    response to the remaining two counts, which are counts 16 and

10    20, the motion for sanctions, and for the injunction.  And

11    the Court will enter an order -- I think that motion was

12    pending before the magistrate judge, correct?

13              MR. GROSS:  Your Honor, if I can be heard on that?

14    I don't mean to interrupt, but for the sake of judicial

15    resources, I spoke to my client, and in light of the decision

16    that was rendered today, we can take steps to have those

17    lis pendens cancelled.  I believe by stipulation I can do it

18    with Mr. Berger, rather than burdening the Court.

19              THE COURT:  The lis pendens is cancelled.  Plaintiff

20    is stipulating.  But, in any event, the claims have been

21    dismissed, and there's nothing pending that should encumber

22    the property.

23              MR. GROSS:  As an administrative matter, we'll take

24    on the burden of clearing that.

25              THE COURT:  Why don't I have defense counsel file

Proceedings                                          40

1   any document, any judgment ordered that the defendant feels --

2   since it's the defendant's property -- feels appropriate, for

3   the Court to sign.  Obviously, the sooner you file that, the

4   sooner I can sign it.  Okay.  So I will be expecting to hear

5   further from the parties by the end of this week.  All right.

6   Thank you all.  Thank you to those who appeared by phone.

7            Mr. Berger, extend my thanks to them as well.

8            MR. BERGER:  Yes, your Honor.

9            THE COURT:  All right.  Thank you.

10           MR. SHORE:  Thank you, your Honor.

11           THE COURT:  Before the parties go, Ms. Solomon, you

12   are dismissed in this action.  You are named only in those

13   counts that I dismissed, so you are no longer in the action.

14           MR. SOLOMON:  So you dismissed the action as to

15   every count as to me, your Honor?

16           THE COURT:  Correct.  That does not preclude you,

17   however, from having the motion for sanctions considered by

18   the Court, just to be clear.

19           MR. SOLOMON:  Thank you, your Honor.

20           THE COURT:  As to Mr. Goebel, I think he is named in

21   the civil rights count.

22           MS. SOLOMON:  That's correct.  That would be the

23   sole remaining count.

24           THE COURT:  As to him, correct.

25           MS. SOLOMON:  Your Honor, could I clarify, in our

NICOLE CANALES, CSR, RPR

Proceedings                            41

1    motion papers as well, we had made requests for injunctive

2    relief.  You will see that in the papers filed this week.

3              THE COURT:  As to many of those affirmative

4    requests, the fact that you're dismissed from the case would

5    not preclude the Court from considering it.

6              MS. SOLOMON:  Thank you very much, your Honor.

7                   (Proceedings adjourned.)

8

9

10                          *  *  *

11

12          I certify that the foregoing is a true and correct
     transcription of the record from proceedings in the
13   above-entitled case.

14   /s/ Nicole Canales              March 5, 2015
        Nicole Canales                    Date
15

16

17

18

19

20

21

22

23

24

25