UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- x
JERICHO GROUP LTD. and JERICHO CO.,           :
                                              :        **MEMORANDUM & ORDER**
                            Plaintiff,        :        14-CV-2329 (DLI)(VMS)
                                              :
               -against-                      :
                                              :
MID-TOWN DEVELOPMENT LIMITED                  :
PARTNERSHIP, MIDTOWN                          :
DEVELOPMENT. L.P., EDWARD G.                  :
IMPERATORE, MAURICE L. STONE,                 :
EDWARD W. ROSS, ARTHUR E.                     :
IMPERATORE, WR WEST SIDE                      :
ASSOCIATES, HADRIAN PROPERTIES                :
LTD, FANFARE ENTERPRISE INC,                  :
ARCORP PROPERTIES, JERRART                    :
VENTURE PROPERTIES, HARWOOD                   :
LLOYD LLC, GEORGE BERGER,                     :
JEFFREY SHORE, PHILIPS NIZER LLP,             :
FREDRICK E. SHERMAN, TODD R.                  :
GEREMIA, JONES DAY, BROWN                     :
HARRIS STEVENS LLC, ELAINE                    :
OSBORN EMMET, MICHAEL A.                      :
SZEGDA, BAYSTONE EQUITIES INC,                :
ROBERT B. GOEBEL, RICHARD                     :
MARASSE, LISA SOLOMON, JOHN DOE               :
1-10 and XYZ CORPORATION 1-10,                :
                                              :
                            Defendants.       :
                                              :
--------------------------------------------------------- X

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Jericho Group Ltd.[1] ("Plaintiff") filed suit before this Court on April 10, 2014

against Defendants Mid-Town Development Limited Partnership, Midtown Development L.P.,

Edward G. Imperatore, Maurice L. Stone, Edward W. Ross, Arthur E. Imperatore, George

Berger, Jeffrey Shore, Philips Nizer LLP, Fredrick E. Sherman, Todd R. Geremia, Jones Day,

---

[1] Plaintiff voluntarily dismissed Plaintiff Jericho Co. from this action on January 26, 2015. (*See* Notice of Voluntary Dismissal, Dkt. Entry No. 96.)

1

Michael A. Szegda, Baystone Equities Inc., Robert B. Goebel, and Lisa Solomon (collectively the "Defendants")[2]. Defendants, except for Defendants Szegda and Baystone Equities, Inc. who defaulted, moved to dismiss the action. Plaintiff then filed an Amended Verified Complaint (the "Complaint") on November 4, 2014.

The Complaint pleads twenty causes of action including fraud on Plaintiff and the New York State Supreme and Appellate Division courts, violations of the RICO statute, breach of contract, tortious interference with contract (Claims 1-15 and 17), conversion (Claim 16), intentional infliction of emotional distress (Claim 18), violations of New York Judiciary Law § 487 (Claim 19), and violations of Plaintiff's civil rights under the United States Constitution (Claim 20). (Compl. ¶¶ 670-867.) Plaintiff seeks, among other things, a declaration that a contract Plaintiff previously entered into with Defendant Midtown Development LP (the "Contract") remains in effect and that Defendants defrauded Plaintiff and the state courts, specific performance of the Contract, and damages of at least $200,000,000. (*Id.*) Plaintiff also makes allegations against Defendant Szegda and Defendant Baystone Equities Inc. about an unrelated incident.

Defendants again moved to dismiss the Complaint for various reasons including that: 1) the Complaint fails to comply with Federal Rule of Civil Procedure Rule 8(a); 2) Plaintiff's claims are barred under the doctrine of *res judicata*; 3) the Court does not have jurisdiction to review the state court judgments; 4) and Plaintiff has failed to state a claim for which relief can be granted. (*See generally* Mems. of Law in Supp. of Defs. Mots. to Dismiss, Dkt. Entry Nos. 109, 112, 114, & 118.) Defendants Goebel and Solomon additionally requested sanctions and

---

[2] Although named in the original complaint, Plaintiff dismissed Defendants WR West Side Associates, Hadrian Properties Ltd, Fanfare Enterprise Inc., Arcorp Properties, Jerrart Venture Properties, Brown Harris Stevens LLC, Elaine Osborn Emmet, Harwood Lloyd LLC, and Richard Marrasse from the action on Dec. 25, 2014. (*See* Notice of Voluntary Dismissal, Dkt. Entry No. 86.)

2

injunctive relief in their motions to dismiss. (*See generally* Mem. of Law in Supp. of Def. Goebel's Mot. to Dismiss, Dkt. Entry No. 112; Mem. of Law in Supp. of Def. Solomon's Mot. to Dismiss, Dkt. Entry No. 114.) Defendant Goebel also requested attorney's fees pursuant to a Release Agreement signed by Plaintiff, Plaintiff's principal, Samuel Pfeiffer, and Defendant Goebel. (*See generally* Mem of Law in Supp. of Def. Goebel's Mot to Dismiss.) Defendants Mid-Town Development Limited Partnership, Midtown Development LP, Edward G. Imperatore, Maurice L. Stone, Edward W. Ross, Arthur E. Imperatore, George Berger Esq., Jeffrey Shore, ESQ., and Phillips Nizer LLP (collectively the "Midtown Defendants) also requested injunctive relief. (*See* Mem. of Law in Supp. of Defs. Mot. to Dismiss, Dkt. Entry No. 109.)

On March 4, 2015, the Court held a status conference where it *sua sponte* dismissed Claims 1-15, 17, 18, and 19 as barred under the doctrine of *res judicata* (Claims 1-15, 17 and 19) and for failure to state a claim for which relief can be granted under Rule 12(b)(6) (Claim 18). (*See* Minute Entry for Mar. 3, 2015 Status Conference, Dkt. Entry No. 108; Tr. of Mar. 4, 2015 Status Conference at 32, Dkt. Entry No. 133.) The Court also dismissed Defendant Solomon from the action. (*See* Tr. of Mar. 4, 2015 Status Conference at 40.) On March 25, 2015, Plaintiff voluntarily dismissed the action against Defendants George Berger, Jeffrey Shore, Phillips Nizer LLP, Fredrick E. Sherman, Todd R. Geremia, and Jones Day. In its response to the motions to dismiss, Plaintiff does not oppose dismissal of Claim 20. Therefore, Claim 20 is dismissed on consent and the Court now addresses Claim 16 and Defendants' requests for injunctive relief, sanctions, and attorney's fees. For the reasons set forth below, the Court dismisses the remaining claim, issues an injunction preventing Plaintiff or Plaintiff's principals from further filing any action based on the same transactions or occurrences as alleged in the Complaint, orders Plaintiff

to pay $10,000 in sanctions, and refers the issue of Defendant Goebel's attorney fees to the magistrate judge for an inquest.

**BACKGROUND**

This is Plaintiff's sixth lawsuit attempting to reinstate a contract it canceled over a decade ago. The history of the dispute is most clearly described in *Jericho Group, Ltd. v. Midtown Development*, 32 A.D.3d 294 (1st Dep't 2006) ("Jericho I"). In sum, on June 18, 2002, Plaintiff and Defendant Midtown Development LP ("Midtown") entered into a contract for Plaintiff to purchase two undeveloped properties in Manhattan for $28,000,000, with a $250,000 deposit (the "Contract"). The Contract provided that, prior to closing, there would be a 75-day study period and, during the study period, Midtown would provide Plaintiff with any documents related to the condition of the property that Plaintiff reasonably requested. After unsuccessfully attempting to negotiate an extension of the study period from September 2, 2002 to a later date, and about a week before the expiration of the study period, the parties to the Contract discussed an alleged oil spill that occurred at or near the property, as well as exhibits to a development agreement between Midtown and Amtrak. The day after the study period expired, Plaintiff sent a letter to Midtown stating that Plaintiff wanted its $250,000 down payment returned, in accordance with the contract, unless Midtown extended the study period or indemnified Plaintiff for any cleanup of the alleged oil spill. *Id.* at 295-96. On September 12, 2002, after Midtown requested an express statement as to whether Plaintiff was cancelling the contract, Plaintiff provided "confirmation" that the September 3, 2002 letter was "intended as the exercise of [its] right [under the Contract] . . . to cancel said [C]ontract," and Midtown returned the down payment to Plaintiff on September 13, 2002. *Id.* at 297.

Plaintiff's first action, which was filed in New York State Supreme Court, New York County in November 2004, alleged that Midtown breached the Contract, failed to return the down payment and defrauded Plaintiff by failing to disclose information about the oil spill and easements to the property held by Amtrak. The New York State Appellate Division, First Department ("Appellate Division"), rejected these claims twice. *See Jericho I,* 32 A.D.3d at 298-300; *Jericho Grp., Ltd. v. Midtown Dev., L.P.*, 47 A.D.3d 463, 463-64 (1st Dep't 2008), *lv dismissed* 11 N.Y.3d 801 (2008) ("Jericho II").

Plaintiff then initiated a second action against Midtown and its attorneys alleging that the first state court judgment against it had been procured by fraud. The trial court dismissed that lawsuit as well and held that Plaintiff's claims were barred under the doctrines of *res judicata* and collateral estoppel. The Appellate Division unanimously affirmed the dismissal. *See Jericho Grp., Ltd. v Midtown Dev., L.P.*, 67 A.D.3d 431, 431-32 (1st Dep't 2009), *lv denied* 14 N.Y.3d 712 (2010) ("Jericho III"). Since losing the second action, Plaintiff has initiated three more state court actions against Midtown and various other defendants, both which Plaintiff attempted to discontinue. Most recently, the New York Appellate Division, First Department dismissed Plaintiff's third state court action as barred by the doctrines of *res judicata* and collateral estoppel. (*See* Appellate Division Order attached to Letter dated June 18, 2015 from Midtown Defs., Dkt. Entry No. 139.) The Appellate Division remanded the case for the trial court to address Defendants' requests for sanctions and injunctive relief. (*Id.*) On June 23, 2015, the trial court enjoined Plaintiff from filing any new action against Defendants based on the same claims and also sanctioned Plaintiff by imposing a $250 fine.

As discussed at the March 4, 2015 status conference, the Complaint alleges the identical claims that were adjudicated in the first and second state court actions; namely, that Plaintiff

5

never cancelled the Contract, Midtown never returned Plaintiff's $250,000 down payment, and that Midtown fraudulently obtained the state court judgments by misrepresenting the facts to the state courts. However, the instant action also alleges that the fraud committed on the state courts was part of an elaborate RICO scheme involving the Midtown Defendants and their lawyers in their individual capacities (Defendants George Berger, Jeffrey Shore, Philips Nizer LLP, Fredrick Sherman, Todd Geremia, and Jones Day), and Plaintiff's lawyers in the original Contract negotiation (Defendant Szegda) and in the second action (Defendants Goebel and Lisa Solomon). Plaintiff also alleges that Defendant Szegda misappropriated $150,000 of Plaintiff's money that he had been holding in escrow. (Compl. ¶¶ 139-46, 220, 547-61, 826-35.)

## DISCUSSION

**I.     The Court Declines to Exercise Supplemental Jurisdiction over the Remaining Claim (Claim 16)**

The only remaining claim in this action involves the dispute between Plaintiff and Defendants Szegda and Baystone Equities, Inc. over whether Defendant Szegda or his alter ego, Baystone Equities, Inc. stole $150,000 from Plaintiff they held in escrow. All the federal law claims have been dismissed. Plaintiff has not asserted any independent basis justifying this Court's jurisdiction over this state law claim. Upon its own review of this matter, the Court finds no independent federal subject matter jurisdiction exists to adjudicate the remaining claim and declines to exercise supplemental jurisdiction over it pursuant 28 U.S.C. § 1367. Claim 16 is purely a state law question, as it involves a separate contract dispute. There also is no diversity jurisdiction pursuant to 28 U.S.C. § 1332 because, according to Plaintiff's pleadings, Plaintiff and Defendant Baystone Equities, Inc. are both citizens of New York. (*See* Compl. ¶¶ 32-33, 42-43.) It is of no moment that these Defendants have defaulted, as the Court is not able to enter default judgment where it lacks subject matter jurisdiction. *See Transatlantic Marine Claims*

*Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 108 (2d Cir. 1997) (addressing in a similar case "whether the default judgment itself is void for lack of subject matter jurisdiction"). Therefore, Claim 16 is dismissed for lack of subject matter jurisdiction.

## II. Injunctive Relief

"[I]n determining whether or not to restrict a litigant's future access to the courts" through a filing injunction, the court should consider the following factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir v. U.S. Lines, Inc.,* 792 F.2d 19, 24 (2d Cir.1986). A litigant must be provided with notice and an opportunity to be heard before a filing injunction is imposed. *See Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998).

As an initial matter, Plaintiff was given notice and an opportunity to be heard, as the Court ordered Plaintiff to respond to Defendants' requests for a filing injunction. (*See* Order of Mar. 9, 2015.) Plaintiff opposed the issuing of a filing injunction in its response to Defendants' motions to dismiss. (*See* Pl.'s Mem. in Opp'n to Requests for Sanctions and Injunction ("Pl's Opp'n") at 10-12; Dkt. Entry No. 125.) However, the Court finds Plaintiff's arguments in opposition unavailing, and holds that Plaintiff's actions and litigation history meet the factors for the issuance of a filing injunction, and Defendants' request is granted.[3]

First, Plaintiff has a history of pursuing vexatious, harassing, and duplicative lawsuits against the Defendants as this is now the fifth lawsuit that Plaintiff has brought regarding the same cancelled Contract. Second, in pursuing this litigation, Plaintiff does not have an objective

---

[3] Notably, on June 23, 2015, the state trial court both enjoined Plaintiff from filing any new action against Defendants based on the same claims and sanctioned Plaintiff. (*See* p.5 *supra.*)

7

good faith expectation of prevailing. The lawsuit involves the same Defendants and claims that Plaintiff litigated to completion twice in state court, losing both times in the lower and appellate courts. Third, although Plaintiff was represented by counsel in all of its previous actions and the present one, Plaintiff clearly made a habit of finding an attorney willing to litigate his claims as he presented them. Plaintiff also had a new attorney for each of his new actions. Furthermore, the fact that Plaintiff had counsel did not prevent its principal, Samuel Pfeiffer, from filing baseless, harassing, and demeaning letters and motions against Defendants on the docket throughout the litigation of this case, despite repeated admonitions from the Court that he desist in doing so. Thus, the fact that Plaintiff had an attorney had no bearing on the legitimacy of this case. Fourth, Plaintiff plainly has caused needless expense to Defendants and frivolously has burdened this Court and the court's personnel. In litigating this action alone, Defendants have drafted eight motions to dismiss and the Midtown Defendants were forced to move to vacate the *lis pendens* that attached to the property when Plaintiff filed this action.[4] This does not include the countless hours Defendants likely spent litigating the Plaintiff's first two state court actions through to the Appellate Courts and on remand to address injunctive relief and sanctions against Plaintiff. Throughout this case, Plaintiff and Samuel Pfeiffer also taxed the Court's scarce resources in responding to the numerous meritless motions and letters that it filed on the docket. Lastly, an injunction appears to be the only remedy available to protect the courts and Defendants from future litigation as the Court has every reason to believe that Plaintiff will continue to abuse the federal and state judicial systems.

Therefore, Defendants' requests for a filing injunction are granted. Plaintiff and Plaintiff's principals, including but not limited to, Samuel and Chana Pfeiffer, are enjoined from

---

[4] It bears noting that some of the Defendants in this case are elderly and in poor health. The stress and strain of the vicious, vexatious, and frivolous allegations made against Defendants, collectively, surely has had an unquantifiable toll on them.

commencing any new proceedings against Defendants or their attorneys for claims relating to the transactions or occurrences alleged in the Complaint filed in this action without first obtaining permission from the Court in which the action is to be filed and by showing that court a copy of this Order.

**III.     Sanctions**

"If a party wishes to move for Rule 11 sanctions, the Rule 11 motion must 'be made *separately* from other motions or requests and shall describe the specific conduct alleged to violate'" the rule. *Martens v. Thomann*, 273 F. 3d 159, 178 (2d Cir. 2001) (quoting Fed. R. Civ. P. 11(c)(1)(A)) (emphasis in original). However, a court may impose sanctions *sua sponte* after giving the party "notice and an opportunity to be heard." *Sanko S.S. Co. v. Galin*, 835 F.2d 51, 53 (2d Cir. 1987). Before awarding sanctions, the court must also "set forth its reasons or findings" as to why sanctions are warranted. *Id.* at 53.

Defendants Goebel and Solomon failed to comply with Rule 11's requirements in moving for sanctions in their motions to dismiss, and therefore, the Court does not issue sanctions pursuant to their request. However, the Court provided Plaintiff, Plaintiff's principal Samuel Pfeiffer, and Plaintiff's counsel with notice of its intention to impose sanctions and an opportunity to be heard, and therefore, the Court will issue sanctions under Rule 11(c)(3) of the Federal Rules of Civil Procedure for violations of Rule 11(b)(1).

At the March 4, 2015 status conference, the Court made it very clear that it found Plaintiff's lawsuit to be "utterly frivolous" and "clearly intended . . . to be vexatious and to harass defendants" as this is now the fifth action Plaintiff has brought over the same transaction that occurred nearly thirteen years ago, each lawsuit attaching a new notice of *lis pendens* preventing the property from being sold. (*See* Tr. of Mar. 4, 2015 Status Conference at 12-13.)

Additionally, the Court stated its finding on the record that Samuel Pfeiffer obviously has a "personal vendetta" against Defendants, that motivated the filing of these numerous and frivolous actions. (*Id.* at 13.) Samuel Pfeiffer expressed as much in the letters containing baseless accusations against Defendants that he continuously filed on the docket. (*See, e.g.* Letter of Feb. 1, 2015 by Samuel Pfeiffer, Dkt. Entry No. 100; Letter of May 8, 2015 by Samuel Pfeiffer, Dkt. Entry No. 137.) The Complaint included baseless claims, such as that Plaintiff, a corporation, suffered intentional infliction of emotional distress, which claim the Court discussed on the record. (*Id.* at 13-14.)

In addition to dismissing most of the claims orally at the conference and warning Plaintiff the action was meritless, the Court also admonished Plaintiff that it would consider sanctions in this case and directed Plaintiff to respond to Defendant Goebel and Solomon's requests for sanctions. (*Id.*) Despite this warning, Plaintiff continued to pursue the action and Plaintiff and Samuel Pfeiffer filed meritless motions that required the parties and the Court to expend substantial resources in order to address them. (*See* Letter Mot. to Stay, Dkt. Entry No. 135.) Plaintiff was both warned and given an opportunity to be heard.

Plaintiff argues that sanctions should not be imposed against it because it was represented by counsel and the Court cannot impose sanctions on a represented party, its claims were not frivolous, and it told its prior counsel it probably was not worth proceeding with this action. (*See* Pl.'s Opp'n 6-10; Decl. of Samuel Pfeiffer attached to Pl.'s Opp'n.) The Court finds Plaintiff's reasoning unpersuasive. First, the Court only is restricted from sanctioning represented parties for violations of Rule 11(b)(2). *See* Fed. R. Civ. P. 11(c)(5)(A). However, the Court is sanctioning Plaintiff for violations of Rule 11(b)(1), and specifically for bringing and maintaining this action for the purpose of harassing Defendants and causing unnecessary delay.

After the status conference, Plaintiff had the opportunity to withdraw its Complaint, which the Court suggested strongly that it do. Instead, Plaintiff hired another attorney to continue litigating the case and Samuel Pfeiffer filed a 74-page motion accusing Defendant Goebel of committing a fraud on the Court, the same claim made in the underlying Complaint. As the Court stated at the status conference, it is manifest

from the papers that Plaintiff has a personal vendetta against Defendants and that Plaintiff filed this lawsuit as part of that vendetta. Given the vexatious multiplicity of actions filed, this Court can only reasonably conclude that Plaintiff's actions were undertaken to harass defendants and prevent the sale of the property through the attachment of the *lis pendens,* a course of conduct Plaintiff has undertaken for thirteen years. The Court has also spent valuable time and resources addressing this action. Therefore, the Court finds a $10,000 sanction warranted.

## IV. Attorney's Fees Pursuant to the Release Agreement

The Court now turns to the remaining issue of Defendant Goebel's counterclaim for attorney's fees related to a Release Agreement that was executed on May 16-17, 2013 and signed by Defendant Goebel, Plaintiff's principal, Samuel Pfeiffer, and a representative for Plaintiff. "When the district court dismisses all claims over which it has original jurisdiction, the court has discretion to consider [a] compulsory counterclaim even if there is no independent basis for jurisdiction." *Reid v. IBM Corp.*, 1997 WL 357969, at *17 (S.D.N.Y. June 26, 1997) (citing 28 U.S.C § 1367(c)(3)). A counterclaim is considered compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and the "'essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Id.* (quoting *Harris v. Steinem*,

571 F.2d 119, 123 (2d Cir.1978)). Defendant Goebel's counterclaim for a breach of the Release Agreement is compulsory as the Release Agreement bars exactly the type of claims that Plaintiff asserted in his action, and it is in the interest of judicial economy to address the counterclaim while resolving the other issues in this case. *See id.* at 17-18; *Frumkin v. Int'l Bus. Machines Corp.*, 801 F. Supp. 1029, 1045 (S.D.N.Y. 1992).

The Release Agreement has a choice of law provision stating that it is "entered into under, and shall be governed for all purposes by, New York State law." (Release Agreement attached as Exhibit C to Aff. of Robert Goebel in Supp. of Mot. to Dismiss, Dkt. Entry No. 111.) Under New York law, "a contract is unambiguous when it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138-39 (2d Cir. 2000) (internal quotations omitted). Although Plaintiff does not dispute the terms of the Release Agreement, the Court interprets its terms with this standard in mind.[5]

The Release Agreement states that:

Jericho and Pfeiffer and each of their affiliates, successors, assigns, partners, members, attorneys, agents, and representatives (collectively referred to as the "Jericho Parties" hereby unconditionally release, acquit and forever discharge Goebel and his successors, assigns, attorneys, agents, and representatives (collectively referred to herein as the "Goebel Parties"), from any and all possible future action and actions; cause and causes

---

[5] Plaintiff informed the Court that it omitted its arguments against enforcement of the Release Agreement because the Court did not specifically order Plaintiff to respond to that argument and asked for leave to file an additional brief addressing this counterclaim. (*See* Letter of May 8, 2015; Dkt. Entry No. 136.) The Court finds this argument disingenuous at best and utterly lacking in merit as the issue of attorney fees also was discussed at the conference. Plaintiff was directed to respond to all Defendants' motions. Plaintiff bears the responsibility for asserting its own rights and defenses in this action. Plaintiff may not use the Court as an excuse for its own omission. Plaintiff defaulted in asserting a defense to this counterclaim, and the Court, therefore, deems any defense abandoned. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) ("Generally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others. Pleadings often are designed to include all possible claims or defenses, and parties are always free to abandon some of them.") Furthermore, the terms of the Release Agreement are clear, and the Court doubts Plaintiff could have made a plausible argument to the contrary.

> of action; suits; . . . contracts; controversies; agreements; promises; . . . claims; damages; . . . allegations; demands; and liabilities [that] have accrued in whole or in part or ever may accrue in whole or in part against Goebel Parties based upon facts or conduct occurring prior to the date of this Agreement, whether known or unknown, and the Jericho Parties shall be enjoined from asserting, bringing, assisting, participating in or furthering in any manner any action or proceeding based upon the matters released herein . . . .

(Release Agreement at section V.) The Release Agreement further provides for remedies, including attorney's fees. It goes on to state that, "[i]n the event that litigation shall arise out of this Agreement between the parties, the prevailing party shall be entitled to seek to recover reasonable attorneys' fees and expenses from the non-prevailing party." (*Id.* at section VII. A.) Defendant Goebel is the prevailing party as his motion to dismiss was granted. *See Tornheim v. Eason,* 363 F.Supp.2d 674, 678 (S.D.N.Y. 2005) (awarding attorneys' fees to defendants after defendants prevailed on motion to dismiss), *aff'd* 175 F. App'x 427 (2d Cir.2006); *see also Neroni v. Coccoma*, 2014 WL 3866307, at *2 (N.D.N.Y. Aug. 6, 2014) (declaring defendant the prevailing party where the action was dismissed as frivolous and vexatious).

The terms of the release agreement are unequivocal that Plaintiff relinquished his right to sue Defendant Goebel over the failed Contract and any other incidents related to the failed Contract, which is the entirety of Plaintiff's claims against Defendant Goebel. Therefore, Plaintiff breached the release agreement when it initiated this action. As the Court sees no reason to question the validity of the Release Agreement and as Plaintiff is the non-prevailing party, Plaintiff is liable for attorney's fees. The Court refers the issue of the amount of reasonable attorney's fees owed Defendant Goebel to the magistrate judge to conduct an inquest to determine an appropriate amount.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are granted and Plaintiff's Complaint is dismissed with prejudice. Plaintiff and Plaintiff's principals, including but not limited to, Samuel and Chana Pfeiffer, are sanctioned $10,000, payable jointly and severally to the Clerk of the Court and are enjoined from commencing any new proceedings against Defendants or their attorneys for claims relating to the transactions or occurrences alleged in the Complaint filed in this action without first obtaining permission from the court in which the action is to be filed and by showing that court a copy of this Order. Plaintiff and Plaintiff's principles may pay the sanctions in cash or by certified check made out to the Clerk of the Court (note the docket number on the memo line of the check) on or before September 30, 2015. Defendant Goebel's request for attorneys' fees is referred to the magistrate judge to conduct an inquest. Any other defendant wishing to make a motion for sanctions and/or attorney's fees must do so by September 4, 2015.

SO ORDERED.

Dated: Brooklyn, New York
       August 6, 2015

/s/
DORA L. IRIZARRY
United States District Judge