UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
JERICHO GROUP LTD. and JERICHO CO., :
 :  **MEMORANDUM & ORDER**
Plaintiff, : 14-CV-2329 (DLI)(VMS)
 :
-against- :
 :
MID-TOWN DEVELOPMENT LIMITED :
PARTNERSHIP, MIDTOWN :
DEVELOPMENT. L.P., EDWARD G. :
IMPERATORE, MAURICE L. STONE, :
EDWARD W. ROSS, ARTHUR E. :
IMPERATORE, WR WEST SIDE :
ASSOCIATES, HADRIAN PROPERTIES :
LTD, FANFARE ENTERPRISE INC, :
ARCORP PROPERTIES, JERRART :
VENTURE PROPERTIES, HARWOOD :
LLOYD LLC, GEORGE BERGER, :
JEFFREY SHORE, PHILIPS NIZER LLP, :
FREDRICK E. SHERMAN, TODD R. :
GEREMIA, JONES DAY, BROWN :
HARRIS STEVENS LLC, ELAINE :
OSBORN EMMET, MICHAEL A. :
SZEGDA, BAYSTONE EQUITIES INC, :
ROBERT B. GOEBEL, RICHARD :
MARASSE, LISA SOLOMON, JOHN DOE :
1-10 and XYZ CORPORATION 1-10, :
 :
Defendants. :
 :
------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

The Court assumes familiarity with the background of this case as set forth in the Memorandum and Order dated August 6, 2015 (the "Decision," Dkt. Entry No. 150).[1] The following summary, therefore, will discuss only those facts and circumstances that bear on this Order.

---

[1] The Court incorporates all party-name abbreviations and designations from the Decision in this Memorandum and Order (the "Order").

Plaintiff's Amended Complaint alleged 20 different causes of action against the various Defendants. On March 4, 2015, the Court dismissed claims 1-15, 17 and 19 on the grounds of *res judicata*, and claim 18 for failure to state a claim (the "March 4 Order"). On March 6, 2015, the Court ordered the cancellation of the notice of pendency against the real property at issue in this case (the "March 6 Order"). On March 17, 2015, Plaintiff filed a letter (the "March 17 Letter") seeking reconsideration of the March 4 Order, and on March 18, 2015, Plaintiff filed a second letter requesting an extension of time to file a motion for reconsideration of the March 4 Order (Dkt. Entry Nos. 122 and 123).[2] By Order dated March 18, 2015 (the "March 18 Order"), the Court denied both requests, noting that their "unreasonableness" was "underscored by the fact that the Court already addressed Plaintiff's argument against dismissal, based on allegedly newly discovered evidence, at the March 4th Conference. Plaintiff neither has cited to any new intervening case law nor to any new facts that would warrant this Court to reconsider its decision."[3] March 18 Order.

On August 6, 2015, the Court issued the Decision dismissing the remaining claims (16 and 20) on the grounds of lack of subject matter jurisdiction and failure to respond to Defendants' motions to dismiss, respectively. Decision, at 3 and 6-7. The Decision also enjoined Plaintiff or Plaintiff's principals from further filing any action based on the same transactions or occurrences as alleged in the Amended Complaint, imposed sanctions in the amount of $10,000 against Plaintiff, and referred the issue of Defendant Goebel's attorney's fees to the magistrate judge for an inquest. Decision, at 14.

---

[2] Since the letter of March 17, 2015 actually was a motion for reconsideration, Plaintiff should have filed it as a motion in accordance with Local Civil Rule 7.1(a).

[3] The March 18 Order also reminded Plaintiff of the Court's warning at the March 4 Conference that the Court "was considering imposing Rule 11 sanctions against [P]laintiff and his counsel for continuing to bring what is clearly harassing and vexatious litigation."

On August 10, 2015, Plaintiff filed a letter (Dkt. Entry No. 152) requesting that the Court enter on the docket two letters Plaintiff's principal, Samuel Pfeiffer ("Pfeiffer"), previously sent to the Court in October of 2014 (the "Pfeiffer Letters"). This was Plaintiff's second request for this relief, thus making it Plaintiff's first request for reconsideration of the Court's previous denial of that relief. Also on August 10, 2015, Plaintiff filed a second letter asking the Court to correct a factual error in the Decision (Dkt. Entry No. 153).[4] On August 11, 2015, Plaintiff filed a motion seeking the same relief it requested in its two letters from August 10, 2015, namely, entry of the Pfeiffer Letters on the docket and correction of the factual error in the Decision (Dkt. Entry No. 155).[5] Also on August 11, 2015, Plaintiff filed a notice of voluntary dismissal as to Defendant Baystone (the "Voluntary Dismissal," Dkt. Entry No. 157).

On August 14, 2015, the Court entered two orders responding to Plaintiff's four separate filings (Dkt. Entry Nos. 152, 153, 155, and 157) requesting various forms of relief. The first order (the "First August 14 Order") struck the voluntary dismissal as to Defendant Baystone because the Decision had already dismissed all claims against Defendant Baystone for lack of subject matter jurisdiction. *See* Decision, at 6. The second order (the "Second August 14 Order") corrected the factual error as to Defendant Goebel, and noted that the mistake was completely irrelevant to the outcome of the Decision. The Second August 14 Order further denied Plaintiff's request to file the Pfeiffer Letters on the docket, noting that the Court had previously rejected an identical request made by Pfeiffer by order dated May 13, 2015 (the "May 13 Order"). In fact, the May 13 Order expressly "prohibited [Pfeiffer] from filing any letters,

---

[4] Inadvertently, the Court erroneously noted in the Decision that Defendant Goebel was Plaintiff's attorney in the "second" state court action, when, in fact, he was Plaintiff's attorney in the "first" state court action.

[5] Plaintiff filed the August 11 motion because the two letters of August 10 were procedurally defective letters that Plaintiff should have filed as a motion. This was the second time Plaintiff filed a motion for reconsideration as a letter in violation of Local Civil Rule 7.1(a). This continued lack of attention to proper procedure is wasteful of the time and resources of the Court and defense counsel who naturally would seek to respond to these requests.

3

motions, or other papers on this docket except through Plaintiff's attorney." May 13 Order *quoted in* August 14 Order. The August 14 Order also reiterated the Court's many previous admonitions to Plaintiff that further frivolous pleadings would be met with additional sanctions. *See* August 14 Order.

Undeterred, on August 16, 2015, Plaintiff filed a letter (the "August 16 Letter," Dkt. Entry No. 162) requesting reconsideration of: (i) the First August 14 Order striking the voluntary dismissal of Defendant Baystone, and (ii) the Second August 14 Order denying, for the second time, that the Pfeiffer Letters be added to the docket.[6] August 16 Letter, at 1-2. On August 21, 2015, Plaintiff filed a motion (the "August 21 Motion," Dkt. Entry No. 163) seeking: (i) reconsideration of the March 4 Order dismissing *sua sponte* claims 1-15 and 17-19;[7] (ii) reconsideration of the March 6 Order cancelling the notice of pendency; (iii) reconsideration of the relief ordered in the Decision (dismissal of claims 16 and 20, filing injunction, sanctions, and inquest on attorney's fees); and (iv) leave to amend the Amended Complaint. August 21 Motion, at 1. Plaintiff did not submit a proposed Second Amended Complaint.

For the purposes of this Order, the Court will treat the relief sought in the August 16 Letter as part of the August 21 Motion, and hereinafter collectively refers to both documents as the "Motion for Reconsideration" ("Mot. for Recon."). For the reasons stated herein, the Motion

---

[6] The August 16 Letter cites no legal authority for the relief requested therein. *See generally* August 16 Letter. Moreover, once again, Plaintiff's counsel improperly filed the August 16 Letter as a letter rather than as a motion in contravention of Local Civil Rule 7.1(d). This is now the third time counsel has made this same error. *See* Dkt. Entry Nos. 122, 152, and 153. Astonishingly, the August 16 Letter even makes the following acknowledgment: "[T]he letter motions (Dkt. 152 and 153) were procedurally defective and should [have] been submitted as formal motions. Accordingly, [counsel] prepared a [motion] (as required by Local Rule 7.1(a)(2)(Dkt. 155)." August 16 Letter, at 2. Thus, the August 16 Letter *itself* – which was defective because it should have been a motion – referred to an earlier instance in which counsel erroneously filed letters that he should have filed as a motion. Plaintiff's counsel expressed self-righteous indignation at the Court's warning in the August 14 Order that it would consider imposing sanctions against counsel (including reporting counsel to the appropriate grievance committee) should he persist in his frivolous and improper filings. The Court reiterates its notice to Plaintiff and its counsel, that the Court will impose sanctions it deems appropriate should they continue this vexatious vein of litigation and further waste the scarce time and resources of this Court.

[7] This is Plaintiff's second motion for reconsideration of the March 4 Order. *See* March 17 Letter.

4

for Reconsideration is denied in its entirety.

## DISCUSSION

Plaintiff moves for reconsideration of the Court's prior orders under Rule 59(e), Rule 60(b)(3) or (6), or Rule 60(d)(3), and to amend the complaint pursuant to Rule 15. Mot. to Recon., at 4 and 1.[8]

Rule 59(e) allows a party to move to "alter or amend a judgment." Fed.R.Civ.P. 59(e). The applicable case law states that "the standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transport, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The three grounds justifying reconsideration are "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd v. Nat'l Mediation Bd.*, 956 F.2d. 1245, 1255 (2d Cir. 1992) (citations and internal quotation marks omitted). Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the court in deciding the original motion. *Hinds County, Miss. v. Wachovia Bank N.A.*, 708 F. Supp. 2d 348, 369 (S.D.N.Y. 2010) (citation and internal quotation marks omitted); *United States v. Gross*, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002). Nor is it proper to raise new arguments and issues. *Gross*, 2002 WL 32096592 at *4.

Rule 60(b)(3) authorizes a court to grant relief from a final judgment for "fraud . . . misrepresentation, or misconduct by an opposing party." Fed.R.Civ.P 60(b)(3). The moving party must show that "such 'fraud' prevented him or her from fully and fairly presenting his or her case, and that the fraud is attributable to the party or, at least, to counsel." *L.I. Head Start*

---
[8] All citations to the Motion for Reconsideration refer to the August 21 Motion unless otherwise indicated.

*Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 956 F. Supp. 2d 402, 410 (E.D.N.Y. 2013) (quoting *Richardson v. Nat'l R.R. Passenger Corp.,* 150 F.R.D. 1, 7 (D.D.C.1993) (internal quotation marks omitted). Similarly, "Rule 60(d)(3) also authorizes a court to grant relief for fraud, as it provides that the rule 'does not limit a court's power to . . . set aside a judgment for fraud on the court.'" *Philips Lighting Co. v. Schneider*, 395 F. App'x 796, 798 (2d Cir. 2010) (quoting Fed.R.Civ.P 60(d)(3)). Under Rule 60(b)(6), a court may grant relief from a judgment for "any ... reason that justifies [such] relief." Fed.R.Civ.P. 60(b)(6). However, relief under this "catch-all" provision should only be granted in "extraordinary circumstances." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 393 (1993).

As for the Plaintiff's request to amend the complaint, Rule 15(a)(2) provides that courts should "freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). However, when a party seeks leave to amend after a court enters judgment, "Rule 15's liberality must be tempered by considerations of finality." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011). Moreover, procedurally, a court must first vacate the judgment before a movant may obtain postjudgment leave to amend the complaint. *Id.* (citing *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). Despite this procedural requirement, "considerations of finality do not always foreclose the possibility of amendment." *Id.*, at 213. Therefore, "it is reversible error for a court to address only concerns of finality without also taking into account the nature of the proposed amendment, in light of the [Second Circuit's] strong preference for resolving disputes on the merits." *Becnel v. Deutsche Bank AG*, 838 F. Supp. 2d 168, 170-71 (S.D.N.Y. 2011) (quoting *Willaims* 658 F.3d, at 213) (internal quotation marks omitted). The Supreme Court has held that a district court may, within its discretion, deny postjudgment leave to amend for

reasons such as "undue delay, bad faith or dilatory motive on the part of the movant." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation omitted). Failure to include a proposed amended complaint with the motion to amend the complaint indicates a lack of good faith. *State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990)

With these standards in mind, the Court now turns to the Plaintiff's arguments.

A. The March 4 Order Dismissing Claims 1-15 and 17-19 *Sua Sponte* and the March 6 Order Cancelling the Notice of Pendency

The Motion for Reconsideration is dedicated almost entirely to the argument that the Court should not have applied *res judicata* to dismiss claims 1-15 and 17-19. *See generally*, Mot. to Recon. At the outset, the Court notes that this is not even accurate, as the Court dismissed claim 18 for failure to state a claim under Rule 12(b)(6). *See* Decision, at 3. As to Plaintiff's *res judicata* argument itself, the main thrust of the argument is that Defendants Goebel and Szegda colluded with Defendant Midtown to perpetrate a fraud on Jericho, the New York State Courts, and this Court, and that Jericho only discovered this conspiracy in 2013. *See generally,* Mot. to Recon. According to Plaintiff's theory, the discovery of the conspiracy in 2013 is an entirely new claim that should have precluded the application of *res judicata. See generally id.* Plaintiff redundantly, and at times incoherently, rehashes this same argument in slightly different ways throughout the motion's 23[9] pages.[10]

Although Plaintiff mechanically cites the three grounds warranting reconsideration under Rule 59(e) – an intervening change in controlling law, availability of new evidence, or the need

---

[9] 7 of the 23 pages are single spaced in what is obviously a deliberate attempt to circumvent the 25-page limit of this Court's Individual Rules.

[10] For an example of Plaintiff's argument that is both redundant and incoherent *compare* Mot. to Recon., at 14 ("Almighty G-d made miracles that after Plaintiffs expended thousands of hours and millions of dollars on the Prior Proceedings, plus heartache, lost profits of hundreds of millions of dollars. . . .") *with* Mot. to Recon., at 15 ("Almighty G-d made miracles that after Plaintiffs expended thousands of hours and millions of dollars on the Prior Litigation, plus heartache, lost profits of hundreds of millions of dollars. . . .").

7

to correct a clear error or prevent manifest injustice – it makes no attempt to demonstrate which of these grounds apply here. Based on Plaintiff's repeated references to the discovery in 2013 of the alleged Szegda/Goebel/Midtown conspiracy, the Court presumes Plaintiff intended to base its motion on new evidence grounds. However, Plaintiff's argument with respect to its discovery of the conspiracy *pertains to why* res judicata *should not apply*. Discovery of the conspiracy in 2013 is wholly irrelevant to Plainitff's argument *under Rule 59(e)*, which would require the discovery of the conspiracy *after* the March 4, 2015 Order. Plaintiff readily acknowledges that it discovered the alleged conspiracy in 2013. Indeed, Plaintiff alleged it was the victim of this conspiracy in its Amended Complaint, which argument the Court considered and rejected at the March 4 Conference. Plaintiff again raised this same argument the first time it asked this Court to reconsider the March 4 Order dismissing claims 1-15 and 17-19. *See* March 17 Letter. In denying this first motion for reconsideration, the Court observed that it had "already addressed Plaintiff's argument against dismissal, based on allegedly newly discovered evidence, at the March 4th Conference." March 18 Order. Because Plaintiff once again has failed to show any newly discovered evidence *with respect to Rule 59(e)*, the Court again rejects Plaintiff's Motion for Reconsideration on this ground.

Plaintiff's arguments for reconsideration under Rule 60(b)(3) and (d)(3) are similarly meritless. Under 60(b)(3), the movant must show that the "fraud prevented him or her from fully and fairly presenting his or her case." *L.I. Head Start*, 956 F. Supp. 2d, at 410. The Plaintiff's case boils down to the discovery of a conspiracy in 2013, which Plaintiff had ample opportunities to present. For these same reasons, this case does not present the type of "extraordinary circumstances" that would warrant granting relief under 60(b)(6).

With regard to the Court's cancellation of the notice of pendency on March 6, 2015, the Court ordered such relief based on the fact that the March 4 Order dismissed any claims that would have affected title to the real property at issue. As the Court declines to vacate the March 4 Order, there is no reason to reinstate the notice of pendency. The Motion for Reconsideration with respect to the cancellation of the notice of pendency, therefore, is denied.

B. The August 14 Order Striking the Voluntary Dismissal of
   Defendant Baystone and the Dismissal of Claim 16

Once the Court dismissed claims 1-15 and 17-20,[11] all that remained was claim 16, a state law claim against Defendants Baystone (a citizen of New York) and Szegda (a citizen of New Jersey). At this stage of the litigation, there was no federal law claim that would have supported this Court's exercise of supplemental jurisdiction over claim 16 pursuant to 28 U.S.C. § 1367. And because Plaintiff and Defendant Baystone are a citizens of New York, the lack of complete diversity precluded this Court from exercising diversity jurisdiction pursuant to 28 U.S.C. § 1332. Accordingly, the Court dismissed claim 16 as to both Defendants Baystone and Szegda on August 6, 2015. On August 11, 2015, Plaintiff filed a notice of voluntary dismissal as to Defendant Baystone in order to restore complete diversity as between Plaintiff and Defendant Szegda. For the reasons stated below, Plaintiff's jurisdictional arguments are unpersuasive.

First, Plaintiff asserts that "there *is* diversity in this case because (based upon the [Decision] dismissing the case as to all other defendants), the only remaining defendant is Szegda." Mot. for Recon., at 22 (emphasis added). This is wrong. Once the Court dismissed all the other claims, the Court lacked jurisdiction *over the entire case* because there was not complete diversity. Claim 16 asserted a claim under state law, and the Court declined to exercise its supplemental jurisdiction. Defendant Szegda, therefore, was not the "only remaining

---

[11] The Court dismissed Claim 20 because Plaintiff never responded to the Defendant's motion to dismiss that claim. *See* Decision, at 3. Plaintiff does not challenge that decision here, so it is deemed waived.

9

defendant," because the Court's lack of jurisdiction meant there were no defendants. Plaintiff completely disregards the plain fact that what remained was a non-diverse state law claim without any basis for this Court's exercise of supplemental jurisdiction.

Plaintiff's next contention with respect to this Court's jurisdiction is that "[n]otwithstanding this Court's Order, dated August 14, 2015, striking the Notice of Voluntary Dismissal, it was Jericho's intention to make clear . . . that there is clearly diversity vis a vis [*sic*] Szegda."[12] *Id.*, at n. 3. Insofar as Plaintiff asserts that it *attempted* (or "intend[ed]") to create diversity with respect to Szedga by filing the Voluntary Dismissal, Plaintiff is correct. Plaintiff is mistaken, however, in its belief that this attempt to create diversity jurisdiction *nunc pro tunc* was in any way successful. The Court struck the Voluntary Dismissal as moot, and the request to reconsider that ruling is denied. Therefore, the Court does not consider the Voluntary Dismissal here.

Nevertheless, the Court is aware that "Rule 21[13] invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time [for the purpose of restoring complete diversity], even after judgment has been rendered." *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 832 (1989) (footnote added). The justification for this authority is that "requiring dismissal [based on lack of complete diversity] after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants." *Id.* Here, this rationale cuts in exactly the opposite direction, as allowing this litigation to continue would

---

[12] The statement "[n]otwithstanding this Court's Order," appears to suggest that the order striking the Voluntary Dismissal could simply be set aside, because it impeded Plaintiff's attempt to restore diversity jurisdiction. It comes as no surprise that Plaintiff would interpret an order of this Court as merely advisory, as Plaintiff has repeatedly failed to comply with not only this Court's orders, but the orders of the New York State Courts as well. Plaintiff is well advised to treat the orders of this and any other Court as what they are: non-optional directives with consequences for non-compliance.

[13] Rule 21 provides: "On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.

"impose (additional) unnecessary and wasteful burdens" on Defendants and this Court. *Id.* Moreover, the Second Circuit has held that it is inappropriate for a district court to "restructure [a] lawsuit to salvage . . . diversity jurisdiction" under *Newman-Green* when doing so would be "futile." *Handelsman v. Bedford Vill. Associates Ltd. P'ship*, 213 F.3d 48, 53 (2d Cir. 2000). Here, the Court is utterly convinced that the Plaintiff's case is not only undeniably futile, but as previously noted, vexatious, harassing, and frivolous as well. As such, the Court declines to exercise its discretion to dismiss Defendant Baystone in order to retain diversity jurisdiction, and the Motion for Reconsideration is denied on these grounds.

### C. The Remaining Requests for Reconsideration

The remaining issues on which the Plaintiff has moved for reconsideration are the Pfeiffer Letters, sanctions, the filing injunction, and the inquest on attorney's fees. The request to upload the Pfeiffer Letters to the docket is denied, as the Court once already has denied a motion for reconsideration on this very issue. As to the sanctions, filing injunction, and attorney's fees, the Plaintiff simply requests that the Court vacate the Order of August 6. The memorandum of law offers no specific argument in support of the request to vacate the sanctions, filing injunction, or inquest on attorney's fees. Accordingly, this request is denied summarily.

### D. Leave to Amend the Amended Complaint

The Court recognizes that a final judgment does not necessarily foreclose the possibility of amendment. *Williams*, 659 F.3d at 212. However, in this case, considerations of finality far outweigh the permissiveness of Rule 15. *Id.* First, Plaintiff has already amended its complaint once. Second, the Court infers a lack of good faith based on Plaintiff's failure to submit a proposed Second Amended Complaint with the Motion for Reconsideration. *Skuld*, 921 F.2d at

418. Lastly, even if Plaintiff had submitted a proposed Second Amended Complaint, there is more than sufficient evidence in the record to support the conclusion that Plaintiff has acted in bad faith throughout this case and the prior similar state litigation. Indeed, in dismissing the Amended Complaint, the Court noted the vexatious and harassing history of this litigation throughout both the State courts and this Court. In fact, despite a filing injunction issued in the State court and this Court, Plaintiff recently initiated yet another State court action. *See* Letter of Midtown Defendants, dated August 27, 2015.[14] Allowing Plaintiff to yet again amend its complaint at this stage would be tantamount to permitting this vexatious, harassing, and frivolous litigation to continue *ad infinitum*. The Court declines to accept Plaintiff's invitation to waste even more scarce judicial resources.[15]

---

[14] The Midtown Defendants' request for a 30-day extension to respond to the Motion for Reconsideration, is denied as moot.

[15] As if to further prove this point, as the Court was drafting this Order, on August 28, 2015 Plaintiff filed a rambling, 4-page single spaced letter with yet another (also rambling) motion for reconsideration attached. This latest motion for reconsideration is entirely meritless and is denied summarily. The Midtown Defendants' request for a 30-day extension to respond to this motion for reconsideration is denied as moot.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Reconsideration is denied. Plaintiff is hereby put on notice that any further motions for reconsideration will result in the summary imposition of sanctions against Plaintiff, Plaintiff's counsel, and Pfeiffer. If any of the Defendants are forced to respond to any more frivolous filings, Plaintiff will pay the Defendant's attorney's fees. These attorney's fees will be in addition to whatever attorney's fees Magistrate Judge Scanlon deems appropriate at the inquest.

SO ORDERED.

Dated: Brooklyn, New York
       November 2, 2015

/s/
DORA L. IRIZARRY
United States District Judge