**IM Law Group, P.C.**
445 Central Avenue, Suite 108
Cedarhurst, NY 11516
P: (516) 344-8010
F: (888) 469-6858
igor@theimlawgroup.com

April 19, 2016

Hon. Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

*Re: Jericho Group, Ltd. v. Mid-town Development; Docket# 14-cv-2329*

Dear Magistrate Vera M. Scanlon:

### History of Negotiations

This Response to Mr. Goebel's Letter-Motion is filed in part in opposition and in part to clarify my client, Jericho Group Ltd's position before your Honor rules on Mr. Goebel's motion to enforce the terms of the oral agreement entered on the record before your Honor on March 18, 2016. Annexed to this Response is Mr. Samuel Pfeiffer's Letter in Support as Exhibit D.

Judge Irizarry in Her Memorandum and Order of August 6, 2015, said in part: "As the Court sees no reason to question the validity of the Release Agreement and as Plaintiff is the non-prevailing party, Plaintiff is liable for attorney's fees. The Court refers the issue of the amount of reasonable attorney's fees owed Defendant Goebel to the magistrate judge to conduct an inquest to determine an appropriate amount." [Docket No. 150]. Based on this Memorandum and Order, an Inquest was scheduled to determine the reasonable amount of attorney's fees.

Judge Irizarry relied on the validity of the Agreement between Jericho Group and Mr. Goebel as she so stated in her Memorandum and Order: "As the Court sees no reason to question the validity of the Release Agreement and as Plaintiff is the non-prevailing party, Plaintiff is liable for attorney's fees." The Release Agreement that Judge Irizarry relied on also contains article VI called "Cooperation." This clause states in relevant part: "Upon reasonable request by Jericho and Pfeiffer from time to time Goebel shall reasonably cooperate to the relevant issues pertaining to the subject matter hereof. Such reasonable cooperation . . . shall be limited to requests for information, documents, and affirmations of Goebel that are within the knowledge, custody, possession, and/or reasonable control of Goebel." [Exhibit A, §VI].

During the negotiation of March 18, 2016, Mr. Pfeiffer spoke with Mr. Goebel. [Exhibit D]. Mr. Goebel said that he will comply with the 2013 Agreement in exchange for Mr. Pfeiffer engaging in settlement discussions. [Exhibit D]. At that point, Mr. Pfeiffer authorized me to

engage in settlement negotiations, on behalf of Jericho Group Ltd, as to an appropriate amount of legal fees in lieu of an Inquest based on the understanding he reached with Mr. Goebel.

      This contention by Jericho Group Ltd and Mr. Pfeiffer is supported by the language of the Scheduling Order from August 11, 2015. The Order states as follows, in part: "On or before 8/19/2015, Defendant Goebel is to file a letter brief addressing the *legal basis for his request and the reasonableness of the requested hours and counsel's hourly rate, as well as an affidavit attaching the relevant documents.*" [emphasis added]. Mr. Goebel never submitted any more than his attorney's block billing entries.

      I was retained by Jericho Group Ltd to prepare and represent the client at the Inquest or in the alternative to engage in settlement negotiations and attempt to reach a settlement on the amount of the fees in lieu of the Inquest. [Exhibit B]. When I appeared for the first time on this case on March 18, 2016 for a status conference, I engaged Mr. Goebel and his attorney, Mrs. Solomon in good faith negotiations to see if an amicable resolution can be reached regarding the reasonable amount of attorney's fees. I told Mrs. Solomon that the goal of these negotiations was with a sole intent to reach an agreement as to the amount of legal fees, in order to forego the Inquest at which your Honor would have to make the determination of a reasonable amount. There would also have been significant costs to conduct discovery, since Mr. Goebel did not provide any meaningful information based on which my client can assess whether the requested amount of legal fees is reasonable in this case. My client would also have to hire an expert to review the provided billing entries, as well as potentially testify regarding a reasonable amount of attorney's fees based on the work done in this case.

### Negotiated terms comprising March 18 Agreement

      On March 18, 2016, I appeared as an attorney for Jericho Group Ltd. Mr. Pfeiffer appeared on his own behalf. On the date of the court appearance, I engaged in settlement negotiations with Mrs. Solomon to settle the amount of the legal fees, to forego the costs of further discovery and hiring of experts. We reached an Agreement as to several terms and left two terms to be at Mr. Goebel's discretion to pursue or forego: (1) request for Mr. Pfeiffer to retract certain statements: and (2) Guaranty from Shulem Pfeiffer, Mr. Pfeiffer's son. [Transcript 9:1-4].

      During the negotiations that took place on March 18, 2016 at the courthouse, I told Mrs. Solomon that I want to negotiate what settlement amount would be acceptable to Mr. Goebel in lieu of the Magistrate making that finding, and she asked that she wants to secure the agreed upon amount with a confession of judgment and note. I told her that Jericho and Mr. Pfeiffer in general agree but the terms and conditions must be worked out.

      In her Letter-Motion for enforcement of Settlement Agreement, Mrs. Solomon is making an argument that an additional term that was not in the record on March 18 should be included in the Agreement. [Docket 240-1, term "VII"] This additional term that has to do with waiver of defenses, counterclaims, and offsets was never discussed on March 18, 2016, nor is there any mention of such term in the Transcript. In her Letter-Motion, Mrs. Solomon outlined all the terms of the March 18 Agreement and includes at the end of each term a citation for where it

appears in the March 18 Transcript. It is not surprising that when the last term is mentioned, there is no citation that follows. [Docket 240, p. 2]. This is because this term was never mentioned on the record.

This additional term was an outgrowth of prodigious negotiations that transpired in the few weeks subsequent to the March 18 court appearance. In addition to the numerous hours spent on the phone in an effort to reach an agreement on the language, Mr. Pfeiffer and I travelled to Mrs. Solomon's office and engaged in a non-stop seven hour negotiation session.

Mrs. Solomon also states in her Letter-Motion that "to date Jericho and Mr. Pfeiffer have only provided the undersigned with preliminary comments to the agreement, are now seeking material alterations to the Fee Settlement unacceptable to Mr. Goebel and otherwise taking positions further evidencing their bad faith herein." [Docket 240, p. 5]. This statement is simply not true. Mr. Pfeiffer and I have made extensive comments and suggested changes to several sections of the proposed settlement agreement. By Friday, April 8, it was our understanding that an agreement as to all material terms has been reached and now just needed to be reduced to a written document for everyone to review. Yet the following Monday, Mrs. Solomon circulated a draft that contained additions of their own that were not previously agreed to or even discussed. It was at that point that we saw that an agreement on the language could not be reached.

In her Letter-motion, Mrs. Solomon says that "Based upon the plain meaning of the unambiguous terms stated on the record, the objective intent of the parties was for Jericho and Pfeiffer to irrevocably waive all defenses, counterclaims or right of setoff and any right to recapture any payments." [Docket 240, p. 4]. Mr. Goebel did not indicate such term on the record on March 18, 2016. Yet somehow this new term that was discussed during subsequent negotiations should also be part of the March 18 Agreement. Just as the Court told Mr. Pfeiffer at the last court appearance that only the terms on the record will be considered by the Court, so too the Court should apply the same standard to Mr. Goebel's request; namely that only the terms that clearly appear on the transcript on March 18, 2016 make up the entire Agreement and no extraneous understandings are to be included in this agreement other than the terms read into the record. I attached as Exhibit C for the Court's review a Proposed Order that is reflective of the terms of the March 18 Agreement. The Court's language is unambiguous: "Let's be clear, there is an agreement. We went through this on the record that these were the only terms of the agreement. So any side conversation is not part of the agreement." [Docket 240; Transcript 11:6-9].

The case law Mrs. Solomon cites in her Letter-Motion further supports our contention that Mr. Goebel's attempt to add language regarding waivers cannot be part of this agreement. In *Hostcentric Technologies*, 2005 U.S. Dist. Lexis 11130, District Court revisited an established principle adopted by the Second Circuit that "a 'preliminary' agreement is binding, despite the desire for a later formal document... Such an agreement is preliminary only in form - only in the sense that the parties desire a more elaborate formalization of the agreement. The second stage is not necessary; it is merely considered desirable." *Teachers Ins. & Annuity Ass'n v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987). Moreover, unlike a consent judgment, a settlement judgment allows the district court to retain authority to "implement but not expand upon the parties' settlement agreement." *Manning v. N.Y. Univ.*, 299 F.3d 156, 163 (2nd Cir. 2002).

On March 18, 2016, Mr. Goebel, Samuel Pfeiffer and Jericho Group Ltd entered into a settlement agreement on the record. While the essential terms were stated on the record, they were not yet reduced to a detailed written agreement. During the long and detailed negotiations that followed parties brought up additional terms that they wished to include in the agreement above and beyond the terms entered on the record on March 18, 2016. There was no discussion at any point on March 18, 2016 regarding any waivers of any kind. Yet Mr. Goebel's Letter-Motion insists that "the plain meaning of the terms makes clear that Jericho and Pfeiffer agreed to irrevocably waive defenses, counterclaims or offsets that might form the basis for objecting to payment of the settlement amount . . . In addition, no term of the settlement reserved their right to seek to recapture any payments made." [Docket 240, p. 4].

Such argument by Mr. Goebel is unavailing and is not supported by the case law cited. First, the terms making up the March 18 Agreement are unambiguous. Therefore, the Court must give them full meaning and in a way that does not undermine or contradict the remaining terms. Since there was no discussion or any language within the four-corners of the March 18, 2016 Transcript regarding a waiver, Mr. Goebel's argument is nothing less than an attempt to introduce a new term that was not agreed to on March 18, 2016

Moreover, Confession of Judgment and the Promissory Note must be limited to the amount of legal fees, since the parties could not agree on the terms and very little information is available from March 18 Agreement to supplement these documents. Presence of Confession of Judgment did not place before the Court other issues, such as what rights and/or remedies maybe waived by the parties. A mere agreement to have a Confession of Judgment included as part of the negotiation does not lead to a conclusion that Mr. Pfeiffer and Jericho Group were also implicitly agreeing to waive any rights. Mrs. Solomon requested that Jericho and Mr. Pfeiffer should agree to a Confession of Judgment because if the Magistrate-Judge would have held an inquest the court would enter an order of the amount and a judgment but since the parties agree to the amount then the parties should agree to a confession of judgment to secure the amount but not that Jericho and Mr. Pfeiffer waive any of their rights to appeal, motion or raise new claims. It was precisely this issue that the parties were attempting to address on April 5 in a conference room when they appeared before this Court. [Exhibit D, p. 3]. Since they were not able to reach an understanding, the Confession of Judgment was not finalized. Therefore, the Confession of Judgment must be limited to the issue of the amount of legal fees in order to respect the terms of the March 18 Agreement.

### Guaranty against Chana Pfeiffer is not valid or enforceable

The March 18 Agreement entered on the record contains a provision that Chana Pfeiffer shall guarantee absolutely and unconditionally payment of all amounts and obligations under the settlement. [March 18 Transcript, 6:24-25]. Chana Pfeiffer did not appear in Court on March 18, 2016, nor did she appear telephonically under oath. Since there is no record of her consenting to be bound by the terms of the agreement, the Guaranty clause is not valid. Mr. Pfeiffer's representation to Mr. Goebel has no legal effect since he was not authorized to speak on Chana Pfeiffer's behalf, nor did he have a valid power of attorney from Chana Pfeiffer that would have given him authority to bind her to this Agreement. [Exhibit D, p. 2]. For this reason, I did not include in the Proposed Order Chana Pfeiffer's Guaranty.

## Conclusion

      The entire negotiation and the subsequent terms read into the record were entirely driven by the attempt to settle the amount of legal fees in lieu of an Inquest in which your Honor would have decided the amount of legal fees. Based on the terms stated on the record on March 18, 2016, I respectfully ask the Court to grant enforcement of the March 18 Agreement terms as memorialized in the Proposed Order. [Exhibit C]. Such Agreement should be limited to the terms read into the record and no extraneous terms are to be included in the Proposed Order.

      Sincerely,

      /s/ Igor Meystelman
      Igor Meystelman, Esq.

To:    Lisa Solomon via ECF