# AGREEMENT

This Agreement ("Agreement") is made as of the 17th day of May 2013 by and among Samuel Pfeiffer, an individual having an office at c/o Jericho Group, Ltd., 519 Flushing Avenue, Brooklyn, NY 11205 ("Pfeiffer"); Jericho Group, Ltd., a New York corporation having an office at 519 Flushing Avenue, Brooklyn, NY 11205 ("Jericho"); and Robert B. Goebel, having an office at 14 Walworth Avenue, Scarsdale, NY 10583 ("Goebel");

## NOW, WITNESSETH,

**WHEREAS**, Midtown Development, L.P. ("Midtown"), as seller and Jericho as purchaser entered into that certain Contract of Sale dated June 18, 2002 ("Contract of Sale"), for the sale and the purchase of real property consisting of Lot 1, Block 708, and Lot 17, Block 709, on the City of New York Tax Map in the Borough of Manhattan. This property is more particularly described in Schedule A annexed to the Contract of Sale herein referred to as the "Property";

**WHEREAS**, the parcels are located between 36th and 38th Streets adjacent to Eleventh Ave. in the borough of Manhattan;

**WHEREAS**, the purchase price for the Property under the Contract of Sale was $28 million;

**WHEREAS**, a dispute arose between Midtown and Jericho arising out of said Contract of Sale;

**WHEREAS**, Goebel was retained by Jericho and Pfeiffer in 2004 to obtain from a court of law a determination in favor of Jericho and Pfeiffer pertaining to said dispute and said Contract of Sale and enforce against Midtown Jericho's rights and remedies thereto;

**WHEREAS**, thereafter, a First Amended Verified Complaint, dated November 29, 2004, in Case Index No. 113274/04, in the Supreme Court of the State and County of New York (the "Original Case") was served upon Midtown by Jericho, and Defendant Midtown moved to dismiss the Complaint (the "Dismissal Motion");

**WHEREAS**, the Dismissal Motion was denied on May 12, 2005 by the Hon. Charles E. Ramos and Defendant thereafter filed a Verified Answer (June 17, 2005), and a Notice of Appeal (dated July 5, 2005) with respect to the denial of the Dismissal Motion;

**WHEREAS**, the Appellate Division, First Department, reversed Judge Ramos's Decision, reported at 32 A.D.3d 294 (1st Dep't 2006);

**WHEREAS**, on or about September 26, 2006, Jericho substituted Goebel as counsel for Jericho and replaced him with the law firm of Herzfeld & Rubin;

**WHEREAS**, thereafter, in February 2007, Jericho commenced a new action against Midtown in the Supreme Court of the State and County of New York, Case Index No. 600866/07 (the Original Case together with this case are hereinafter sometimes referred collectively to as the "Case");

**WHEREAS**, Jericho thereafter retained over a period of approximately 6 1/2 years, various law firms to obtain a favorable determination of its rights under the Contract of Sale;

**WHEREAS**, in subsequent decisions, the First Department ruled in favor of Midtown with respect to such disputes and ultimately so did the Lower Court, on September 16, 2008, with respect to Case Index No. 600866/07;

**WHEREAS**, Pfeiffer and Jericho desire to reverse the first Decision in the Case, either by Motions to Vacate and/or new Complaints filed as to the subject matter of the Case and/or any other applicable judicial procedure or non-judicial procedure, including settlement of the Case;

**WHEREAS**, Goebel served as counsel for Jericho and Pfeiffer from 2004 to on or about September 26, 2006 pursuant to a contingency fee arrangement;

**WHEREAS**, the parties desire to enter into a new Agreement satisfactory to each party as set forth herein;

**WHEREAS**, by the parties signing the new Agreement all prior agreements and claims for any outstanding bills or liens by Goebel are hereby waived;

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows.

I.      **10% FOR GOEBEL'S SERVICES**.

A.      If Goebel submits to Jericho one or more "New Documents" (as defined herein), to support a legal theory of fraud, but none of such New Documents become a "Qualifying Document" (as defined herein), Goebel shall nevertheless be entitled to receive 10% of all judgments or settlements in favor of Jericho on the date when there shall be entry of one or more judgments in favor of Jericho and/or settlements in the Case or any related case at any time in the future; the 10% amount shall be due and payable notwithstanding that Goebel shall not be the attorney in any future judicial proceedings involving the Contract of Sale and the Property and shall have no obligation to render any further services, legal or otherwise whatsoever, in order to be entitled to payment of said 10% amount.

B.      Notwithstanding anything herein to the contrary, such 10% amount shall not be subject to reduction, set-off or offset, for any reason whatsoever, including, but not limited to, issues relating to or arising out of Goebel's prior services in the Original Case, whether or not resulting from facts not now known to Jericho and/or Pfeiffer. Without limiting the generality of the foregoing, Jericho and Pfeiffer irrevocably waive the right to contest such 10% amount.

C.      Any submission by Goebel must be made within two business days after the full signing and delivery of this Agreement. Any submission thereafter of a New Document will have no value no matter how good a document it is. The Cut Off date for Goebel to submit a New Document so as to be entitled to receive the amounts hereunder is two business days after the full signing and delivery of this Agreement.

2

AGREEMENT

II.    **TWENTY FIVE - PERCENT COMPENSATION**.

A.    Goebel shall be entitled to a payment of 25% (instead of 10%) of all judgments or settlements as set forth herein which shall be due and payable to Goebel in the event Goebel submits to Jericho any New Documents (as defined below), one or more of which substantiates or supports the allegations that Midtown committed fraud, and is a factor in the rendering of a favorable decision in the Case or other related litigation or a settlement thereof (here, a "Qualifying Document"). Jericho and Pfeiffer expressly agree that they shall not attempt to circumvent their obligations hereunder, including with respect to the payment of the aforesaid 25%, by substituting documents that are similar in content to the New Documents submitted by Goebel to Jericho hereunder.

B.    The term "Documents" shall mean any kind of printed, written, graphic, photographic, magnetic, internet, or electronic matter, however printed, produced, or reproduced, coded or stored, of any kind or description, whether sent or received or not, including documents or instruments, and all originals, copies, reproductions, facsimiles, drafts and both sides thereof, including, without limitation: papers, books, letters, photographs, correspondence, electronic mail, reports, affidavits, sketches, blueprints, opinions, contracts, newspaper stories, articles, computer printouts, microfilm, microfiches, any material underlying, supporting, or used in the preparation of any such documents. "Documents" also means copies or reproductions of any of these items on which notations have been made that do not appear on the original.

C.    The term "New Documents" shall mean and include any particular Documents hereafter submitted by Goebel to Jericho which were never produced by Goebel on behalf of Jericho by Midtown or its counsel or by the non-parties subpoenaed by Jericho or Midtown in the Original Case. It shall be presumed that each and every Document submitted hereafter by Goebel to Jericho shall be a New Document unless Jericho can prove otherwise.

D.    Goebel provides no assurances that he will be able to submit a Qualifying Document. Goebel will provide to Jericho New Documents within two business days from when the Agreement will have been fully signed and delivered by both parties. If Goebel does not provide any New Documents within two business days from when this Agreement has been fully signed and delivered by both parties, then Goebel shall not be entitled to the 25% amount herein.

E.    Notwithstanding anything herein to the contrary, in the event of a Qualifying Document (as described above), such 25% compensation is absolutely nondiscretionary and shall be due and payable to Goebel as of the date on which the favorable outcome or settlement for the Case occurs, as provided for in Section IIA, above.

F.    Notwithstanding anything herein to the contrary, such 25% amount shall not be subject to reduction, set-off, or offset, for any reason whatsoever, including, but not limited to, issues relating to or arising out of Goebel's prior services in the Original Case, whether or not resulting from facts not now known to Jericho and/or Pfeiffer. Without limiting the generality of the foregoing, Jericho and Pfeiffer irrevocably waive the right to contest such 25% amount.

G.    At no point shall Goebel function as counsel to Pfeiffer and/or Jericho in the Case and Goebel shall have no responsibility or obligation whatsoever to prepare or review litigation papers, make Court or administrative appearances, or perform any litigation work in the Case.

3

H.    Any submission by Goebel must be made within two business days after the full signing and delivery of this Agreement. Any submission thereafter of a New Document or any Document will have no worth no matter how valuable a document it is. The Cut Off date for Goebel to submit a New Document so as to be entitled to receive the amounts hereunder is two business days from the full signing and delivery of this Agreement.

### III.    CALCULATION OF COMPENSATION AND PAYMENT TERMS.

A.    Calculation of Compensation.  The calculation of Goebel's compensation shall be determined by multiplying the net cash and/or the net non-cash amount of value, as the case may be, by the applicable percentage (10% or 25%).  The term "net cash" means the cash amount of any judgment and/or settlement in favor of Jericho after subtracting all reasonable third party's expenses and fees paid or owed in connection with the Case by Pfeiffer and Jericho with respect to the period of time from 2004 through the date on which the calculation of Goebel's compensation is to be determined (such third-party expenses and fees shall not exceed $1.5 million). The term "net non-cash amount of value" shall mean the fair market value of any non-cash, including the Property and/or the Contract of Sale after subtracting all reasonable third party's expenses paid in connection with the Case by Pfeiffer and Jericho with respect to the period of time from 2004 through the date on which the calculation of Goebel's compensation is to be determined (such third party expenses and fees shall not exceed $1.5 million).

B.    Payment.  Goebel's compensation shall be payable to Goebel by Jericho on the day of the payment of settlement amounts, awards, or judgments as and when realized by Jericho, Pfeiffer (and/or their affiliates).  Without limiting the generality of the foregoing, in the event that Jericho's purported cancellation of the Contract of Sale is rescinded or the Contract of Sale is otherwise reinstated and Jericho is able to acquire the Property at $28 million or at some other amount less than fair market value, the difference between the fair market value and the lesser purchase price shall be subject to the calculation of Goebel's compensation.  Similarly, in the event that Jericho were to "flip" the Contract of Sale, the excess consideration would be used in calculating Goebel's compensation.  Alternatively, in the event Jericho or its affiliates receive consideration in exchange for settling the Case, such consideration shall be used to determine the compensation to Goebel hereunder. Under no circumstances shall Goebel be required to make any expenditure or contribution (capital or otherwise) in order to receive payment of his compensation that may be due and payable hereunder.

### IV.    FUTURE ATTORNEYS; LEGAL EXPENSE.

A.    By mutual agreement, Goebel will *not* be the attorney for Pfeiffer or Jericho in this litigation.  Goebel's involvement shall be limited to the submission of the New Documents in accordance with the timeframe set forth herein.

B.    Jericho and Pfeiffer shall have the sole responsibility for payment of all legal expenses for all subsequent litigation in the Case ("Other Legal Expenses").  If such Other Legal Expenses are payable based on a contingency fee arrangement, such Other Legal Expenses shall not exceed fifty percent (50%).  In addition, Jericho shall have the right if it cannot find a contingency attorney to grant up to a fifty percent (50%) contingency interest to a party who funds and/or commits to fund in writing up to $1 million to pay for attorneys' fees.

C.    Jericho shall have the sole right to select and hire counsel for the future litigation of this Case.

4

V.     Release. Jericho and Pfeiffer and each of their affiliates, successors, assigns, partners, members, attorneys, agents, and representatives (collectively referred to as the "Jericho Parties") hereby unconditionally release, acquit and forever discharge Goebel and his successors, assigns, attorneys, agents, and representatives (collectively referred to herein as the "Goebel Parties"), from any and all possible action and actions; cause and causes of action; suits; accounts; covenants; contracts; controversies; agreements; promises; damages; rights; duties; liens (legal or equitable); rights and remedies; rights of contribution and/or reimbursement; claims; obligations; allegations; demands; losses; costs; expenses; and liabilities, whatsoever and of any kind or nature by reason of any matter or cause whatsoever from the beginning of time to the date of their execution of this Agreement that they have or may have against Goebel Parties any and all of which have accrued in whole or in part or ever may accrue in whole or in part against Goebel Parties based upon facts or conduct occurring prior to the date of this Agreement, whether known or unknown, and the Jericho Parties shall be enjoined from asserting, bringing, assisting, participating in or furthering in any manner any action or proceeding based upon the matters released herein; provided, however, the release set forth herein shall not include, affect or release any obligation of any party created by this Agreement.

VI.     Cooperation. Upon reasonable request by Jericho and Pfeiffer from time to time Goebel shall reasonably cooperate to the relevant issues pertaining to the subject matter hereof. Such reasonable cooperation shall be subject on Jericho and Pfeiffer promptly reimbursing Goebel for all third-party costs and expenses incurred therewith, and shall be limited to requests for information, documents, and affirmations of Goebel that are within the knowledge, custody, possession, and/or reasonable control of Goebel.

VII.     **REMEDIES**.
A.     Attorneys' Fees. In the event that litigation shall arise out of this Agreement between the parties, the prevailing party shall be entitled to seek to recover reasonable attorneys' fee and expenses from the non-prevailing parties.
B.     Joint and Several Liability. The obligations and liabilities of Pfeiffer and Jericho under this Agreement shall be joint and several.
C.     Injunctive Relief. In the event of any breach of this Agreement by any party hereto, the other parties shall be entitled to seek injunctive relief in any applicable Court having jurisdiction.
D.     Interest. In the event any amount is due and payable and remains unpaid for a period of 5 days, such unpaid amount shall bear interest at the lesser of the highest rate permitted by law or 10% per annum. The provisions herein regarding interest are not intended to extend the due date for such unpaid amount.
E.     Waiver of Jury Trial. To the maximum extent permitted by law, each party waives any right to a jury trial with respect to any dispute arising out of this Agreement.
F.     Trust. In the event that Pfeiffer and/or Jericho shall receive any cash or non-cash consideration any portion of which shall be payable hereunder to Goebel, Pfeiffer and/or Jericho as the case may be, shall receive and hold such consideration in trust for the benefit of Goebel and shall forthwith cause such consideration to be assigned and delivered to Goebel.

VIII.     **REPRESENTATIONS AND WARRANTIES**. Pfeiffer and Jericho hereby represent and warrant that:

5

AGREEMENT

A.    they have full power and authority to execute and deliver, and perform their obligations under this Agreement;

B.    Jericho has not pledged, hypothecated, or otherwise encumbered its interest in the subject litigation and the Contract of Sale;

C.    neither Pfeiffer nor Jericho is the subject of any state or federal bankruptcy proceeding; and

D.    neither Pfeiffer nor Jericho has relied on any representation or warranty, whether oral or written, in entering into this Agreement, except as expressly stated herein.

IX.    **MISCELLANEOUS**.

A.    Notices and all other communications shall be in writing, mailed and addressed as follows: (a) If to Samuel Pfeiffer: c/o Jericho Group, Ltd., 519 Flushing Ave., Brooklyn, NY 11205; if to Jericho Group, Ltd.: 519 Flushing Ave., Brooklyn, NY 11205; and if to Robert B. Goebel: 14 Walworth Ave., Scarsdale, NY 10583, and sent by U.S. Certified Mail, Return Receipt Requested, or by overnight nationally recognized courier service;

B.    Applicable Law. This Agreement is entered into under, and shall be governed for all purposes by, New York State law.

C.    No Waiver. No failure by either party hereto at any time to give notice of any breach by the other party of or to require compliance with any condition or provision of the Agreement shall be deemed a waiver of similar or dissimilar provisions or conditions at the same or at any prior or subsequent time.

D.    Severability. It is the parties' desire and intent that the terms of this Agreement shall be enforceable to the fullest extent permitted by law. If any term or the application thereof to any person or circumstances shall, to any extent, be construed as invalid or unenforceable in whole or in part, that term shall be construed in a manner to permit enforceability to the fullest extent permitted by law, and the Agreement's remaining provisions- the application thereof to any person or circumstances other than those to which they have been held invalid or unenforceable shall remain in full force and effect. It is the desire and intent of the parties that if any portion of the Agreement is breached, the Agreement's remainder shall remain in effect as written and enforceable to the fullest extent permitted by law.

E.    Counterparts. The Agreement will be executed in one or more counterparts, each to be deemed an original and all of which together will constitute one and the same Agreement.

F.    Entire Agreement; Modification. This Agreement constitutes the entire Agreement of the parties. It supersedes any and all prior written or oral agreements between the parties, and contains all of the covenants, promises, representations, and agreements between the parties. Any modification of this Agreement will be effective only if in writing and signed by all parties hereto.

G.    Signature/Notice. This is a very important legal document. Each party has carefully reviewed and understands its terms and effect. By signing this Agreement, each party represents that it has consulted with an attorney prior to signing and that such party understands the terms and provisions of this Agreement.

H.    Binding Effect. The provisions of this Agreement shall be binding upon the parties hereto and their permitted successors, assigns, heirs, and legal representatives and effective as of the date this Agreement has been signed by each of the parties hereto and the law firm for Pfeiffer and Jericho. Without Goebel's prior written consent, neither Jericho nor Pfeiffer shall have the right to bind Goebel to any liability or obligation. Neither Jericho nor

6

Pfeiffer shall have the right to assign their obligations under this Agreement, and any purported Assignment shall be null and void.

I.      Representation by Counsel. Pfeiffer and Jericho acknowledge and agree that they have been represented in the negotiation of this Agreement by counsel of their own choosing, that they have fully read this Agreement, that this Agreement has been fully explained to them by their counsel, and that they are fully aware of its contents and its legal effect.

J.      No Duress. Each party hereto acknowledges and represents that this Agreement is entered into without force or duress and of its respective free will, and that it has not been induced to enter into this Agreement by any statement, act or representation of any kind, except as expressly set forth herein.

K.      The parties hereto agree that the terms and language of this Agreement were the result of negotiations between the parties and, as a result, there shall be no presumption that any ambiguities in this Agreement shall be resolved against any party. Any controversy over the construction of this Agreement shall be decided neutrally, in light of its conciliatory purposes, and without regard to events of authorship or negotiation.

**IN WITNESS WHEREOF**, the undersigned parties have executed this Agreement as of the dates set forth below.

Witness: _Adrienne Shirley_
Name:    Adrienne Shirley
Address: 68 E. Hartsdale Ave., 4E
         Hartsdale, NY 10530

_Robert B. Goebel_
Robert B. Goebel
May 16th, 2013

Witness: _C DES_
Name:    _CP_
Address: _819 FLUSING Av_

_Samuel Pfeiffer_
Samuel Pfeiffer
May 17th, 2013

JERICHO GROUP, Ltd.

Witness: _C DOS_
Name:    _CP_
Address: _819 FLUSING AVC_

By _Samuel Pfeiffer_
Name: _____
Title: _____
May 17th, 2013

7

**AGREEMENT**