## MICHAEL M. FREEMAN

Attorney at Law
30 East 33rd Street, 4th Floor
New York, New York 10016

(212)889-3900
Fax No (212)889-3197
michaelfreeman525@gmail.com

May 28, 2013

Robert B. Goebel, Esq.
14 Walworth Avenue,
Scarsdale, New York, 10583

Re:    Jericho v. Midtown
Samuel Pfeiffer & Jericho Group, Ltd
v. Midtown Investment L.P.
Index No. 113274/04

Jericho Group Ltd. V. Midtown Investment
L.P. et al Index No. 600566/07

Dear Mr. Goebel:

This office represents Jericho Group Ltd. in the above referenced matters.

It is my understanding, based upon conversations that I had with Mr. Samuel Pfeiffer, that you were prior Counsel to Samuel Pfeiffer and the Jericho Group, Ltd. in regard to the above referenced law suits. As you are aware, the underlying basis for these legal action was and continues to be a dispute over a Contract of Sale for property wherein Jericho Group, Ltd. is the purchaser and Midtown the seller.

In conversations had with Mr. Pfeiffer, I am informed that over the past few weeks you made representations to Mr. Pfeiffer that you had certain "explosive" documents which would lead to an undisputable victory for the plaintiff in these matters. Mr. Pfeiffer is has now received these "explosive documents" as you referred to them, has had the opportunity to review them and finds that they are of no value.

Accordingly, I am requesting that Mr. Pfeiffer, you and I have an immediate meeting to discuss, among other things, as set forth below, the nature and content of the "explosive documents" you forwarded to him, either at his office in Brooklyn or at my office in Manhattan.

Additionally, we would like to discuss your recent recommendations to Samuel Pfeiffer that Jericho Group, Ltd. should immediately file motions to vacate prior rulings and judgments by the court or file a new complaint for specific performance and to seek damages based upon newly discovered evidence.

Mr. Pfeiffer informs me that he has requested that you send the contents of the entire files you maintained as his and Jericho Group, Ltd.'s attorney in the above referenced matters since August of 2012. Since I am now Jericho Group, Ltd's counsel, I am respectfully demanding that you immediately turn over to me all documents contained in the files in the above referenced matters while representing Mr. Pfeiffer and Jericho, including but not limited to the documents as set forth in the paragraphs below; and specifically, any and all documents, common to discovery in either one or both of the legal matters referred to above.

I hereby respectfully demand that you immediately provide me with copies of the entire files referenced above including but not limited to all "Documents" as set forth below. The meeting we are requesting along with the requested entirety of Jericho Group, Ltd. and Mr. Pfeiffer's files will permit me to assess along with Mr. Pfeiffer Jericho Group, Ltd's legal position in order to determine whether to file motions with Justice Ramos or with the Appellate Division to vacate the Judgment and Ruling of the Appellate Division of 2006 and possibly of 2008 and 2009; or whether to file a new Complaint against Midtown and others.

The Documents I am requesting are defined below and by definition the term 'Documents" shall include, but not be limited to, all printed, written, graphic, photo-graphic, magnetic, internet, or electronic material, whether printed, produced, reproduced, coded, stored, and whether sent to you or received by you or any other party which are contained in files maintained by you and relate to the above referenced matters (index numbers).

The "Documents" requested should include (both sides) of all of the aforementioned documents or instruments, as well as both sides of all originals, copies, reproductions, facsimiles and drafts. The request for "Documents" shall further include all papers, books, letters, photographs, correspondence, electronic mail, reports, affidavits, sketches, blueprints, opinions, contracts, newspaper articles, magazine articles, computer printouts, microfilm, microfiches, as well as any and all material underlying, supporting, or used in the preparation of any of the "Documents" requested above.

In addition, the request for "Documents" shall also include any and all copies or reproductions of any of the above referenced "Documents" or material which contain notations which do not appear on the original "Documents", as well as any and all notes, memoranda, tape recordings and/or additional contents of files maintained by you relating to the above referenced matter.

I am requesting copies of all Documents that you received from Midtown's broker Benjamin Shafran and Capin Associates in February 2006 and a copy of the transcript of Benjamin Shafran's deposition conducted on or about February 27, 2006, including copies of all the exhibits that were presented to Shafran at his deposition, whether marked or not.

Additionally, please advise me if you provided any of the above referenced documents to Midtown? If so,when and how? Please indicate which documents were provided to them.

Did you provide any of the above referenced documents to Herzfeld & Rubin? If so, when and how? Please indicate which documents were provided to them.

I am also requesting copies of all "Documents" which were sent to or from you, and/or to and from the Jericho Group, Ltd., Samuel Pfeiffer, and/or Sam Pfeiffer, Shulem Pfeiffer or representatives of the above named parties and to and from Midtown, their agents, servants, representatives and/or employees, the Court, to and from Edward Imperatore, Harwood Lloyds, Maurice Stone, Joseph Kennedy, Brown Harris Stevens, Elaine Osborn Emmet, Capin Associates, Ben Shafran, Amtrak, NYDEC, Todd Geremia, Fredrick Sherman, Jones Day, Meyer Chetrit, Chetrit Group, Witkoff, Szegda & Gerbing, Michael Szegda, their agents, servants, representatives and/or employees, to and from Herzfeld & Rubin, their agents, servants, representatives and/or employees, and to and from Joseph Haspel, his agents, servants, representatives and/or employees, from the inception of the above referenced matters to the present date as relates to the above referenced index no's.

I am informed by Mr. Pfeiffer that you indicated that certain documents under your care and control have been destroyed. If so, please provide me with a list and description of all such documents and when they were destroyed.

I need to impress upon you that "time is of the essence" since, as you are well aware, the property is being aggressively marketed and any delay can lead to irrevocable harm to my client. I must impress upon you the need to meet this week, as well to provide all documents requested herein immediately.

Please advise me immediately as to when you would be available for a meeting this week.

Very truly yours,

Michael M. Freeman

cc: Jericho Group
    Samuel Pfeiffer



**ALLYN & FORTUNA LLP**

ATTORNEYS AT LAW

NEW YORK
1010 Avenue of the Americas
New York, New York 10018
Telephone (212) 213-8844
Facsimile (212) 213-3318

NEW JERSEY
75 Main Street, Suite 101
Millburn, New Jersey 07041
Telephone (973) 379-0038
Facsimile (973) 379-0048

WWW.ALLYNFORTUNA.COM

1/9/13

Robert B. Goebel Esq.
14 Walworth Avenue
Scarsdale, NY 10583

            Re:    Jericho Group v. Midtown
                    Sam Pfiefer

Dear Mr. Goebel:

My firm represents Jericho Group and Sam Pfiefer with respect to their claims pertaining to contract of sale for real property dated June 18, 2002 in the above-referred matter. I am writing to obtain copies of documents that you have as a result of representing Jericho Group and Sam Pfiefer. Reportedly, Sam Pfiefer contacted you many times. At this point, time is of the essence and we need items relating to Ben Shafran immediately.

Please provide a copy of any subpoena sent, all response documents to said subpoena copy of the deposition transcript, any document requests, any documents received or exchanged and any correspondence to, or from the following people and entities:

1. Ben Shafran;

2. Capin Associates;

3. Brown Harris Stevens;

4. Elain Osborn (except the deposition transcript);

5. Midtown;

6. Edward Imperatore (except the deposition transcript);

8. Amtrak (including responses to Freedom of Information Requests);

9. Amtrak Officers including John Youngdohl, Mark Brenders, and Sheila Mae Sopper;

10. Michael Szegda (including all correspondence and documents exchanged);

11. Hardwood Loyd, LLC;

12. A list of all documents provided to Hertzfeld and Rubin.


For the purpose of this letter documents are any writing, recording, whatever form, including but not limited to letters, emails, facsimile transmissions, recorded sound, film and pictures. Correspondence shall mean any communication that has been recorded either by writing or some other means.


Thank You.


Sincerely,

Nicholas Fortuna

Cc: Sam Pfiefer
    Jericho Group



Jericho Group <jerichogroup@gmail.com>

## Szegda

**jerichogroup@gmail.com** <jerichogroup@gmail.com>                    Fri, Jul 9, 2010 at 1:17 PM
Reply-To: jerichogroup@gmail.com
To: Bob Goebel <r.b.goebel@att.net>

Dear Mr. Goebel:

Did you ever represent Michael Szegda?

Did you ever represent any entity that Michael Szegda was an officer, member or partner?

Sent on the Sprint® Now Network from my BlackBerry®

Samuel Pfeiffer
268 Wallabout St.
Brooklyn, NY 11206
718-564-4733
jericho4200@gmail.com

April 18, 2016

Hon. Vera M. Scanlon
United States Magistrate Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  Jericho Group Ltd. v Mid-Town Development, LP, 14CV2329(DLI)(VMS)

Dear Magistrate Scanlon:

I, Samuel Pfeiffer, as a pro se litigant and a principle of Jericho Group Ltd ("Jericho")
Declare under penalty of perjury and submit this Letter in Opposition and as Cross-Motion to
Mr. Goebel's Letter-Motion to enforce the Agreement that was entered on the record on March
18, 2016 before your Honor.

I met Mr. Goebel in the Court on March 18, 2016, before the scheduled Status
Conference. I discussed with him the Inquest Hearing, ordered by the Hon. Justice Irizarry, on
August 6, 2015. [Docket 150; p. 13-14]. I asked Mr. Goebel why he did not comply until now
with the Cooperation clause in the May 17, 2013 Agreement. [Exhibit A, Paragraph VI]. I
specifically reminded Mr. Goebel of the language in the Cooperation clause:

> **"Goebel shall reasonably cooperate to the relevant issues pertaining
> to the subject matter hereof . . . [Goebel shall provide] information,
> documents and affirmations of Goebel that are within the knowledge,
> custody, possession and/or reasonable control of Goebel."**

Mr. Goebel told me that he will comply with the Cooperation clause. I asked him to set
up a meeting for early next week either in his office in Scarsdale, New York or in Mrs.
Solomon's office in Manhattan, New York. He said he will contact me over the weekend and set
up such meeting. Based on his promise, I proposed that instead of proceeding with the Status
Conference and deal with production of the "relevant Documents," the underlying documents
needed for discovery, examination at the Inquest Hearing and a need for an expert witness, all of
which were ordered by this Court in an Order dated September 11, 2015, we should instead sit
down and work out a settlement agreement between ourselves regarding the amount of the fees.

Mr. Goebel asked me what settlement amount I would like to offer. I told him $50,000.
Mr. Goebel said he needs more. After some back and forth I finally offered $175,000. Mr.
Goebel said that he would like to get a guaranty from my former partners in the Midtown
Contract: the multi-Billion dollar real estate company called the "Chetrit Group", as we as, from
the former chairman and director of Jericho Group Ltd, Mendel Brach, from my son Shulem

1

Pfeiffer, former principle of Jericho, and from my wife Chana Pfeiffer. I responded that the "Chetrit Group" and Mendel Brach will not sign a guaranty, and that I will try Shulem Pfeiffer and my wife Chana Pfeiffer. Mr. Goebel responded that Chana Pfeiffer is a must. If she will not agree and will not sign a guaranty then there will be no agreement. As for Shulem Pfeiffer, he said he will decide how he would like to proceed if Shulem Pfeiffer refuses to sign as a guarantor. As for "Chetrit Group" and Mendel Brach, Mr. Goebel said he would be ready to proceed even without their guarantees. I told this information to Jericho Group's attorney, Igor Meystelman ("Mr. Meystelman") and told him to negotiate with Lisa Solomon ("Mrs. Solomon") the attorney and wife of Mr. Goebel, the outstanding issue: the amount of attorney's fees to Mr. Goebel based on the Memorandum and Order of the Hon. Justice Irizarry dated August 6, 2015. [Docket 150].

During the negotiations, Mr. Meystelman told me that Mrs. Solomon requested that I should agree to the following terms: (1) that the amount of the fees should be $200,000 or a little more and the first payment should be $50,000; (2) that I should sign a confession of judgment and note on behalf of Jericho and myself; (3) that the Chetrit Group, Mendel Brach, Shulem Pfeiffer and Chana Pfeiffer should all sign a guarantee; and (4) that I should retract some of the statements that I made against Mr. Goebel in the Federal and State Cases.

I responded as follows: (1) that I will agree to the amount of $200,000 but the first payment must be 30 days after final written agreement, etc, because I need to raise the money and could only be $35,000 for the first payment; (2) that I will be ready to sign a confession of judgment and note on behalf of Jericho and myself, with the condition that I will first settle terms and condition of the confession of judgment and note and work out the rights of Mr. Goebel under the confession of judgment and note; (3) that the Chetrit Group and Mendel Brach, will not sign the guaranty, and that I will try Shulem Pfeiffer and I hope I will be able to persuade Chana Pfeiffer and her children sign a guaranty; (4) that they will have to spell out first in a letter what statements I should retract and to show in writing why those statements are not true and if they will show them then I will retract those statements but in no way will I give up any of Jericho's and my rights to pursue appeals or motions in the federal and State courts or new claims or complaints against Mr. Goebel, even if I retract some statements relating to Mr. Goebel.

After some further negotiations, Mr. Meystelman told me that Mrs. Solomon agreed to the following terms: (1) that the amount should be $200,000 and the first payment should be about 30 days (either on the 1st or 15th of the month) and $35,000 as the first installment payment; (2) that I must sign a confession of judgment and note but only after we will first work out the terms and condition of the confession of judgment and note; (3) that the Chetrit Group and Mendel Brach, will not have to sign the guaranty, that I will try Shulem Pfeiffer and if Shulem will not agree then Mr. Goebel will have the option to proceed with the agreement or proceed with the inquest. However, if Chana Pfeiffer will not agree to sign the guaranty then the agreement will automatically be null and void; and (4) that they will spell out first in a letter what statements I should retract and to show in writing why those statements are not true and if they will show them then I will retract those statements but in no way will I give up any of Jericho's and my rights to pursue appeals or motions in the federal and State courts or new claims or complaints against Mr. Goebel. But if I refuse to retract those statements, then Mr. Goebel will have the option to proceed with the agreement or proceed with the inquest.

2

However, over the weekend Mr. Goebel did not call to set up any meeting relating to the Cooperation clause of the May 17, 2013 Agreement. I then realized that it was a fraud, to falsely induce Jericho and me to enter into an agreement relating to the amount of the fees, and not have to produce the court ordered "relevant documents," the backup documents, and not have deposition and an expert witness that would prove that the amount should not be as they request $349,000 but much less than even $50,000. The same as Mr. Goebel had falsely Induced Jericho and me, before May 17, 2013 and on May 17, 2013 to enter into the May 17, 2013 Agreement and to sign the "Release Clause" in paragraph VI: Release, in page 5, because he will comply with the "Cooperation Clause" in paragraph VI Cooperation, in page 5. In order to help Jericho and me, as stated in page 2, "WHEREAS, Pfeiffer and Jericho desire to reverse the first Decision in the Case, either by Motions to Vacate and/or new Complaints filed as to the subject matter of the Case and/or any other applicable judicial procedure or non-judicial procedure, including settlement of the Case."

On March 22, 2016 and thereafter, Mr. Meystelman has requested from Mrs. Solomon to spell out what statements I should retract and to spell out what is not true in those statements. Mrs. Solomon refused to spell out what is not true in those statements but instead she notified Mr. Meystelman that Mr. Goebel has waived the request for Retraction clause.

Mrs. Solomon sent drafts of proposed agreement between the parties that did not reflect what was agreed between the parties on March 18, 2016. There was back and forth between the parties. At the conference on April 5, 2016, the Court graciously granted that the parties meet at that afternoon and try to resolve their differences. At that meeting Mr. Goebel and Mrs. Solomon clarified what they would like to insert in the Agreement. Namely, they wanted to include the language that even if Jericho Group and Samuel Pfeiffer would be successful in motions, appeals or new claims to reverse any decision, orders or rulings of the Federal or State Courts, that they be liable to Jericho or to me, that any money that Jericho or I will pay them for fees under this agreement they will not have to repay to us. In other words, the settlement funds would be non-refundable, even if at a later time Jericho succeeds on the merits in future litigation. Based on that clarification we agreed to meet on Thursday, April 7, 2016 to try to resolve that issue. There was never any discussion until April 7, 2016, that Jericho or Samuel Pfeiffer could not appeal or motion the Court relating to any prior order of the Federal or State Court or new claims including relating to the fees.

At the meeting of April 7, 2016, the parties decided to forgo the March 18, 2016 agreement and make a different agreement that would encompass some more protections and benefits for both parties. After seven (7) hours of negotiations the parties reached a new agreement. It was agreed that Mr. Meystelman will draft a new Agreement based on what was agreed on April 7, 2016. But during a lengthy conference call on Friday April 8, 2016, the parties discussed a global agreement, and it was agreed that Solomon will draft that new Agreement and send it to Mr. Meystelman and Samuel Pfeiffer to review over the weekend. Mrs. Solomon did email the revised Agreement to the parties on April 10, 2016. However, she added new issues that were never agreed nor were ever discussed by the parties. Mr. Meystelman wrote to Mrs. Solomon that we are ready to proceed with the Agreement we reached on April 7 and 8 but not with what Mrs. Solomon added over the weekend.

3

As for Chana Pfeiffer ("CP"), she refused to sign as a guarantor, and we notified Mrs. Solomon. As mentioned above they insisted on March 18 Agreement: that if Chana Pfeiffer will not agree over the weekend or next week to sign the guarantee then the Agreement is null and void. To prove this point is evident, because otherwise they would have requested that Chana Pfeiffer and her Attorney be present at the Hearing on March 18, 2016. They knew that I could not bind or force my wife to sign the guaranty. In addition, Mr. Meystelman was not CP's Attorney and never represented CP and never spoke to CP. Mr. Meystelman wrote to the Court in Notice of Appearance, that he only represents Jericho Group Ltd and only re the Inquest. I also would like to bring to the Court's attention that Mr. Goebel did not serve Chana Pfeiffer with the Letter-Motion in which she would be legally bound as a Guarantor without giving her own consent to such obligation. [Docket 240]

Regarding the question whether they want to proceed with the Agreement even without CP's guarantee, they must decide which agreement they want, the one that was agreed on March 18, 2016, the one agreed on April 7, 2016, the one agreed on April 8, 2016 or the one they sent to Mr. Meystelman on April 10, 2016.

As for the terms agreed to on March 18, 2016, it is clear it was only an agreement to the amount of the fees, in lieu of Inquest, that was the only item that was "outstanding" from the Hon. Justice Irizarry Order of August 6, 2015. At the conference on March 18, 2016 your Honor clarified on the record that this agreement "will be a stipulation of dismissal as to these outstanding attorney's fee issues. [March 18 Transcript; 16:23 – 17:2].

As for confession of Judgment and Note, the parties should first negotiate the terms and condition of terms of confession of Judgment and the Note. Also, regarding the question when the first payment should take place, it should be at-least Thirty days from the date an Order is signed and entered.

Wherefore, I respectfully request that the Court order that Mr. Gebel first comply with the Cooperation clause in the May 17, 2013 Agreement. [Exhibit A, Paragraph VI], which he was previously obligated to comply with since May 17, 2013 and that he promised again to comply with on March 18, 2016; deny proposed Settlement Judgment of Mr. Goebel and sign the proposed Settlement Order filed by Jericho Group Ltd. [Exhibit C].

Respectfully,

Samuel Pfeiffer

*Pro Se*

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
JERICHO GROUP LTD. and JERICHO CO.,

                                  *Plaintiffs,*

                *-against-*

MID-TOWN DEVELOPMENT LIMITED PARTNERSHIP,
MIDTOWN DEVELOPMENT, L.P., EDWARD G. IMPERA-TORE,
MAURICE L. STONE, EDWARD W. ROSS, ARTHUR
E. IMPERATORE, WR WEST SIDE ASSOCIATES, HADRIAN
PROPERTIES LTD., FANFARE INTERPRISE INC., ARCORP
PROPERTIES, JERRART VENTURE PROPERTIES, HAR-WOOD
LLOYD LLC, GEORGE BERGER, JEFFREY SHORE, PHILIPS
NIZER LLP, FREDRICK E. SHERMAN, TODD R. GEREMIA,
JONES DAY, BROWN HARRIS STEVENS LLC, ELAINE OSBORN
EMMET, MICHAEL A. SZEGDA, BAY-STONE EQUITIES INC.,
ROBERT B. GOEBEL, RICHARD MARASSE, LISA SOLOMON,
JOHN DOES 1-10 AND XYZ CORPORATIONS 1-10,

                                  *Defendants.*
-------------------------------------------------------------------------------X

Civil Action No.:
1:14-cv-02329 DLI-VMS

## MEMORANDUM OF LAW OF DEFENDANT ROBERT B. GOEBEL
## IN SUPPORT OF MOTION TO DISMISS COMPLAINT AND FOR RELATED RELIEF

LAW OFFICES OF LISA M. SOLOMON
Lisa M. Solomon, Esq.
305 Madison Avenue
Suite 4700
New York, New York 10165
(212) 471-0067

*Counsel for Defendant Robert B. Goebel*

Solomon and Goebel), (iv) the Ninth Claim (Fraud on the Court against Solomon and Goebel),

(v) the Fifteenth Claim (Conversion against Solomon, Goebel and Szegda), (vi) the Seventeenth

Claim (Tortious Interference with Contract against the RICO Defendants), (vii) Nineteenth

Claim (Violation of New Judiciary Law 487 against the Attorney Defendants), and (viii) the

Twentieth Claim (Civil Action under 42 U.S.C. 1983 against the Attorney Defendants).

**D.   The Release Agreement:  The General Release**

Pursuant to an Agreement dated May 17, 2013 (the "Release Agreement;" Aff. Exh. "C,"

p. 5, Section V) by and among Goebel, Jericho Group and Pfeiffer, Jericho Group, Pfeiffer, and

each of their affiliates, successors, assigns, partners, members, attorneys, agents, and

representatives unconditionally released Goebel and his successors, assigns, partners, members,

attorneys, agents, and representatives, pursuant to broad general release provisions set forth

therein (the "General Release").

The General Release bars all claims and allegations of any kind or nature, whether known

or unknown, that may be made by the releasing parties against the released parties including

Goebel, pertaining to conduct or events relating to the period prior to the execution of the

Release Agreement (*see infra* 19-23, Aff. Exh. "C," Section V).  Accordingly, the subject

litigation must be dismissed with prejudice against Goebel.  In addition to the defense of the

General Release, other defenses are hereinafter set forth as a matter of law for the benefit of

Goebel.

As part of the consideration given by Goebel under the Release Agreement, he waived

his entitlement to be reimbursed for disbursements, costs, and expenses he incurred during the

First Action.

*action* (*see* Aff., Exh. "G") (after Pfeiffer had withdrawn an unauthorized amended Complaint in the action). (*see* Aff., Exh. "H").[3]

Simultaneously with their discontinuance of their most recent State Court action, Plaintiffs commenced this action with the filing of a 155-page Verified Complaint in the United States District Court, Eastern District of New York, dated April 10, 2014. Thereafter, Plaintiffs filed the subject Amended Verified Complaint dated November 14, 2014.

As a result of Plaintiffs' actions, and because pursuant to New York State CPLR §3217(c) the Notice of Withdrawal by Plaintiffs on April 10, 2014 is an adjudication on the merits as to Goebel, the Court should dismiss Goebel from this action.

## III.

## THE RELEASE CONTAINED IN THE RELEASE AGREEMENT BARS AND PRECLUDES, IN ALL RESPECTS, THE SUBJECT ACTION AGAINST GOEBEL.

To make a determination on a Motion to Dismiss courts have considered and reviewed settlement agreements and releases that are attached to a complaint, incorporated in the complaint by reference, and/or relied heavily upon by the plaintiff in its pleadings in the complaint. *Morefun Co. v. Mario Badescu Skin Care Inc.*, 2014 WL 2560608 (S.D.N.Y. June 6, 2014). Paragraphs 522 to 544 of the Complaint sets forth allegations leading up to the execution of the Release Agreement.

The Release Agreement (Aff., Exh."C") was extensively negotiated (*see* Compl. ¶ 542) by Jericho Group, Pfeiffer, their counsel, and Goebel over approximately six weeks and involved at least five drafts. In the Release Agreement, p.2, the parties unconditionally agreed that in

---

[3] An issue between Plaintiffs and Midtown in the last filed state court action (in 2013) arose in April 2014 when plaintiffs (the Plaintiffs here) sought to voluntarily discontinue the action. The issue concerned whether a motion to dismiss that had been filed by the Midtown defendants prior to plaintiffs having filed a notice of discontinuance precluded plaintiffs from discontinuing the action. By memo decision dated April 23, 2014, Judge Ramos found that Midtown's pending motion to dismiss did not preclude plaintiffs from filing a voluntary notice of discontinuance, which he found they had done. Both parties have appealed that decision.

signing the Agreement, Goebel waived all prior agreements and claims for outstanding bills or expenses owed to him.

In the Release Agreement (p. 5, Section V), Jericho Group , Pfeiffer, and each of their affiliates, successors, assigns, partners, members, attorneys, agents, and representatives (collectively referred to as the "Jericho Parties") hereby <u>unconditionally release, acquit, and forever discharge Goebel</u> and his successors, assigns, attorneys, agents, and representatives (collectively referred to as the "Goebel Parties"):

> <u>From any and all possible action and actions; cause and causes of action; suits;</u> accounts; covenants; contracts; controversies; agreements; promises; damages; rights; duties; liens (legal or equitable); <u>rights and remedies;</u> rights of contribution and/or reimbursement; claims; obligations; allegations; demands; losses; costs; expenses; and liabilities, <u>whatsoever and of any kind or nature</u> by reason of any matter or cause whatsoever from the beginning of time to the date of their execution of this Agreement that they have or may have against Goebel Parties any and <u>all of which have accrued in whole or in part or ever may accrue</u> in whole or in part against Goebel Parties <u>based upon facts or conduct</u> occurring prior to the date of this Agreement, <u>whether known or unknown</u>.  (¶V, p.5; emphasis added)

The Release Agreement's Paragraph IX(B) provides: "B.  <u>Applicable Law</u>. This Agreement is entered upon, and shall be governed, for all purposes, by New York State law." Because the Agreement contains a New York State choice-of-law provision, the general release and the Agreement must be interpreted pursuant to New York State law.

Under New York State law, a release is construed as a contract:  *See Tromp v. City of New York* at 51, *supra*.  When construing a contract, the New York State Court of Appeals applies the Rule that when parties set down an Agreement in a clear, complete document, their writing should be enforced according to its terms. *Vermont Teddy Bear Co. v. 538 Madison Realty Co.,* 1 N.Y.3d 470, 475, 807 N.E.2d 876, 775 N.Y.S.2d 785 (2004); *R/S Assocs. v. N.Y. Job. Dev. Auth.,* 98 N.Y.2d 29, 32, 771 N.E.2d 240, 744 N.Y.S.2d 358 (2002) ("We have long adhered to the 'sound rule in the construction of contracts, that…where the language is clear, unequivocal, and

unambiguous, the contract is to be interpreted by its language [citations omitted])'"; and "A contract is unambiguous when the contractual language has a definite and precise meaning about which there is no reasonable basis for a difference of opinion." *Keiler v. Harlequin Enters.*, 751 F.3d 64, 69, 2014 (2d Cir. 2014); *see Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 920 N.E.2d 359, 892 N.Y.S.2d 303 (2009).

Courts, applying New York State law, will enforce valid and clear releases, unambiguous on their face. *Nikci v. Quality Bldg. Servs.*, 995 F. Supp.2d 240 (S.D.N.Y. 2014).

The express subject general Release is unconditional and all-encompassing; it is also unambiguous, unequivocal, and precludes and it expressly bars the pending action against Goebel. "A written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms," *Alvarez v. Amicucci*, 82 A.D.3d 687, 918 N.Y.S.2d 144 (2d Dep't 2011), *appeal den.* 17 N.Y.3d 701, 952 N.E.2d 1086, 929 N.Y.S.2d 91 (2011); *also, Nikci* at 22, *supra*; *see also Steinfeld v. HIS Health Inc,, supra*; *Spanski Enters. v. Telewizja*, 2013 WL 81263 (S.D.N.Y. 2013); *Tromp, supra*.

There is a heavy presumption that a release is valid. *See ABA Consulting, LLC v. Liffey Van Lines, Inc.*, 67 A.D.3d 401, 403, 889 N.Y.S.2d 540, 542 (1st Dep't 2009). "[W]hen general language is used in the releasing document, the release is to be construed most strongly against the releasor." *Consorcio Prodipe v. Vinci*, 544 F.Supp.2d 178, 189 (S.D.N.Y. 2008).

Strong policy considerations favor the enforcement of settlement agreements. *Rocanova v. Equitable Life Assurance Society of the United States*, 83 N.Y.2d 603, 616, 634 N.E.2d 940, 612 N.Y.S.2d 339 (1994). The court in *Lincoln Trust v. Spaziano* (38 Misc.3d 1234(a), 969 N.Y.S.2d 804 (Sup.Ct., Onondaga Cty., 2013)) stated that the general rule is a release may not be treated lightly since "it is a jural act of high significance without which the settlement of disputes would

be rendered all but impossible. It should never be converted into a starting point for renewed litigation except under circumstances and under rules which would render any other result a grave injustice," *citing Calavano v. New York Health & Hosps. Corp.*, 246 AD2d 317, 667 N.Y.S.2d 351 (1st Dep't. 1998), *in turn citing Mangini v. McClurg*, 24 NY2d 556, 563, 249 N.E.2d 386, 390; 301 N.Y.S.2d 508, 518 (1969). *See also Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269; 952 N.E.2d 995, 929 N.Y.S.2d 3 (2011).

Based on the Release the Court should release Goebel in all respects as a defendant in the subject litigation, and his name should be deleted from the caption. *See Linden v. Moskowitz*, 294 A.D.2d 114, 743 N.Y.S.2d 65 (1st Dep't 2002); *Steinfeld,,supra* at 33 (the court held that the plaintiff in signing a general release agreed they would not then assert any type of claim against the defendant to the extent such claim arose from the defendant's conduct before the date of settlement); *see also WSP United States Corp.*, at *10-11,* .

The Release Agreement expressly <u>enjoins the Jericho Parties from "asserting, bringing, assisting, participating in or furthering in any manner any action or proceeding based upon the matters released herein</u>" (¶V, p. 5). By their asserting, bringing, assisting, and participating in or furthering in any manner this subject action, the Jericho Parties have breached the terms and conditions of the Release Agreement. The Court should order injunctive relief in favor of the Goebel Parties precluding the Jericho Parties from asserting, bringing, assisting, participating in or furthering in any manner any action or proceeding based on the Release provisions in the Release Agreement.

21

## XII.

## GOEBEL SHOULD BE AWARDED HIS ATTORNEY'S FEES IN ACCORDANCE WITH THE RELEASE AGREEMENT

The Release Agreement (¶VII(A) p. 5), provides: "Attorneys' Fees. In the event that litigation shall arise out of this Agreement between the parties, the prevailing party shall be entitled to seek to recover reasonable attorneys' fees and expenses from the non-prevailing parties." Goebel respectfully requests an award of his reasonable attorneys' fees, for the time and expense incurred required in defending the wild accusations made in this action and the other litigations described hereinabove. The time required has been enormous entailing attention to and preparation for responses to at least three complaints and or amended complaints over a span of 1 ½ years from the start. These complaints have been voluminous.

## XIII.

## CONCLUSION

For all of the foregoing reasons, Goebel respectfully requests that the Court dismiss the Complaint in its entirety with prejudice as against Goebel, grant an injunction against the "Jericho Parties" and any further actions by the Jericho Parties precluding the Jericho Parties from asserting, bringing, assisting, participating in or furthering in any manner action or proceeding in any federal or state court with respect to any claim released in the Release Agreement, grant reasonable attorneys' fees and expenses incurred in this matter pursuant to the

Release Agreement, and grant such other and further relief as the Court may deem just and

proper.

Dated: New York, New York
January 9, 2014

LAW OFFICES OF LISA M. SOLOMON
*Counsel for Defendant Robert B. Goebel*

By: _____

Lisa M. Solomon
One Grand Central Place
305 Madison Avenue, Suite 4700
New York, New York 10165
(212) 471-0067

Case 1:14-cv-02329-DLI-VMS   Document 261-9   Filed 11/15/16   Page 20 of 22 PageID
Case 1:14-cv-02329-DLI-VMS   Document 111   Filed 03/05/15   Page 3 of 36 PageID #: 4105
#1747#

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

JERICHO GROUP LTD. and JERICHO CO.,

           *Plaintiffs,*

      -*against*-

MID-TOWN DEVELOPMENT LIMITED PARTNERSHIP,
MIDTOWN DEVELOPMENT, L.P., EDWARD G. IMPERA-TORE,
MAURICE L. STONE, EDWARD W. ROSS, ARTHUR
E. IMPERATORE, WR WEST SIDE ASSOCIATES, HADRIAN
PROPERTIES LTD., FANFARE INTERPRISE INC., ARCORP
PROPERTIES, JERRART VENTURE PROPERTIES, HAR-WOOD
LLOYD LLC, GEORGE BERGER, JEFFREY SHORE, PHILIPS
NIZER LLP, FREDRICK E. SHERMAN, TODD R. GEREMIA,
JONES DAY, BROWN HARRIS STEVENS LLC, ELAINE OSBORN
EMMET, MICHAEL A. SZEGDA, BAY-STONE EQUITIES INC.,
ROBERT B. GOEBEL, RICHARD MARASSE, LISA SOLOMON,
JOHN DOES 1-10 AND XYZ CORPORATIONS 1-10,

           *Defendants.*

-------------------------------------------------------------------------X

Civil Action No.:
1:14-cv-02329 DLI-VMS

AFFIDAVIT OF ROBERT B.
GOEBEL IN SUPPORT OF
MOTION TO DISMISS
VERIFIED COMPLAINT AND
FOR RELATED RELIEF

STATE OF NEW YORK   )
         ss  :
COUNTY OF WESTCHESTER: )

   I, ROBERT B. GOEBEL, an attorney duly admitted to practice law in the State of New

York, being duly sworn, depose and say, under penalty of perjury:

   1.   I am a sole practitioner whose office is located in the County of Westchester,

State of New York. I am a Defendant in this Action, and submit this Affidavit, together with the

accompanying Memorandum of Law, in support of an Order pursuant to Rules 9(b) and 12(b)(6)

of the Federal Rules of Civil Procedure and New York State Civil Procedure §3217(c), dismissing

Plaintiffs' Amended Verified Complaint in the Action dated and filed November 14, 2014,

granting injunctive relief against the "Jericho Parties" (as defined in the Memorandum of Law),

for an award of reasonable attorneys' fees against Plaintiffs pursuant to the Release Agreement

1

Case 1:14-cv-02329-DLI-VMS   Document 261-9   Filed 11/15/16   Page 21 of 22 PageID
Case 1:14-cv-02329-DLI-VMS   Document 111   Filed 03/05/15   Page 4 of 36 PageID #: 4106
#: 7477

(Exhibit "C" annexed hereto), and for such other and further relief as this Court deems just and proper. The documents annexed hereto are either referenced or integral to the complaint or are publicly available documents.

2.      Annexed hereto as Exhibit "A" is a true and complete copy of the Retainer Agreement," dated June 8, 2004, by which I became counsel to Pfeiffer and Jericho Group.

3.      Annexed hereto as Exhibit "B" is a true and complete copy of the instrument dated September 27, 2006, dismissing me as counsel for Jericho Group and substituting the law firm of Herzfeld & Rubin.

4.      Annexed hereto as Exhibit "C" is a true and complete copy of the May 17, 2013 Release Agreement.

5.      Annexed hereto as Exhibit "D" is a true and complete copy of Summons with Notice, filed on behalf of Samuel Pfeiffer, Jericho Group, Ltd., and Jericho Co., on May 30, 2013, in Case No. 155013-2013.

6.      Annexed hereto as Exhibit "E" is a true and complete copy of Notice of Discontinuance filed by Plaintiffs in Case No. 155013-2013 on June 17, 2013 with the County Clerk's Office discontinuing said case.

7.      Annexed hereto as Exhibit "F" is a true and complete copy of a Summons with Notice in New York Supreme Court Case No. 101105/2013 that Plaintiffs filed in November 2013 in the New York County Clerk's Office.

8.      Annexed hereto as Exhibit "G" is a true and complete copy of Notice Plaintiffs filed on or about April 10, 2014, discontinuing New York Supreme Court Case No. 101105/2013.

9.      Annexed hereto as Exhibit "H" is a true and complete copy of letter from Samuel Pfeiffer dated January 14, 2014, withdrawing an Amended Complaint in the aforesaid action.

2

10.    Annexed hereto as Exhibit "I" is a copy of a business certificate with respect to

Jericho Co. filed with the Kings County Clerk's Office on July 28, 2011.


Dated:        Scarsdale, New York
              January 8, 2015


                                          _____
                                                ROBERT B. GOEBEL

Sworn to before me this 8th
Day of January, 2015

_____
Notary Public
                       Notary Public ... of New York
                            No. ...
                       Qualified in ... County
                       Commission Expires ...


                                3